#### IN THE UNITED STATES DISTRICT COURT
#### NORTHERN DISTRICT OF ILLINOIS
#### EASTERN DIVISION

| | |
|---|---|
| PROMIER PRODUCTS, INC., | ) |
| *Plaintiff* | ) ) ) ) |
| v. | ) No. 21 C 1094 ) |
| ORION CAPITAL LLC, | ) Judge Virginia M. Kendall ) ) |
| *Defendant*. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Promier Products Inc. ("Promier") brings suit against Orion Capital LLC ("Orion") seeking declaratory judgment that the parties did not enter into a joint venture. Before the Court is Orion's motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and in the alternative, to dismiss or transfer the case for lack of personal jurisdiction and/or improper venue, Fed. R. Civ. P. 12(b)(2)-(3), 28 U.S.C. § 1404(a). (Dkt. 11). For the following reasons, Orion's motion to dismiss is denied in its entirety.

### BACKGROUND

The following facts are taken from Promier's complaint and are accepted as true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Additional facts are taken from certain extrinsic exhibits submitted by the parties. *See e.g., Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011).

## I. The Parties' Agreement

Promier manufactures and sells flashlights, work lights, and batteries throughout the United States. (Dkt. 1 at ¶¶ 1, 11–12). It is incorporated in and operates its principal place of business in Illinois. (*Id*. at ¶ 6). Around March or April 2020, in the wake of the COVID-19 pandemic, Promier decided to shift its business to meet the growing demand for personal protective equipment ("PPE"). (*Id*. at ¶¶ 1, 13). Using its business relationships with Chinese manufacturers, Promier began supplying customers, including state agencies, with a variety of PPE products. (*Id*.) Promier's entire PPE operation is run out of Illinois. (Dkt. 15-2 at ¶ 9). PPE products are imported into Illinois, inspected in Illinois, and then shipped from Illinois to customers. (*Id*. at ¶¶ 9, 19).

After Promier initiated this new PPE venture, Richard Hall, managing director of Orion approached Promier offering to "use his business connections at Orion Capital to introduce Promier to a variety of customers interested in purchasing PPE." (*Id*. at ¶¶ 14–15). Orion is a private equity firm incorporated in and operating its principal place of business in Virginia. (*Id*. at ¶ 7). The parties orally agreed that Hall could begin making introductions as a sales representative to potential Promier customers, "but reached no immediate agreement as to the capacity in which Hall or Orion Capital would act for or with Promier." (*Id*. at ¶ 20). Neither Hall nor Orion made a monetary investment in Promier at this time and "Promier did not look to Hall or Orion Capital to organize its PPE business, assist in obtaining PPE supply relationships, or any other facet of the business." (*Id*.) Hall sent multiple emails to potential customers regarding supplying them with PPE products through his "contact in China". (*Id*. at ¶¶ 21–22). On April 9, 2020, Hall drafted the following email on behalf of Cody Grandadam, Promier's President, for Grandadam to send to the Commonwealth of Virginia, describing his role with the company: "Orion Capital and Richard are acting as introducing agents for my company Promier Products. I am the actual importer and

2

selling entity of the KN95 masks." (*Id*. at ¶ 23). On April 16, 2020, Pell, of Promier, sent an email to a potential customer explaining Hall's role with the company:

> Richard Hall (Orion Capital) is operating as a Sales Representative for our company, Promier Products, Inc., simply providing assistance and facilitating communication between myself (Promier) and potential partners. Richard has vast experience with Private Equity and Governmental relations and has been a great help in providing fast communication, while also providing necessary documents about our company with the current volume of inquiries we are receiving….

(*Id*. at ¶ 24). Promier also described Orion and Hall's role as "sales representative" when communicating with the Texas Department of Emergency Medicine. (*Id*. at ¶ 29). Even by the end of May 2020, Hall described himself as "merely an arm's length advisor on this situation with no skin in the game other than to say Promier is a trustworthy business with real employees and actual customers." (*Id*. at ¶ 30). In addition to Hall, another individual at Orion, Scott Weiland also worked with Promier as a sales representative. (*Id*. at ¶ 29). Hall is based in Virginia, while Weiland is based in North Carolina. (Dkt. 15-2 at ¶ 21) (Dkt. 11-11 at ¶ 3). Hall and Weiland were the only Orion employees that worked with Promier to sell PPE products. (Dkt. 15-2 at ¶ 21).

