THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROMIER PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 1094 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| ORION CAPITAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Promier Products, Inc. ("Promier") filed this lawsuit on February 24, 2021, seeking declaratory judgment against Defendant Orion Capital, LLC ("Orion") that the parties have not entered into a joint venture together. (Dkt. 1). Orion filed a Counterclaim on December 13, 2021, raising claims for breach of contract, violation of the Illinois Sales Representative Act, accounting, and quantum meruit. (Dkt. 44). Promier filed this motion to dismiss the third count requesting accounting in Orion's Counterclaim. (Dkt. 48). Promier sought in the same motion to strike Orion's Affirmative Defenses pursuant to Rule 12(f), citing as basis that this Court previously held subject matter jurisdiction exists over these claims. Fed. R. Civ. P. 12(f). For the reasons discussed below, Plaintiff's Motion to Dismiss and Strike [48] is granted.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Orion's Counterclaim, (Dkt. 44), and are assumed true for purposes of Plaintiff's Motion to Dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

1

Promier is a corporation in the business of developing and selling flashlights, work lights, and batteries, incorporated and with its principal place of business in Illinois. (Dkt. 44 ¶¶ 1, 6). Many of its products are imported from China, and Promier maintains offices throughout China. (*Id*. at ¶ 12). In April 2020, amid the COVID-19 pandemic, Promier utilized its relationships with Chinese manufacturers to supply state agencies with personal protective equipment ("PPE"). (*Id*. at ¶ 1). Orion is a limited liability company operating as a private equity firm organized under the laws of Virginia and with its principal place of business in Virginia. (*Id*. at ¶ 7).

Promier and Orion established an oral agreement on April 13, 2020, during a phone call between Cody Grandadam, president of Promier, and Richard Hall and Scott Weiland of Orion. (*Id*. at ¶ 2). During the call, the parties agreed to enter into what Orion alleges was a "50/50 joint venture" wherein Orion could utilize its business connections to introduce Promier to a variety of customers with an interest in purchasing PPE. (*Id*. at ¶¶ 2, 15). Grandadam initially reached out to Hall to discuss best practices in preparing Promier for sale. (*Id*. at ¶ 13). Hall advised him the timing wasn't ideal during the pandemic and instead suggested Grandadam grow Promier's PPE business with Orion contributing sale expertise and financing unavailable to Promier at the time. (*Id*.).

Orion's agreed to responsibilities included "facilitating conversations between Promier and third parties who were interested in purchasing Promier's PPE . . . investing hundred of thousands of dollars into acquiring PPE . . . advising Promier on best practices for managing its inventory and credit to grow its PPE business . . . ; and utilizing its substantial expertise with respect to bidding on requests for quotes with large institutional buyers like state and local governments, hospitals and university systems" with the expectation of sharing 50% of the profits with Promier. (*Id*. at ¶ 2).

The parties also orally agreed on the call to each bear their own expenses related to the "joint venture." (*Id*.). The agreement was solidified in writing the following day in an email from Cody Grandadam to Orion and another Promier employee, Matt Pell, stating, "Our deal with Richard [Hall, managing direct of Orion Capital, is that] we are splitting any orders… So, if we sell to Duke for $1.50 and our cost is $1.00 his group gets $0.25 and our group gets $.25.. Just being transparent." (*Id*.) (Ellipses in original). Promier claims this oral agreement was not a "joint venture" and instead Orion agreed to work as a sales representative on Promier's behalf, working on a commission-basis and earning "a small percentage of profits for any sales it was able to facilitate as a sales representative." (*Id*.). In a series of emails referenced in Promier's original Complaint, Promier puts forward evidence to support the claim that Orion was a sales representative rather than a joint venture partner. For example, in an email drafted by Hall for Grandadam to send out to the Commonwealth of Virginia, Hall wrote on Grandadam's behalf, "Orion Capital and Richard [Hall] are acting as introducing agents for my company Promier Products. I am the actual importer and selling entity of the KN95 masks." (Dkt. 1 ¶ 23).