Between April 2020 and January 2021, Promier sold $27.9 million in PPE to two primary customers it met through Orion, Duke University and the State of Texas. (*Id*. at ¶ 31). Promier provided the vast majority of funds to obtain PPE products for these customers, consisting of $17.3 million. (*Id*. at ¶¶ 32, 39). Orion's only capital contribution was a $345,000 loan. (*Id*. at ¶ 38). Orion's role in Promier's PPE business "was limited to finding customers, facilitating communication with Promier, occasionally advising customers of order status, occasionally collecting money from customers, and taking information Promier provided it in order to register Promier … to sell PPE in other states." (*Id*. at ¶ 41). Promier decided to whom it would sell PPE, at what price, and on what terms and "[n]o one at Orion Capital ever had authority to enter into any sort of agreement regarding Promier's sale of PPE products absent Promier's approval." (*Id*.

3

at ¶ 51). Notwithstanding the parties' agreement, Promier acquired its own PPE customers independently of Orion and Orion sold PPE products independently of Promier. (*Id*. at ¶¶ 55, 57). Orion was not the first or only sales representative Promier employed to assist in PPE sales. (*Id*. at ¶ 59).

In January 2021, Orion demanded $6 million from Promier for its services. (*Id*. at ¶¶ 60–61). Orion maintains the agreement between the parties is a joint venture under which it is entitled to half of all profits it helped Promier make on PPE sales. (*Id*. at ¶ 4, 61). Promier disputes this characterization of the agreement, maintaining Orion was merely a sales representative, and refused to pay Orion the amount demanded. (*Id*. at ¶¶ 62–63).

## II. Procedural History

On January 5, 2021, Orion sent a letter to Promier demanding $6 million and threatening litigation otherwise. (Dkt. 11-16 at 2–3). On January 11, 2021, Orion sent an email to Promier indicating that because it had yet to hear from Promier, it planned to move forward with a suit. (Dkt. 11-17). Promier responded to Orion on January 13, 2021, disputing Orion's basis for a lawsuit and rejecting Orion's demand for $6 million. (Dkt. 11-18). On February 11, 2021, Orion responded to Promier's letter stating that it would be willing to settle for $5.5 million. (Dkt. 11-20). Promier rejected Orion's offer on February 25, 2021 and notified Orion it had filed the instant suit on February 24, 2021. (*Id*.) Promier's suit seeks declaratory judgment that the parties did not enter a joint venture. (Dkt. 1). On March 19, 2021, Orion filed suit in the Western District of Virginia alleging breach of contract, unjust enrichment, and quantum meruit claims against Promier. (Dkt. 11-3). Promier moved to dismiss the case for lack of personal jurisdiction, which the court granted on October 22, 2021. (Dkt. 32-1).

**DISCUSSION**

### I. Failure to State a Claim

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must view the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff does not have to plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual information that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

Orion advances two arguments for why Promier's complaint must be dismissed as legally insufficient, neither of which are properly raised under Rule 12(b)(6). First, it contends Promier's claim for declaratory judgment is defective because it asks "the Court merely to render a legal opinion on the official status of the parties' relationship in a contract dispute" which is not the sort of "substantial controversy" that may be addressed via declaratory judgment. (Dkt. 11-2 at 5). The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such a declaration" in "any case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Whether a complaint states a justiciable controversy is a question of the Court's subject matter jurisdiction rather than the complaint's legal insufficiency. *See e.g., Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "Declaratory judgment actions are ripe and otherwise justiciable when 'the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). When "a declaratory judgment plaintiff files an action in anticipation of a threatened action by the declaratory judgment defendant, the real and immediate possibility of such litigation is sufficient to create a justiciable controversy." *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995). Here, the facts demonstrate Promier filed the present action *after* Orion threatened suit and Orion did in fact subsequently file suit. (*See* Dkt. 11-3, Dkt. 11-16, Dkt. 11-17). [1] Although that action has since been dismissed (Dkt. 32-1), Orion's threat of suit remains viable as it may still file suit in another court of competent jurisdiction. This is not a case where Promier is asking the Court to answer a hypothetical or purely academic question. Because Promier filed suit for declaratory judgment in anticipation of suit by Orion, there is an "actual controversy" within this Court's jurisdiction that may be resolved through declaratory judgment.