For several months, Orion worked with Promier and contributed $270,000 within the first few weeks of the business relationship to cover the acquisition of PPE inventory associated with a sale of PPE to Duke University Health System amounting to millions of dollars. (*Id*. at ¶ 3). From April 2020 through January 2021, Promier earned over $29 million in gross revenue, with its two primary customers being Duke University Health Systems and the State of Texas, both clients Promier met in connection with Orion. (Dkt. 44 ¶¶ 1, 31). Promier asserts it primarily fronted the costs of providing the PPE to its two primary clients, Duke University Health System and the State of Texas, which exceeded $17 million. (*Id*. at ¶¶ 32–33). Promier oversaw the process of packaging PPE products in China, shipping PPE to its warehouse in Illiniois, and finally shipping

3

the product domestically to customers or contracting through a third-party transshipment facility. (*Id*. at ¶ 46). At one point, Orion flew personnel to Texas to address a packaging issue in a delivery and to repackage the PPE product on its own expense. (*Id*. at ¶ 49).

At no point did anyone at Orion have authority to enter into any agreement regarding Promier's sale of PPE products without Promier's approval. (*Id*. at ¶ 51). Orion did help Promier register to sell PPE in North Carolina, Texas, and other states, but Promier alleges the company was registered to sell PPE in Illinois prior to any agreement with Orion. (*Id*. at ¶¶ 52–53). Prior to the agreement in April 2020, Promier was selling PPE products to customers independently, and Promier continued to sell PPE products to customers independent of Orion after entering the agreement in April 2020. (*Id*. at ¶¶ 54–55).

Orion allegedly provided to Promier PPE inventory it purchased, $445,000 in finances, over two thousand hours of inventory and credit consultation, sales investigation and strategy, submission of bids for buyers of Promier's PPE, and registering of Promier in fifteen states to sell PPE among other contributions. (*Id*. at 30–31 ¶ 6). In August 2020, Promier offered Orion a 5/95 distribution of profits. (*Id*. at ¶ 4). Orion attempted to negotiate a resolution with Promier prior to the filing of this lawsuit, seeking half of the profits, anticipated at over $6 million at the time. (*Id*. at ¶ 5).

Promier filed this lawsuit seeking a declaratory judgment against Orion on February 24, 2021 that the parties have not entered into a joint venture together. (Dkt. 1). In response, Orion first filed a motion to dismiss the complaint for failure to state a claim, which this Court denied on November 23, 2021. (Dkt. 43). Orion then filed its Answer, raising two affirmative defenses and filing a Counterclaim with four counts on December 13, 2021. (Dkt. 44). The first affirmative defense raised by Orion is the claim that this Court lacks subject-matter jurisdiction over the

declaratory complaint. (*Id*.). Orion supports this by stating in August 2020, Promier "expressly and unambiguously rejected Orion Capital's claim that it was Promier's 50/50 joint venture partner for their PPE business" and that the prayer for relief fails to state a case or controversy since there is no "requested admeasurement of Orion Capital's damages or share of profits." (*Id*.). Orion previously raised this exact issue in its motion to dismiss, which the Court rejected. (Dkt. 43). The second affirmative defense Orion raised is the declaratory judgment complaint is moot once the first affirmative defense is satisfied. (Dkt. 44).

In its Counterclaim, Orion raised four claims for relief. The first is a breach of contract claim. (*Id*. at 32 ¶¶ 10–13). The second claim is a violation of the Illinois Sales Representative Act by Promier, if Promier is not found to have breached a joint venture contract. (*Id*. at 32–33 ¶¶ 14–20). Third, Orion claims Promier has a fiduciary duty to account for its gross collections, customers serviced, and costs incurred to Orion. (*Id*. at 33–34 ¶¶ 21–24). The fourth claim Orion raised is for quantum meruit based on unjust enrichment for Promier to retain the full profits, which is asserted as an alternative to Counts I and II. (*Id*. at 34–35 ¶¶ 25–30).

On March 19, 2021, Orion filed suit in the Western District of Virginia alleging breach of contract, unjust enrichment, and quantum meruit claims against Promier. (Dkt. 11-3). The court granted Promier's motion to dismiss the case in Virginia for lack of personal jurisdiction on October 22, 2021. (Dkt. 32-1). Promier filed the present motion with two unique issues. The first issue is a motion to dismiss the third count for accounting in Orion's Counterclaim. (Dkt. 48). The second issue is a motion to strike the affirmative defenses Orion raised. (*Id*.).