Orion's remaining argument is that the factual allegations in Promier's complaint are incorrect. It dedicates seven pages of its brief and presents 23 extrinsic factual exhibits to prove that a joint venture did in fact exist. But a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, not the merits. For this reason, with narrow exception, extrinsic exhibits may not be considered by the Court without converting the motion into one for summary judgment. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Orion does not argue that any exception to this rule applies. Even if this Court were to convert Orion's motion into one for summary judgment and consider its exhibits and substantive arguments, Orion falls short of establishing that

---

[1] These extrinsic facts are properly considered by the Court when assessing a jurisdictional challenge. *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008).

a joint venture existed as a matter of law. Some of Orion's exhibits tend to show that a joint venture may have existed, while the exhibits incorporated in Promier's complaint and the facts alleged therein, tend to establish that Orion and Promier merely had a principal/agent relationship. Thus, at most, the exhibits present a material factual dispute that cannot be resolved at this time as a matter of law. Orion's motion to dismiss under Rule 12(b)(6) is denied.

## II. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a complaint for lack of personal jurisdiction. While a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, the Court decides a motion challenging jurisdiction on the basis of written submissions, the plaintiff "need only make out a prima facie case of personal jurisdiction." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). In assessing whether this burden is satisfied, the Court may consider extrinsic affidavits and exhibits submitted by the parties. *Purdue,* 338 F.3d at 782. All well-pleaded factual allegations in the complaint and any unrefuted facts in the affidavits are accepted as true with any factual disputes resolved in plaintiff's favor. *Id*. at 783.

In a diversity jurisdiction case, such as this one, personal jurisdiction is governed by the law of the forum state. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *See Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017); 735 Ill. Comp. Stat. 5/2-209(c). Therefore, the state and federal constitutional requirements are the same. *See Brook*, 873

F.3d at 552. Federal due process requires that the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)). Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 474 (1985)). Personal jurisdiction may be general or specific. *Id.* "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum related activities." *Id.* (citing *Burger King*, 471 U.S. at 472). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice…." *Id.* (citing *Int'l Shoe*, 326 U.S. at 316). Specific jurisdiction may not lie where the plaintiff is "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citation omitted).

Orion argues the Court lacks specific jurisdiction in a mere three sentences of its 25-page brief:

> This Court does not have personal jurisdiction over the Defendant. The contract between the Plaintiff and the Defendant was entered into and performed in Virginia. As such this Court's exercising of personal jurisdiction over the parties would offend traditional notions of fair play and substantial justice.

(Dkt. 11-2 at 23). [2] To begin, Orion does not provide any factual basis to conclude the parties' formed and performed their agreement in Virginia. No one at Promier visited Virginia during the

---

[2] Orion fails to expound on this scant argument in its reply brief or respond to Promier's arguments in support of jurisdiction. While this failure generally results in waiver of the argument, *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017, the Court nonetheless addresses Orion's challenge to personal jurisdiction.

parties' agreement and of the two individuals from Orion who worked with Promier (Hall and Weiland), only Hall is based in Virginia. (Dkt. 15-2 at ¶¶ 21, 23) (Dkt. 11-11 at ¶ 3). While Hall worked in Virginia, Hall did not need to be in Virginia to perform his obligations under the agreement. (Dkt. 15-2 at ¶ 21). None of the clients Orion procured for Promier were from Virginia and Promier's PPE operations are entirely run out of Illinois. (Dkt. 15-2 at ¶¶ 9, 19, 23). At most, the evidence suggests the only aspects of the contract performed in Virginia were those actions taken by Hall while physically located in Virginia.