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief…by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

Motions to strike are governed by Rule 12(f), which provides "[t]he court may strike form a pleading an insufficient defense[.]" Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court should only strike an affirmative defense if it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g., Mittelstaedt v. Gamla-Cedron Orleans LLC*, 2012 WL 6188548, at *2 (N.D. Ill. Dec. 12, 2012).

## **DISCUSSION**

**A. Motion to Dismiss Count III (Accounting)**

"An equitable accounting is an adjustment of the accounts of the parties and a rendering of the balance ascertained to be due." *Melikhov v. Drab*, 2017 WL 3234808, at *7 (N.D. Ill. July 31, 2017) (internal quotations and citation omitted); *see also CZS Holdings LLC v. Kolbe*, 2021 WL 1837385, at *5 (N.D. Ill. May 7, 2021). To state a claim for accounting, Orion must allege both the "absence of an adequate remedy at law" as well as "at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Cos., Inc.*, 247 Ill. App. 3d 966, 980 (1st Dist. 1992)). Still, in assessing these factors, the "district court has broad discretion in deciding whether an accounting is appropriate." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (internal quotation marks omitted); *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate to order an accounting.").

In general, if a party pleads a breach of contract claim, "an equitable accounting claim must be dismissed." *CZS Holdings LLC*, 2021 WL at *5 (citing *Drake Enterprises, Inc. v. Colloid Env't Techs. Co.*, 2009 WL 1789355, at *3 (N.D. Ill. June 24, 2009) (collecting cases)). However, while "equitable remedies are denied when there is an adequate remedy at law, there is an exception for when an accounting action is sought based upon a breach of a fiduciary duty so that a plaintiff may proceed with the action." *Mann*, 247 Ill. App. 3d at 980; *see also Homestead Ins. Co. v. Chicago Transit Authority*, 1997 WL 43232, at *2–3 (N.D. Ill. Jan. 23, 1997) ("Illinois courts have

recognized an exception to this rule. When an accounting is sought based on a breach of a fiduciary duty, the complaint need not allege inadequacy of legal remedies.").

The parties disagree as to whether a fiduciary duty exists, both agreeing if a joint venture is found to exist, a fiduciary duty also exists. *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1146 (7th Cir. 1998) ("Under Illinois law, a fiduciary relationship does exist between partners in a joint venture.") (*citing Holstein v. Grossman*, 246 Ill. App. 3d 719, 738 (1st Dist. 1993)). In the Counterclaim, Orion stated, "As a joint venture partner, Promier has a fiduciary duty to account for its gross collections, customers serviced, costs of goods sold and freight charges incurred on Orion Capital." (Dkt. 44 ¶ 22). In viewing the allegations in a light most favorable to Orion, the Court may allow the accounting claim to move forward despite an adequate remedy at law existing. However, the Court still has broad discretion on whether to allow an equitable accounting claim to move forward. *First Commodity Traders, Inc.*, 766 F.2d at 1011. Whether the parties entered a joint venture or not is the crux of this action, and the Court will not decide at the motion to dismiss stage if based on the pleadings a joint venture existed or factor in that analysis to its decision on the accounting claim.

Orion also argues that dismissal of an accounting claim is inappropriate in circumstances where it is sufficiently pled that "the accounts are so complicated that only a court of equity, and not a jury, can unravel them." (Dkt. 53 (quoting *Drake Enterprises, Inc. v. Colloid Env't Techs. Co.*, 2009 WL 1789355, at *3 (N.D. Ill. June 24, 2009)). Orion points to one case in particular from over a century ago where an accounting claim was sustained along with a breach of contract claim in which fraud was also at issue. (Dkt. 53); *see Billboard Pub. Co. v. McCarahan*, 151 Ill. App. 227 (1st Dist. 1909). The parties agree there is no claim of fraud but disagree as to whether

8

a fiduciary duty existed, whether there is a need for discovery, and whether complex mutual accounts existed. (Dkt. 53; Dkt. 54).