More importantly, however, Orion's focus on the parties' contacts with Virginia is misplaced—even if the contract was formed and performed in Virginia, the Court must assess Orion's contacts with *Illinois* to determine if jurisdiction is proper in this forum. While entering into a contract with an out-of-state party cannot alone establish sufficient minimum contacts in the other party's home forum, a defendant who "reach[es] out beyond one state and create[s] continuing" and "wide-reaching contacts" in another state is subject to the jurisdiction of that state. *Burger King*, 471 U.S. at 478. Orion deliberately sought out an agreement with an Illinois-based company to sell PPE products, knowing Promier's entire PPE operation took place in Illinois. (Dkt. 15-2 at ¶ 9). The PPE products Orion agreed to market were imported to Illinois, unpacked and inspected in Illinois, and organized, packed, and shipped to Promier customers from Illinois. (*Id*. at ¶¶ 9, 19). All of the clients Orion procured for Promier received PPE products from Illinois. (*Id*.) Further, as part of this agreement, Orion regularly communicated with Promier representatives, all based in Illinois. (*Id*. at ¶ 10). These facts are sufficient to make a *prima facie* showing that Orion purposefully availed itself of the privilege of conducting business in Illinois.

Next, to support the exercise of personal jurisdiction, the present dispute must arise out of or relate to Orion's contacts with Illinois. Here, this requirement is readily satisfied. The business

9

relationship Orion sought out with Promier in Illinois is the source of the parties' present dispute about the nature of their contractual arrangement.

Finally, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. Factors for consideration are: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Tamburo*, 601 F.3d at 709 (quoting *Burger King*, 471 U.S. at 477). Illinois has an interest in adjudicating a contractual dispute pertaining to a business operation performed almost entirely within its borders. While Orion is based in Virginia and would be inconvenienced by litigating in this district, "out-of-state defendants always face such a burden, and there is no suggestion that [Orion's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir.2012) (emphasis in original). In fact, only one of the two Orion employees affiliated with Promier is located in Virginia. (Dkt. 15-2 at ¶¶ 21, 23) (Dkt. 11-11 at ¶ 3). Orion has also engaged local counsel through whom it has engaged in motion practice. *See e.g., Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) (defendants' retention of local counsel and motion practice in forum supported exercise of personal jurisdiction); *Jackson v. N'Genuity Enterprises, Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (same). Promier and all of the individuals who worked with Orion are based in Illinois and would be equally burdened by having to litigate this case remotely. (Dkt. 15-2 at ¶¶ 9–10). Orion already attempted to bring suit in Virginia, but the court determined it lacked jurisdiction over Promier, making the current action the most efficient way to resolve the parties' dispute. (Dkt. 32-1). This

Court's exercise of personal jurisdiction over Defendants does not run afoul of traditional notions of fair play and substantial justice. As all the requirements of the Due Process Clause are met, Orion's motion to dismiss for lack of personal jurisdiction is denied.

### III. Venue

Orion also moves to dismiss for improper venue, and in the alternative to transfer the case to the Western District of Virginia. A Court may dismiss a case for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in its discretion, transfer a case to another district. 28 U.S.C. § 1404(a). While plaintiff has a burden to show the current forum is proper, this burden is low. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 810 (7th Cir. 2016). "The defendants' burden in alleging forum non conveniens, however, is heavy." *Id*. In assessing the appropriateness of a forum, the Court may consider extrinsic evidence submitted by the parties, resolving all factual disputes in plaintiff's favor. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011).

> Venue is proper in:
>
> a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Orion dedicates most of its brief arguing why venue is proper in Virginia, but provides scant argument for why venue is improper in Illinois, an entirely separate inquiry. Orion merely repeats its argument challenging personal jurisdiction: "[T]his transaction was entered into and performed in the Commonwealth of Virginia, and venue is therefore improper in this Court." (Dkt. 11-2 at 24). As discussed above, there is little factual support for this statement. Moreover, that a contract is formed and performed in one state is not an argument that venue is

11

improper in any other state. Venue can be proper in more than one state. *Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Orion has not adequately raised a challenge to venue in Illinois. The Court is satisfied that venue is proper in Illinois for the same reasons personal jurisdiction is appropriate. Orion sought potential PPE customers for Promier, an Illinois company whose PPE operation is entirely run in Illinois. Although Orion's representatives did not work out of Illinois, all of Promier's employees performed their obligations under the contract in Illinois. The parties' dispute arises out of this contractual arrangement. Venue is proper under 28 U.S.C. § 1391(b)(2), if not, (b)(3).