Here, the factors weigh towards dismissing the accounting claim. The claim is fairly encompassed in the breach of contract claim, damages will be ascertained through that claim, and the requested information should be acquired through discovery associated with that claim. Orion has failed to establish that the issues in this action are so complicated as to warrant the Court's exercise of discretion to permit the accounting claim. Orion specifically seeks accounting from Promier for "its gross collections, customers serviced, costs of goods sold and freight charges incurred to Orion Capital." (Dkt. 44 ¶ 22). The Court finds no reason why the accounting information sought would not be revealed through discovery in the breach of contract claim. The third count in the counterclaim for accounting is dismissed.

### B. Motion to Strike Affirmative Defenses

Under Rule 12(f), a party seeking to strike an affirmative defense must file the motion prior to responding to the pleading or within 21 days of being served with the relevant pleading if no responsive pleading is permitted by the rules. Fed. R. Civ. P. 12(f). In this case, Orion filed its Answer and Counterclaims on December 13, 2021, and Promier filed its response on January 7, 2022, the same day as filing its motion to strike. (Dkt. 44, Dkt. 46, Dkt. 48). Rule 12 grants courts the discretion to consider a motion to strike at any point, including when "prompted by an untimely filed motion." *Williams v. Jader Fuel Co.*, 944 F.2d 1388 (7th Cir. 1991). It is not clear that the motion to strike was untimely, and neither party has questioned the timeliness of the motion. (Dkt. 48, Dkt. 53, Dkt. 54). The Court therefore turns to the merits raised in Promier's motion to strike.

Promier moves to strike the affirmative defenses raised by Orion on the basis that the issues create "unnecessary clutter" as the Court already resolved the question as to whether subject matter

9

jurisdiction exists in its ruling on Orion's motion to dismiss on the same basis of its affirmative defenses. (Dkt. 43). It is true that the issue of subject matter jurisdiction may be raised at any point, and the Court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). However, it is also true that Orion has fully argued no "actual case or controversy" exists in this case, in violation of Article III of the U.S. Constitution. (Dkt. 11-2). This Court held in response that Orion's threat of suit remains viable, even though the action in the Western District of Virginia was dismissed, and therefore "[t]his is not a case where Promier is asking the Court to answer a hypothetical or purely academic question. Because Promier filed suit for declaratory judgment in anticipation of suit by Orion, there is an 'actual controversy' within this Court's jurisdiction that may be resolved through declaratory judgment." (Dkt. 43 at 6).

There have been no substantive changes since the Court rendered its previous ruling on subject matter jurisdiction on November 23, 2021, except for the filing of Orion's Counterclaim, including breach of contract claims. (Dkt. 44). Orion points to the existence of this substantive suit as basis for questioning the subject matter jurisdiction of the Court in the declaratory judgment claim. Orion cites to three District Court cases for the premise that a declaratory judgment may be rendered moot once a breach of contract claim has been filed in the same action. (Dkt. 53); *see Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002); *see also Associated Mills, Inc. v. Regina Co., Inc.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987); *see also Wireless Marketing Corp. v. Cherokee Inc.*, 1998 WL 719944, at *4 (N.D. Ill. Oct. 6, 1998). However, in each of the cases cited, the court exercised its discretion to dismiss the declaratory judgment claims rather than issued a finding that subject matter jurisdiction did not exist. *Id*. Specifically, in *Amari*, the court exercised its discretion to dismiss a declaratory judgment action when a breach of contract claim

10

was pending as a separate lawsuit and the plaintiff had also added a breach of contract claim in its complaint. 219 F. Supp. 2d at 943. The court specifically noted that "[f]ederal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Id*. at 943–44.

The court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on its own or on a motion may by a party. Fed. R. Civ. P. 12(f). The standard for striking an affirmative defense is high, and a court should only strike an affirmative defense if it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g., Mittelstaedt*, 2012 WL 6188548, at *2. However, the fact that this Court found subject matter jurisdiction does exist, and no relevant facts changed to impact that analysis renders the defense insufficient on its face. The motion to strike Orion's affirmative defenses is granted without prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss and Strike [48] is granted. Defendant's third count in the Counterclaim requesting accounting is dismissed. The Court strikes Defendant's affirmative defenses.

_____
Virginia M. Kendall
United States District Judge

Date: June 13, 2022

11