Even where venue is proper, the Court may, in its discretion, transfer the case to another district if: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012) (citation omitted); 28 U.S.C. § 1404(a). As discussed above, venue is appropriate in Illinois and the Court assumes venue is appropriate in Virginia for purposes of this analysis.

A. <u>Convenience</u>

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017) (internal quotations and citation omitted). Orion "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Considering the five factors together, Orion has not met its burden.

A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir.1997). A plaintiff entity is deemed to reside where it maintains its principal place of business. 28 U.S.C. § 1391(c)(2). Here, Promier is incorporated in and maintains its principal place of business in Illinois, so factor one weighs against transfer. (Dkt. 1 at ¶ 6).

The remaining factors also weigh against transfer. The only connection the parties' arrangement has to Virginia is that Hall worked from Virginia, but Hall did not need to be in Virginia to perform his obligations under the agreement. (Dkt. 15-2 at ¶ 21). All the other individuals involved, including those at Orion, worked outside of Virginia. (*Id*. at ¶ 10) (Dkt. 11-11 at ¶ 3). No one from Promier visited Virginia during the parties' arrangement. (Dkt. 15-2 at ¶ 23). Promier has no offices in Virginia and, apart from Orion, has no sales partners in Virginia. (*Id*.) Moreover, none of the clients Orion procured for Promier were from Virginia. (*Id*.) (Dkt. 11-11 at ¶ 8). By contrast, Promier's entire PPE operation is run out of Illinois and everyone from Promier involved in the agreement with Orion worked out of Illinois. (Dkt. 15-2 at ¶¶ 9, 10, 19). Accordingly, most of the potential witnesses in this case reside in Illinois. (*Id*. at ¶ 10). All of Promier's computer servers as well as the documents and information related to its PPE operations are located in Illinois. (*Id*. at ¶ 20). Promier's bank accounts, through which it financed its PPE operations, are also located in Illinois. (*Id*.) While it may be more convenient for Orion to litigate in Virginia, only one of its employees involved in the present dispute is based in Virginia. It is, thus, far more convenient for Promier to litigate in Illinois, where all of its witnesses and key documents are located, than it is for Orion to litigate in Virginia.

B. Interests of Justice

"In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue." *Hanover Ins. Co.*, 891 F.Supp.2d at 1025 (citation omitted).

The first factor supports transfer. An average judge in the Northern District of Illinois has more pending cases than in the Western District of Virginia and the time it takes civil cases to proceed to trial is also significantly longer in this district. *See* Federal Court Management Statistics (June 30, 2021), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf (reporting that for a twelve-month period ending on June 30, 2021, an average judge in the Northern District of Illinois had 580 pending cases, while judges in the Western District of Virginia had an average of 434 pending cases); Federal Court Management Statistics (September 30, 2020), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf) (reporting that for a twelve-month period ending on September 30, 2020, the median time for civil cases to proceed from filing to trial was 39.3 months in the Northern District of Illinois and 27.1 months in the Western District of Virginia).

The remaining factors, however, weigh against transfer. Promier asks the Court to assess whether a joint venture existed under Illinois law (Dkt. 1 at ¶ 65) and a federal court sitting in Illinois is better equipped to make this assessment than one in Virginia. Illinois has an interest in adjudicating a contractual dispute pertaining to Promier's PPE business which is run entirely within its borders. While Virginia also has an interest in providing a forum for its citizens to seek redress for breaches of contract, the facts indicate that only one individual involved in the parties'

arrangement is based in Virginia. (Dkt. 15-2 at ¶ 10, 21) (Dkt. 11-11 at ¶ 3). All the other individuals involved, including those at Orion, worked outside of Virginia. (*Id*.) The parties' arrangement has far more contacts with the State of Illinois than with Virginia. Finally, the Court is hesitant to transfer this case to the Western District of Virginia when that Court has already found that it lacks personal jurisdiction over Promier. (Dkt. 32-1). On balance, the interests of convenience and justice weigh against transfer. Orion's motion to dismiss for improper venue, and in the alternative, to transfer is denied.

## CONCLUSION

For the foregoing reasons, Orion's motion to dismiss [11] is denied. Orion is ordered to file an answer to Promier's complaint within 21 days of the issuance of this Order.

Virginia M. Kendall
United States District Judge

Date: November 23, 2021