## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PROMIER PRODUCTS, INC.,

Plaintiff,

v.

ORION CAPITAL LLC,

Defendant.

Case No. 21 CV 1094

District Judge Jenkins

Magistrate Judge McShain

## ORDER AND REPORT AND RECOMMENDATION

Pending before the Court is Promier Products, Inc.'s motion for sanctions under Federal Rule of Civil Procedure 37(e) based on spoliation of electronically stored information (ESI). [180].[1] In a separate part of the motion, Promier also seeks an award of attorney's fees and costs under Rule 37(a)(5)(A) based on Orion Capital LLC's production of relevant text messages that occurred after Promier filed an earlier discovery motion. The motion is fully briefed. [190, 196]. In accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge deny the Rule 37(e) motion. With respect to Promier's separate request for attorney's fees and costs, and in accordance with Rule 37(a)(5)(A), the undersigned grants the motion.[2]

## Background

Promier's Rule 37(e) motion arises out of the failure of Orion's CEO, Richard Hall, to preserve messages relating to his efforts to sell personal protective equipment (PPE) that he exchanged with several third parties on WhatsApp. WhatsApp is a "messaging application for cell phones that allows users to exchange text, pictures,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] A motion for sanctions under Rule 37(e) that, like Promier's motion, seeks an adverse-inference instruction is a dispositive matter as to which the undersigned can only prepare a report and recommendation. *See Gruenstein v. Browning*, No. 1:17-cv-2328, 2022 WL 3213261, at *4 n.6 (N.D. Ill. Jun. 21, 2022); *CarmelCrisp LLC v. Putnam*, Case No. 19 C 2699, 2022 WL 1228191, at *1 n.1 (N.D. Ill. Apr. 26, 2022). In contrast, a request for attorney's fees under Rule 37(a)(5)(A) is a non-dispositive matter that the undersigned can determine. *See Hangshou Aoshuang E-Commerce Co., Ltd. v. 008Fashion*, 336 F.R.D. 154, 155-57 (N.D. Ill. 2020).

and other media. By default, WhatsApp messages are encrypted using end-to-end encryption." *United States v. Otunyo*, Criminal Action No. 18-251 (BAH), 2020 WL 2065041, at *2 n.2 (D.D.C. Apr. 28, 2020). "No one outside of [a WhatsApp] chat, not even WhatsApp, can read or listen to" messages exchanged on the app. [180-2] 1. Hall deleted his WhatsApp account no earlier than January 27, 2021, three weeks after Orion had sent a demand letter to Promier–and thus after litigation was reasonably foreseeable. Contending that Hall deleted the WhatsApp account with the intent to deprive it of valuable evidence, Promier asks that the Court sanction Orion by instructing the jury to presume that the deleted messages were unfavorable to Orion's case and awarding Promier the attorney's fees and costs it incurred in bringing this motion and in undertaking third-party discovery in an attempt to obtain Hall's WhatsApp messages from other sources.

The District Judge should deny the Rule 37(e) motion for multiple reasons. First, the motion is untimely because Promier unreasonably delayed in both completing the third-party discovery it says was necessary to substantiate its spoliation claim and in bringing the motion once all factual predicates of the spoliation claim had been established. Second, the sanctions motion is in substance a disguised motion for both reconsideration of the undersigned's earlier denial of Promier's untimely request to depose a third party with whom Hall did business and leave to reopen a deposition based on evidence that Promier acquired more than four months before the sanctions motion was filed. This is apparent not only from the motion's patent lack of merit, but from the many unanswered questions that still surround Hall's use of WhatsApp. Third, while the undersigned has concluded that Hall's deletion of his WhatsApp account amounts to spoliation of evidence that was likely to have been relevant, Promier has not argued that Hall's deletion of the WhatsApp account prejudiced it within the meaning of Rule 37(e)(1). In any event, the key question in a Rule 37(e) motion is not whether ESI was intentionally deleted, but whether it was deleted in bad faith. Here, however, Promier has introduced no evidence at all that Hall deleted his WhatsApp account in bad faith.

## A. Hall's Use Of WhatsApp In Connection With PPE Sales

On September 22, 2022, Promier demanded that Orion produce any WhatsApp messages sent by Hall that were responsive to its written discovery requests. *See* [180-1] 4, at ¶ 12; [180-4] 1-2 (letter from Orion to Promier, dated September 26, 2022, responding to Promier's letter "dated September 22, 2022" concerning Orion's "production of any relevant WhatsApp communications").[3] According to Promier, it made this demand after discovering "a single document in Orion's [discovery] production demonstrating that Mr. Hall used WhatsApp to arrange sales of PPE." [180-1] 4, at ¶ 11; *see also* [180-2] (WhatsApp message thread between Hall, third

---

[3] Promier states that its demand was made on September 21, 2022. [180-1] 4, at ¶ 12. But the September 21 letter cited by Promier does not address WhatsApp messages. *See* [180-3] 1-4.

party Jon Lewis, and Orion attorney William Stanley). In a response dated September 26, 2022, Orion stated that "we do understand that Mr. Hall has one single WhatsApp communication. We have enclosed screenshots of those communications in an effort to ensure that you could review them as soon as possible." [180-4] 2.[4] Orion's counsel also represented that "neither of [its] clients have any other responsive WhatsApp communications." [Id.].

On September 28, 2022, Hall sat for his first deposition. Asked by Promier's counsel "what was the status of your WhatsApp account" on January 6, 2021, Hall testified that "[i]t was gone, long gone." [190-2] 3, at 319:4-6. Hall explained that he deleted his WhatsApp account "sometime in late 2020" or in the "fourth quarter" of that year. [Id.], at 319:7-10. Confronted immediately thereafter with a WhatsApp message that Hall had sent on January 27, 2021, Hall conceded that he could not have deleted his WhatsApp account in 2020. [Id.] 5, at 321:6-19. He then testified that he could have deleted the account "early first quarter" of 2021. [Id.], at 321:23-25. In their opposition to Promier's sanctions motion, Orion's counsel represent that they did not learn that Hall had deleted his WhatsApp account until Hall's deposition. See [190] 9 ("Orion's counsel learned about deletion of the WhatsApp messages the same moment Promier's counsel learned about it, at Richard Hall's September 28, 2022 deposition.").

Asked why he had deleted his WhatsApp account, Hall testified:

A:      If my memory is correct on why we got on WhatsApp, was to find sources of gloves for Texas, initially. And it opened up a plethora of people and unscrupulous things as we searched for product[.]

And when things didn't work out along the way, I would delete conversations if somebody turned out to be what I called a joker broker, an intermediary, or something like that. My name got on hundreds of lists, and I would get too many messages. And it was just too much noise, and I got rid of it.

[190-2] 3-4, at 319:18-320:6.

Evidence produced during discovery has shed some light on the extent to which Hall used WhatsApp in connection with his PPE business. Hall used WhatsApp to create at least two group chats in which he and others discussed PPE sales. See [180-2] 1 (reflecting that Hall "created group 'Masks Jon Lewis'" on December 15, 2020);

---

[4] Given Hall's testimony that he deleted his WhatsApp account around late January 2021, it is not clear to the undersigned how Orion could produce even a screenshot of one of Hall's WhatsApp messages in September 2022, more than a year-and-a-half after the account had been deleted. Promier's briefing has left this point unexplored, and Orion's briefing has left it unexplained.

[180-6] 1 (reflecting that Hall "created group '7/1/20 1860,'" in which sales of masks was discussed, on July 1, 2020). Third-party discovery undertaken by Promier also shows that Hall discussed specific sales of PPE with third parties, including Matthew Doherty and Stephen Ryan. *See* [180-6] 1-2 (WhatsApp message thread showing messages exchanged by Hall, Doherty, and two others between July 1, 2020 and July 8, 2020); [180-7] 1-3 (WhatsApp message thread showing that Hall and Ryan exchanged messages between September 2020 and November 2020). Zach Fuentes, another third party involved in PPE sales, testified that he had "personal knowledge of Richard Hall using WhatsApp to discuss deals and potential deals involving PPE." [180-8] 2. Fuentes acknowledged, however, that he did not "recall the specifics of PPE-related conversations" with Hall. [*Id.*]. The WhatsApp message thread between Hall and Doherty also indicates that Hall "left" that chat on May 17, 2022, though Hall had not sent or received any messages in the chat since July 8, 2020. [180-6] 2.[5]

Hall sat for a second deposition, this time in his capacity as Orion's Rule 30(b)(6) representative, on January 27, 2023. Promier questioned Hall about his use of WhatsApp to communicate with Carter New, an important third party involved in PPE sales. Promier contends that Hall and Orion coordinated with New to sell PPE to Duke University, and that, in doing so, Hall and Orion undercut Promier's own plans to sell PPE to Duke. *See*, *e.g.*, [159] 18, at ¶¶ 64-66. Asked by Promier's counsel how many WhatsApp communications Hall thought he had with New about the Duke sale, Hall testified, "I don't think any. I think this would be in my regular text messages, if I had them." [190-1] 3, at 265:4-9.

In June 2023, and in support of Orion's opposition to Promier's sanctions motion, Hall submitted a sworn declaration further addressing his use of WhatsApp in general and as it related to his and New's sale of PPE to Duke University. *See* [190-5]. Hall's declaration makes the following relevant points:

> During the COVID-19 pandemic, I sometimes used the WhatsApp messaging application for PPE-related discussions. I most often used it for those discussions that had an international element. If a domestic discussion began on WhatsApp, I would generally quickly move it to text messaging or iMessage.
>
> I dealt with Carter New in his capacity as a broker of PPE. The only type of message I vaguely recall receiving from Carter New on WhatsApp were forwards of messages from purported suppliers of PPE claiming that they possessed PPE, generally with a video or photos

---

[5] Neither Promier's briefs nor the attached exhibits establish when Promier obtained these WhatsApp messages from Doherty or Ryan. Earlier in the litigation, however, the undersigned observed that Promier had obtained responsive communications from Doherty by December 28, 2022. *See* [199] 8 (citing [168-13] 2).

purporting to prove the existence of PPE. Otherwise, all of my communications with Carter New were by iMessage, phone and email.

I never used WhatsApp as a primary method of communication for any PPE business that culminated in an actual sale. I used text messaging, iMessage, phone calls and e-mail for domestic discussions.

By the fall of 2020, I was being regularly inundated with WhatsApp messages about PPE, all of which seemed to be scams. Everyone seemed to be a supposed "middleman" or broker with access to suppliers or buyers of PPE, but the representations always turned out to be false. As a result, at that point I began regularly deleting those messages and groups from WhatsApp. I then deleted the WhatsApp application from my cell phone in or about January of 2021.

[*Id.*] 1-2, at ¶¶ 2-5.

Hall also addressed the evidence, discussed above and in Promier's sanctions motion, *see* [180] 2, 7, suggesting that he used or had access to his WhatsApp account in May 2022. According to Hall, in February 2022 he downloaded WhatsApp and signed into the app "following the death of [his] nephew resulting from a plane accident in Iceland. [He] downloaded it so that [he] could communicate with people in Europe in relation to [his] nephew's accident." [190-5] 2, at ¶ 6. Hall otherwise had "no recollection" of leaving any WhatsApp group chats in May 2022. [*Id.*], at ¶ 7.

## B. Promier's Motion For Leave To Subpoena Carter New For Documents and Deposition Testimony

In December 2022, District Judge Kendall–to whom the case was then assigned–set a fact discovery cutoff of January 31, 2022. [107]. On January 31, however, both sides filed motions to extend the cutoff to conduct additional fact discovery. [115, 116]. Relevant to the pending sanctions motion, Promier sought an extension to obtain "documents and testimony related to spoliation of evidence by Richard Hall, the principal of Orion Capital." [115] 1. According to Promier, it was not until Hall's Rule 30(b)(6) deposition on January 27, 2023 that Hall "confirmed that he had worked with Mr. New to undercut Promier's pricing with Duke University[,] cancelled a portion of Promier's order [to supply Duke with PPE] without its approval, and filled the then-cancelled order using product he obtained from Mr. New." [*Id.*]. Promier also maintained that evidence produced during discovery "establish[ed] that Mr. Hall conducted business via WhatsApp," and that Hall "deleted his entire WhatsApp account after it was clear that the parties would engage in litigation[.]" [*Id.*] 1-2.

Orion opposed the motion on timeliness grounds, contending that Promier itself had, in its January 2022 initial disclosures, identified New as a witness with knowledge of "PPE sales that Richard Hall engaged in that were not in conjunction with Promier." [122] 2 (internal emphasis omitted). Orion also pointed to other evidence produced during discovery from which New's involvement in the Duke sale was apparent. [*Id.*] 3; *see also* [122-1] 1-17. Finally, Orion's opposition brief represented that, on February 8, 2023, it produced to Promier a set of text messages (to be clear, not WhatsApp messages) that Hall and New exchanged between July 2020 and January 2021. *See* [122] 4; *see also* [180-17] (text message thread between Hall and New). According to Orion, Promier "did not bring to Orion's attention the fact that certain text messages between Mr. New and Orion apparently were not produced" until a few days before Promier filed its extension motion. [*Id.*]. Orion consulted with its e-discovery vendor and learned that the Hall-New message thread "should have been part of [an earlier production of ESI in July 2022] yet it was not part of it"; the vendor also stated that it could "not find a specific reason why [the text messages] would have been excluded" from that earlier production. [122-4] 1.

In an order entered on February 24, 2023, the undersigned granted Promier's motion in part and denied it in part:

> The Court grants Promier's motion to the extent that it seeks leave to serve a subpoena on New for his communications with Hall regarding PPE sales in conjunction with Orion that occurred over email, text messages, or WhatsApp.[6] Promier's motion establishes that Hall used WhatsApp to communicate with different third parties about PPE sales, and Orion does not deny that Hall used WhatsApp to communicate with New about the Duke deal. Indeed, Orion studiously ignores the evidence that Hall deleted his WhatsApp account and gave conflicting accounts about when he did so. Because any communications between Hall and New about PPE sales are likely to be relevant, and because Orion has not demonstrated that Promier should have known about and sought the deleted WhatsApp messages earlier in the litigation, the Court will allow Promier to subpoena New for documents. However, the Court denies the motion to the extent that Promier seeks leave to depose New. This request, filed on the last day of the fact discovery period, is untimely. Promier has known since January 2022 that New was likely to have information about Hall's sales of PPE that were not undertaken in conjunction with Promier: Promier itself disclosed New as a witness with such knowledge. Several months later, Orion produced the email thread that contains documents relating to the very sale of PPE that

---

[6] To ensure that all communications between New and Orion and/or Hall were produced, the Court set the scope of the third-party subpoena on New to include communications via email, text message, and WhatsApp messages. [125] 2. Promiser only alleges spoliation as to the WhatsApp messages.

Promier contends improperly undercut its own anticipated sale of PPE to Duke. Finally, the Court observes that Promier's motion is vague as to the purpose of deposing New. Based on a review of the rough transcript of the hearing before Judge Kendall on February 2, 2023, the undersigned concludes that the predominant purpose of the deposition was to explore the circumstances of Hall and New's sale of PPE to Duke. Because Promier has long known about this transaction and New's role in it, its request to depose New about these matters on the last day of the discovery period is untimely. The request for leave to depose New is therefore denied.

[125] 2-3 (internal citation omitted).

In accordance with that order, Promier subpoenaed New on March 6, 2023 for copies of emails, text messages, and WhatsApp messages that New had sent to or received from Hall between January 2019 and May 2022. [155-1] 1, 4. New and counsel for Promier exchanged emails about New's ability to access and produce these communications, and New ultimately reported, on March 23, 2023, that "he did not have any access to any iMessages or WhatsApp messages from the relevant period." [162-1] 3, at ¶ 11. Promier's counsel then undertook to obtain a declaration from New "confirming that Mr. New had exchanged messages (by various means, including WhatsApp) with Mr. Hall that would have been responsive to our subpoena but that he had not retained those messages." [*Id.*], at ¶ 12. On March 29, 2023, New executed a declaration that made the following points:

> I participated in sourcing and selling PPE in conjunction with Richard Hall of Orion Capital, LLC in 2020 and early 2021.

> I communicated with Richard Hall on my work-related email address[,] by iMessage text messages[,] and the WhatsApp text message platform[ ] in furtherance of these PPE sales in conjunction with Orion Capital, LLC.

> \*   \*   \*

> To ensure I do not exceed my data storage capacity, my WhatsApp text messages are also deleted after one year. I have attempted to access my WhatsApp text messages with Richard Hall from 2020 and early 2021. Despite these efforts, I am unable to access these messages.

> Additionally, I deleted all of my conversations related to PPE sales when I transitioned out of PPE sales and back to my regular business.

[180-9] 2, at ¶¶ 5-6, 9-10.

7

The New declaration also contained four paragraphs of "testimonial evidence" regarding New's "work with Orion's principal to sell PPE to Duke University allegedly in contravention of Promier's own plans to sell PPE to Duke." [171] 4. The inclusion of this material prompted Orion to seek sanctions against Promier for violating the Court's order forbidding Promier to depose New. *See* [155]. Finding that these four paragraphs were "the functional equivalent of deposition testimony," the Court, in an order entered on May 17, 2023, held that Promier had attempted an impermissible "end-run around the order barring Promier from taking New's deposition," struck the four paragraphs at issue, and barred Promier from using that portion of the declaration during the remaining discovery period and in connection with any dispositive motion practice. [171] 5-6.

## C.    Promier's Sanctions Motion

Promier filed its Rule 37(e) motion on June 12, 2023. It argues that Hall destroyed the WhatsApp messages he exchanged with third parties, including Carter New, with the intent to deprive Promier of the use of that evidence in this litigation. [180] 1-3. Promier contends that Orion obstructed its efforts to discover the evidence that Hall and New communicated over WhatsApp, and that this obstruction constitutes circumstantial evidence of its intent to deprive Promier of the messages. [*Id.*] 7-8. Promier also maintains that Hall lied under oath about when he deleted his WhatsApp account. [*Id.*] 7. Finally, Promier faults Orion's counsel for failing to disclose Hall's deletion of the WhatsApp messages and refusing to take any steps "to try to restore or replace the evidence that was in WhatsApp[.]" [*Id.*] 9. Promier asks the Court to sanction Orion under Rule 37(e)(2) by "providing for an adverse inference that the spoliated messages would have been unfavorable to Orion." [*Id.*] 11.

Orion argues that the motion should be denied for three reasons. First, Orion contends that the sanctions motion is merely a disguised motion "to reconsider because it addresses matters which this Court repeatedly has rejected" and seeks to circumvent the undersigned's earlier ruling barring Promier from deposing New. [190] 1. Second, Orion maintains that the motion is untimely because the factual basis for Promier's spoliation claim was known to Promier since at least January 2023, "when Promier first accused Orion of spoliation." [*Id.*] 8. Third, Orion argues that the spoliation motion fails on the merits because Hall "simply had no intent of 'destroying evidence' by scuttling an annoying phone application." [*Id.*] 9.

8

**Discussion**

**I.      Rule 37(e) Motion For Sanctions Based On Spoliation Of ESI**

**A.      Legal Standard**

Rule 37(e) provides that "[t]he district court may sanction a party that has failed to take reasonable steps to preserve electronically stored information if that information should have been preserved during the litigation, but it has been lost and cannot be restored or replaced through additional discovery." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.*, No. 12 CV 1851, 2016 WL 4765689, at *1 (N.D. Ill. Sept. 13, 2016).

"Rule 37(e) has five threshold requirements: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time [the] litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958 (C.D. Ill. 2021). "If all these threshold requirements are met, then the court must determine if the party seeking the ESI has suffered prejudice or if the party with possession, custody, or control of the ESI intended to deprive the seeking party of the ESI." *Id.* "If prejudice but not intent exists, then the court can impose curative measures," such as barring evidence or "instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Id.* "If intent (which presumes prejudice) exists, then the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default." *Id.* at 958-59.

**B.      The Motion Is Untimely.**

"Rule 37 'does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions.'" *Gruenstein*, 2022 WL 3213261, at *3 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009)). "However, courts have identified several factors that can be used to assess the timeliness of spoliation motions." *Id.* (internal quotation marks omitted). "'These factors include how long after the close of discovery the relevant spoliation motion has been made; the temporal proximity between a spoliation motion and motions for summary judgment; whether the spoliation [motion] was made on the eve of trial; whether there was any governing deadline for filing spoliation motions in the scheduling order issued pursuant to Federal Rule 16(b) or by local rule; and the explanation of the moving party as to why the motion was not filed earlier.'" *Id.* (quoting *GMS Indus.*

9

*Supply, Inc. v. G&S Supply, LLC*, No. 2:19-CV-324 (RCY), 2022 WL 853626, at *4 (E.D. Va. Mar. 22, 2022)).

"The lesson to be learned from the cases that have sought to define when a spoliation motion should be filed in order to be timely is that there is a particular need for these motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman*, 632 F. Supp. 2d at 508. "Courts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, attempt to reargue a substantive issue already ruled on by the court through the guise of a spoliation motion, or use such a motion to try to reopen or prolong discovery beyond the time allotted in the pretrial order." *Id.*

Premier argues that its motion is timely because it was filed nearly two months before the close of fact discovery and could not have been filed earlier because Premier had to conduct extensive third-party discovery to determine if it could obtain Hall's WhatsApp messages from other sources. [196] 13-14. Having considered the totality of the circumstances surrounding Premier's filing of the Rule 37(e) motion, the undersigned recommends that the District Judge deny the motion as untimely.

### 1. Premier Knew The Key Factual Predicates Of Its Spoliation Claim Long Before It Filed The Motion.

First, Premier has long known the key factual predicates underlying its spoliation claim: that Hall deleted his WhatsApp account sometime after January 27, 2021, and that New could not access any of the WhatsApp messages that he and Hall had exchanged. Hall testified at his first deposition on September 28, 2022–nearly nine months before the spoliation motion was filed–that he deleted his WhatsApp account. [190-2] 3, at 319:4-6. New confirmed in an email to Premier's counsel on March 23, 2023–nearly three months before the spoliation motion was filed–that "he did not have access to any iMessages or WhatsApp messages from the relevant period." [162-1] 3, at ¶¶ 10-11.

In these circumstances, Premier has not adequately explained why it waited until June 12, 2023 to file the spoliation motion. *See Goodman*, 632 F. Supp. 2d at 509 (plaintiff's failure to offer "satisfactory explanation why he could not have filed his Motion much earlier" was "particularly egregious given the fact that he clearly was aware of the grounds for his Motion months before he filed it"). Premier contends that it was forced to undertake "extensive third-party discovery" to determine whether it could obtain Hall's WhatsApp messages from other sources. [196] 13. But Premier's motion and exhibits do not substantiate this assertion. Most notably, Premier's briefing does not say when it completed the third-party discovery that was intended to replicate Hall's WhatsApp messages from other sources. A review of the docket confirms, however, that these efforts began in the fall of 2022 and were mostly

completed by the end of January 2023. For example, Promier served third party Matt Doherty with a subpoena on October 1, 2022, and emails from Promier's counsel demonstrate that Promier obtained responsive documents by late December 2022. *See* [98]; [168-13] 2. Promier notified Orion on September 22, 2022 that it was planning to subpoena third party Zach Fuentes but was waiting for Fuentes to return to the country before doing so. *See* [100] 1. The record does not disclose whether or when Promier obtained a responsive production from Fuentes, but Fuentes was deposed on January 25, 2023. *See* [180-8]. Promier then notified Orion on October 11, 2022 of its plan to subpoena third party Stephen Ryan for documents. [*Id.*] 1-2. Again, the record is silent on when Promier received his responsive production. Finally, while Promier asserts that Fuentes deleted his WhatsApp account–which allegedly prevented Promier from recovering any WhatsApp messages he had exchanged with Hall–Promier cites no evidence to support that assertion. *See* [180] 2, 8; [180-1] 6, at ¶¶ 23-24. Accordingly, the Court has no basis to find that Promier was attempting to replicate Hall's messages through Fuentes at any time after the latter's deposition on January 25, 2023.[7]

Regarding Carter New, Promier contends that its efforts to obtain his WhatsApp messages did not conclude until May 2023, when the undersigned "ruled on the extent to which Promier could use the New Declaration." [196] 3. The record refutes this claim in multiple ways. To begin with, Promier knew from at least January 2022 that New was involved in "PPE sales that Richard Hall engaged in that were not in conjunction with Promier," [190-4] 7, and Promier's sanctions motion concedes that New's involvement in the sale of PPE to Duke was "evident" from an October 2020 email that Orion produced during discovery. [180] 7 (citing [180-1] 7, at ¶ 30. Once Promier learned from Hall's September 2022 deposition that Hall had deleted his WhatsApp account, it had every reason to subpoena New for his communications with Hall. Yet Promier delayed until January 31, 2023–then the last day of fact discovery–to do so.[8] Even setting that delay aside, however, the salient point for purposes of Promier's spoliation motion was whether New could access his WhatsApp messages with Hall and thereby replicate the messages that Hall had

---

[7] Promier represents that Fuentes "testified that . . . he could not access *his deleted WhatsApp messages*," [180-1] 6, at ¶ 24 (emphasis added), but Fuentes does not discuss deleting his own WhatsApp messages in the excerpt of his deposition that Promier attached to its motion. *See* [180-8] 1-3. In any event, even if Fuentes had addressed the deletion of his own WhatsApp messages during this deposition, the deposition was taken on January 25, 2023, nearly five months before the sanctions motion was filed. [*Id.*] 3.

[8] There is no contradiction between this conclusion and the undersigned's earlier ruling that Promier's January 31, 2023 request to subpoena New for documents was timely. That ruling rested in significant part on the fact that Orion had "not demonstrated that Promier should have known about and sought the deleted WhatsApp messages earlier in the litigation[.]" [125] 2. But here, with the benefit of a more complete evidentiary record, it is apparent to the undersigned that Promier knew or should have known in the fall of 2022 that New was a potential source of Hall's deleted WhatsApp messages and that Promier could have sought to serve third-party discovery on New much earlier than it did.

deleted. But Promier's own evidence establishes that New told Promier he could not do so on March 23, 2023. [162-1] 3, at ¶¶ 10-11. At that point, there was no other evidence that Promier needed to develop to prove that Hall's WhatsApp messages could not be restored or replaced–and, indeed, Promier does not cite any evidence it developed after March 23 that bears on its spoliation claim. Finally, Promier's contention that it had to wait for the undersigned's ruling on Orion's motion for sanctions before it could know the extent to which it could base its spoliation claim on New's declaration is not credible. Orion's motion, which was filed on April 20, 2023, did not challenge the New declaration to the extent it recited historical information about New's use of WhatsApp and his inability to recover his WhatsApp messages. *See* [155] 3-6. Indeed, when the undersigned issued her ruling on May 17, 2023, she expressly noted that this portion of New's declaration was "unobjectionable." [171] 4. What Orion's motion did challenge, and what the undersigned determined to be sanctionable, was Promier's calculated effort to use the New declaration to side-step the undersigned's earlier ruling that Promier could not depose New about his and Hall's sales of PPE. Simply put, the May 17 ruling had nothing to do with whether Promier had established one of the factual predicates of its spoliation claim. The undersigned therefore rejects Promier's claim that it could not have filed the Rule 37(e) motion until after Orion's sanctions motion had been resolved.

In sum, the factual basis of Promier's spoliation claim had been almost completely developed by late January 2023. At that time, Promier knew that Hall (1) used WhatsApp to communicate with third parties about PPE sales, (2) worked with Carter New to sell PPE to Duke University, and (3) had deleted his WhatsApp account. Promier had also completed almost all third-party discovery intended to replicate Hall's WhatsApp messages from other sources. The only outstanding item–whether Carter New still possessed his WhatsApp messages with Hall–should have been pursued much earlier, given Promier's knowledge about New's involvement with Hall and the fact that Hall had deleted his WhatsApp account. Even under the most generous reading of the record, Promier had completely developed all factual bases of its spoliation claim by March 23, 2023, when New confirmed that he could not access his WhatsApp messages. Promier's failure to offer a satisfactory explanation for why it waited until almost three months later to file the Rule 37(e) motion–and, as well, why it had not directed third-party discovery on Carter New in the late fall of 2022, when it served discovery on other third parties with whom Hall did business–weighs heavily in favor of finding the motion untimely. *Compare Gruenstein*, 2022 WL 3213261, at *3-4 (Rule 37(e) motion filed less than two weeks after discovery closed and less than two months after plaintiff confirmed, via third-party discovery, that iPhone had been destroyed was timely where plaintiff "reasonably sought to pursue one last round of settlement talks before asking that [defendant] be sanctioned").

### 2. Fact Discovery Was Closed For All Relevant Purposes When Promier Filed The Rule 37(e) Motion.

Second, that fact discovery remained open for extremely limited purposes when Promier filed its Rule 37(e) motion does not make the motion timely.

To the contrary, beginning in December 2022, both Judge Kendall and the undersigned have progressively narrowed the scope of the remaining fact discovery that the parties could undertake. On December 8, 2022, for example, Judge Kendall granted the parties' agreed motion to extend the discovery cutoff until January 31, 2023 so that the parties could complete six specifically enumerated discovery items and reasonably related follow-up discovery. [107]. Nothing in the motion, *see* [106], or Judge Kendall's order referred to Promier's spoliation claim or Carter New. On February 24, 2023, the undersigned largely denied the parties' competing motions to extend the discovery cutoff yet again, but gave the parties until April 10, 2023 to complete several categories of discovery. [125] 6. That order "clearly spelled out what discovery was timely and permissible, and what discovery was untimely and not permissible." [171] 5 n.4. The April 10, 2023 deadline was later extended until April 14, 2023 and then to June 12, 2023, *see* [142, 166], but at no point did the undersigned expand the scope of permissible fact discovery.[9] Finally, on April 25, 2023, Judge Jenkins–to whom the case was reassigned earlier this year–granted Promier's motion for leave to file an amended complaint and authorized Orion to depose William Trofi, a Duke University official who was involved in the purchase of PPE from Hall and New. In granting the motion, Judge Jenkins observed that "[t]he parties have just about concluded fact discovery and are about to begin expert discovery," and that "it appears from the briefs that only a limited amount of fact discovery by Orion will be required should the Court allow the amendment." [158]. On June 12, 2023–and immediately before Promier filed the pending sanctions motion–the undersigned extended fact discovery until July 31, 2023 "for the sole purpose of completing the deposition of Mr. Trofi." [179].

In sum, Promier is correct only in the technical sense that fact discovery remained open when it moved for sanctions. On June 12, 2023, the fact discovery period remained open for a single purpose: to complete the Trofi deposition. Yet Promier's sanctions motion, which includes a request to reopen Hall's deposition and another request to depose New, effectively seeks to reopen and extend fact discovery. *See* [196] 2-3. In the undersigned's view, this is a critical distinction between this case

---

[9] The only arguable caveat to this statement is that, because of Promier's improper efforts to limit the scope of the depositions of two of its principals, the undersigned twice authorized Orion to reopen those depositions and sanctioned Promier by requiring it to make additional witnesses available for depositions. *See* [166, 205]. It should go without saying that the undersigned's need to authorize additional discovery in response to Promier's sanctionable conduct does not change the fact that the scope of permissible discovery had been ever narrowing since December 2022.

and *Gruenstein*, on which Premier relies. *See* [*id.*] 11, 13. Not only was the Rule 37(e) motion in *Gruenstein* filed only two months after Gruenstein had established the factual predicate of his spoliation claim (and thirteen days after the close of fact discovery), but "granting the motion" would not have "necessitate[d] further discovery; the only relief that Gruenstein seeks is a sanction against Browning for the spoliation of the iPhone." 2022 WL 3213261, at *3. Premier's motion, in contrast, would require another extension of fact discovery.

Because the lengthy fact discovery period in this case was essentially closed when Premier filed its Rule 37(e) motion, and because granting the motion could entail still more fact discovery–including a deposition that the undersigned has already concluded Premier failed to timely pursue–the District Judge should find the motion untimely. *See Goodman*, 632 F. Supp. 2d at 508 ("Reopening discovery, even if for a limited purpose, months after it has closed or after dispositive motions have been filed, or worse still, on the eve of trial, can completely disrupt the pretrial schedule, involve significant cost, and burden the court and parties.").

### 3. The Motion Seeks Leave To Undertake Discovery That Premier Has Not Timely Pursued.

Finally, the undersigned has significant concerns that Premier is using its Rule 37(e) motion to relitigate the denial of its untimely request to depose New and compensate for its failure to timely seek to reopen Hall's deposition after Orion produced the Hall-New text messages in February 2023. *Accord Goodman*, 632 F. Supp. 2d at 509 (courts should be "unsympathetic to litigants who . . . use [a spoliation] motion to try to reopen or prolong discovery beyond the time allotted" by the court). As already noted, the undersigned denied Premier's request to depose Carter New because Premier had long known of New and his involvement in the Duke sale,[10] but waited until what was then the last day of fact discovery to seek his deposition. Furthermore, despite Orion's having produced the "incredibly salient," [196] 8, text message thread between Hall and New on February 8, 2023, Premier never moved to reopen Hall's deposition to question him about these messages. Now Premier asks the Court to permit it to undertake this exact discovery as a sanction for Orion's alleged spoliation of evidence.

The undersigned recognizes that Rule 37(e) provides an independent source of sanctions to address a party's spoliation of ESI, and that in the right case appropriate sanctions might include an order authorizing a party to undertake discovery that could have or should have been undertaken earlier. But this is not that case, not only

---

[10] Premier acknowledges in its sanctions motion that "it is evident" from an October 27, 2020 email produced by one of Orion's principals that "New sourced 2 million 3-ply masks that Orion sold to Duke[.]" [180] 7 (citing [180-1] 7, at ¶ 30); *see also* [180-11] (October 27, 2020 email from Scott Weiland to Richard Hall, forwarding an October 22, 2022 email from Carter New to Hall).

14

because Promier has unreasonably delayed in seeking this discovery and in bringing the Rule 37(e) motion itself, but also because the Rule 37(e) motion is plainly meritless. To be sure, Hall's intentional deletion of his WhatsApp account amounts to spoliation of evidence that was likely relevant to Promier's claims. But when a court considers "the propriety of [giving] an adverse inference instruction" like the one Promier seeks, "the crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2008) (internal quotation marks and brackets omitted). "[P]roof that evidence was lost or destroyed does not by itself establish bad faith." *Teamsters Local Union No. 727 v. Chicago Parking Valet*, Case No. 1:16-cv-6443, 2020 WL 13618112, at *2 (N.D. Ill. May 8, 2020). As explained at length below, however, there is no evidence at all that Hall intended to deprive Promier of the messages in his WhatsApp account. Moreover, basic questions about the nature of WhatsApp in general and Hall's WhatsApp account specifically–which might have elevated Promier's speculations to corroborated facts–remain unanswered. Promier did not offer evidence, for example, from WhatsApp or a forensic image of Hall's phone (or any indication that Promier attempted to do so) to refute Hall's testimony about when he deleted and reactivated his WhatsApp account or to illuminate the impact, if any, of account reactivation to messages previously lost at the time of account deletion. Likewise unexplained is the significance (if any) of the fact that Hall left a WhatsApp chat in May 2022, nearly two years after he had last exchanged a message in that chat. Nor does it appear–at least from the limited excerpts of Hall's depositions that are attached to the parties' briefs–that Promier questioned Hall about whether he, like Carter New, had engaged any of the ephemeral message settings available through WhatsApp to automatically delete messages after a certain amount of time.[11] *See* [180-9] 2, at ¶ 9 (New's WhatsApp messages automatically deleted after one year). It is therefore unclear whether, when Hall deleted WhatsApp in January 2021, any relevant text messages even remained in his account or had been deleted pursuant to an auto-delete setting.

Given the weakness of the Rule 37(e) motion, the holes in the record relating to the ESI at issue, and Promier's express requests for discovery that should have been pursued much earlier in the litigation, the undersigned concludes that Promier's motion is a disguised effort to relitigate discovery disputes that it either lost or failed to pursue in a timely fashion. This factor, too, weighs in favor of the motion being found untimely.

*   *   *

Promier unreasonably delayed bringing its motion until nearly three months after establishing, in March 2023, the final factual predicate of its spoliation claim. If anything, the motion is even more untimely because Promier should have–and

---

[11] *See* The Sedona Conference, *Commentary on Ephemeral Messaging,* 22 Sedona Conf. J. 435, 446-53, 462-63 (2021) (discussing ephemeral messaging, including "WhatsApp, a messaging application offering E2E encryption and a limited automated deletion feature").

could have–established by late January 2023 that Carter New's WhatsApp messages had also been deleted. Fact discovery was essentially closed for all relevant purposes when Promier filed the motion on June 12, 2023, yet the motion seeks to reopen and extend the discovery cutoff once again. The undersigned has significant concerns that Promier is using the motion to relitigate or raise discovery issues that have been, or should have been, brought to the undersigned's attention long ago. In these circumstances, the fact that this case is not ready for dispositive motions or trial, and that no specific deadline for spoliation motions had been set–considerations that might, in another case, weigh in favor of the motion being timely, *see Gruenstein*, 2022 WL 3213261, at *3–are immaterial here. The undersigned therefore recommends that the District Judge deny Promier's motion as untimely.

### C. The Motion Fails On The Merits.

In the alternative, the District Judge should deny the Rule 37(e) motion on the merits. Although Promier has established the five threshold requirements of its spoliation claim, Promier has not proved by a preponderance of the evidence that Hall deleted his WhatsApp account with the intent to deprive Promier of its use in this litigation.[12]

### 1. Promier Established The Five Prerequisites Of Its Spoliation Claim.

First, there is no dispute that Hall's WhatsApp messages constitute ESI. "The Federal Rules of Civil Procedure do not define ESI. Instead, the advisory committee's notes to Rule 37(e) broadly discuss ESI as covering all current types of computer-based information." *Gruenstein*, 2022 WL 3213261, at *5 (internal brackets and quotation marks omitted). Here, the WhatsApp messages are essentially text messages that were exchanged over an app that offers enhanced security features. Such messages constitute ESI. *See Pable v. Chicago Transit Auth.*, No. 19 CV 7868, 2023 WL 2333414, at *19 (N.D. Ill. Mar. 2, 2023) (finding that encrypted text messages sent over Signal messaging app constituted ESI); *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1012 (D. Ariz. 2021) (holding that regular text messages constituted ESI).

---

[12] The undersigned observes that Promier has not requested an evidentiary hearing or suggested that a hearing is necessary to resolve any issues relating to its Rule 37(e) motion. In any event, the undersigned does not believe that an evidentiary hearing is needed to resolve any disputed factual issues or that such a hearing would assist the undersigned in resolving the issues raised by Promier's motion. *See Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022) (district court "reasonably decided not to hold a live hearing on [plaintiff's] alleged fraud" and request for "sanctions" where, *inter alia*, plaintiff "failed to identify any evidence or plausible argument that could affect the court's decision"); *Kapco Mfg. Co., Inc. v. C&O Ents., Inc.*, 886 F.2d 1485, 1494-95 (7th Cir. 1989) (right to evidentiary hearing in case seeking imposition of sanctions against attorney under 28 U.S.C. § 1927 "is obviously limited to cases where a hearing could assist the court in its decision").

Second, the District Judge should find that Orion had a duty to preserve any messages that existed in Hall's WhatsApp account that arose no later than January 6, 2021, when Orion served a demand letter on Promier related to the events giving rise to this suit. *See* [190-2] 4-5, at 320:11-321:19.[13] "The duty to preserve under Rule 37(e) is based on the common law, and so is triggered when litigation is commenced or reasonably anticipated." *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 619 (N.D. Ill. 2022). "A duty to preserve evidence can arise before litigation starts, and Rule 37(e), which applies to ESI that should have been preserved in the anticipation or conduct of litigation, expressly contemplates this scenario." *Gruenstein*, 2022 WL 3213261, at *6 (internal quotation marks omitted). "A demand letter threatening litigation may trigger the duty to preserve documents within its scope." *Does 1-5 v. City of Chicago*, Case No. 18-cv-3054, 2019 WL 2994532, at *4 (N.D. Ill. Jul. 9, 2019). Because Orion served a demand letter on January 6, 2021 relating to the claims at issue in this case, litigation was foreseeable no later than that date.[14]

Third, the District Judge should also find that Hall's WhatsApp messages were relevant. "Rule 37(e) only applies to relevant ESI." *Snider v. Danfoss*, 15 CV 4748, 2017 WL 2973464, at *4 (C.D. Ill. Jul. 12, 2017). "Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance." *DR Distribs.*, 513 F. Supp. 3d at 978. "This burden is not a high standard for at least two reasons. First, relevance is determined under the standard in Federal Rule of Civil Procedure 26(a)(1) and not the standard of Federal Rule of Evidence 401, which itself is not a high standard." *Id.* (internal citations omitted). "Second, the principle that the party with access to the proofs generally bears the burden on an issue should temper, at least to some extent, the quantum necessary to meet the burden. In spoliation circumstances, the party seeking sanctions does not have access to all the necessary proofs in large part because the other side spoliated the evidence." *Id.* at 978-79 (internal citations omitted).

---

[13] Again, the undersigned observes that nothing in the record establishes the ephemeral messaging capabilities of WhatsApp and what, if any, deletion settings Hall applied to his WhatsApp account. Because Orion does not dispute that relevant WhatsApp messages existed in Hall's WhatsApp account when it was deleted, the undersigned need not address this issue further.

[14] Orion's duty to preserve may have arisen as early as September 2020. Orion alleges in its answer to Promier's amended complaint that, on August 28, 2020, "Promier repudiated the parties' agreement" to sell PPE together and to share the profits they generated. *See* [167] 29-30, at ¶ 69. Orion also claims that, in the weeks after August 28, 2020, Promier "refused to take Orion's phone calls or respond to its voicemail messages, emails and text messages[.]" [*Id.*]. The breakdown in the parties' relationship caused by the alleged repudiation suggests that Orion could reasonably have foreseen litigation in September 2020. The undersigned need not resolve this issue definitively, however, because it is undisputed that Hall deleted his WhatsApp account no earlier than January 27, 2021. In other words, there is no dispute that Hall deleted evidence after a duty to preserve arose in January 2021.

The evidence establishes that Hall used his WhatsApp account to discuss PPE-related business and that the account likely contained at least some messages that were relevant to Promier's claims. Hall admitted that he discussed PPE business on WhatsApp, *see* [190-2] 4-5, at 320:11-321:19, though he also claimed that iMessage and text messages were his primary means for discussing sales of PPE that were based in the United States. *See* [190-5] 1, at ¶ 2. In addition, multiple third parties–Carter New, Zach Fuentes, Matt Doherty, and Jon Lewis–exchanged WhatsApp messages with Hall that related to PPE sales. *See* [180-2] 2 (WhatsApp thread between Hall and Lewis); [180-8] 2 (Fuentes deposition testimony); [180-6] 1-2 (Doherty's WhatsApp message thread with Hall); [180-9] 2, at ¶ 6 (New's declaration). The WhatsApp messages obtained by Promier show, moreover, that Hall was using the app to exchange messages in the Fall of 2020 and into January 2021, at the time of the contested sale of PPE to Duke and shortly before this lawsuit was filed. The undersigned therefore recommends that the District Judge find that the WhatsApp messages were likely to contain relevant evidence relating to Hall's efforts to sell PPE with parties other than Promier.

Fourth, the District Judge should find that Hall failed to take reasonable steps to preserve his WhatsApp account. Because litigation with Promier was reasonably foreseeable in early January 2021, Hall had an obligation to preserve relevant evidence–including the WhatsApp messages. Rather than doing so, however, Hall deleted his WhatsApp account. This amounts to a failure to take reasonable steps to preserve evidence. *See Pable*, 2023 WL 2333414, at *26-29 (finding that plaintiff who intentionally deleted Signal messages did not take reasonable steps to preserve ESI).

Fifth, the District Judge should find that the ESI cannot be restored or replaced through other means. Orion does not dispute Promier's representation that, because Hall deleted his WhatsApp account, the messages Hall exchanged on WhatsApp cannot be retrieved. Furthermore, Promier has been unable to recover Hall's messages from at least one of the third parties with whom he exchanged WhatsApp messages: Carter New. [180-9] 2, at ¶ 9.[15]

For these reasons, the undersigned recommends that the District Judge find that Promier has established the five prerequisites of its ESI spoliation claim.

---

[15] As noted above, Promier cites no evidence (other than a declaration by one its attorneys, which in turn cites no evidence) to support its claim that Fuentes deleted his WhatsApp messages. In addition, Promier appears to have obtained at least some of Hall's WhatsApp messages with Stephen Ryan and Matthew Doherty, third parties whom Hall dealt with but whose involvement in the events giving rise to this litigation is unclear. The undersigned therefore finds that the only WhatsApp messages that cannot be restored or replaced are Hall's messages with Carter New.

### 2. Promier Has Not Proved That Hall Or Orion Intended To Deprive Promier Of The Use Of The WhatsApp Messages.

"Intent must be established before a court can impose sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2)." *DR Distribs.*, 513 F. Supp. 3d at 980. "The intent-to-deprive determination equates to a finding of bad faith–that the spoliator had a purpose of hiding adverse evidence, as in other spoliation contexts." *In re: Local TV Advertising Antitrust Litig.*, MDL No. 2867, 2023 WL 5607997, at *6 (N.D. Ill. Aug. 30, 2023). "[I]ntent is difficult for a moving party to prove and for a court to find," and "[t]he evidence used to establish intent is almost always circumstantial[.]" *Hollis*, 603 F. Supp. 3d at 623. "Although there need not be a 'smoking gun' to prove intent, there must be evidence of a serious and specific sort of culpability regarding the loss of the relevant ESI." *Pable*, 2023 WL 2333414, at *31 (internal brackets, ellipses, and quotation marks omitted). For a court to impose sanctions under Rule 37(e)(2), the spoliator's intent to deprive must be proved by a preponderance of the evidence. *See Ayers v. Heritage-Crystal Clean, LLC*, No. 1:20-cv-5076, 2022 WL 2355909, at *3 (N.D. Ill. Jun. 1, 2022). "If intent is established . . . prejudice need not be separately established because prejudice is assumed from the intent." *DR Distribs.*, 513 F. Supp. 3d at 980 (internal citation omitted).

Before turning to the issue of intent to deprive, the undersigned observes that Promier has not argued that it was prejudiced for purposes of Rule 37(e)(1) by Hall's destruction of the WhatsApp messages. *See* [180] 6-11. Indeed, Promier has expressly disclaimed any prejudice argument. *See* [196] 3 n.2 ("Promier need not demonstrate that it was prejudiced from these violations, either."). Accordingly, the undersigned recommends that the District Judge find that Promier has forfeited any argument that it was prejudiced by the loss of the ESI and that curative measures should be imposed under Rule 37(e)(1). *See John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it."). Even if Promier had not forfeited this argument, the undersigned could not recommend a finding that Hall's spoliation of the WhatsApp messages prejudiced Promier. "'Prejudice' under Rule 37(e) means that a party's ability to obtain the evidence necessary for its case has been thwarted." *DR Distribs.*, 513 F. Supp. 3d at 981. The WhatsApp messages between Hall and New do not appear "necessary" for Promier's case because Promier already has hundreds of text messages that Hall and New exchanged, including messages about the Duke sale. Promier itself describes these messages as "incredibly salient," [196] 8, and "key evidence of a similar nature to what was likely in WhatsApp[.]" [180] 2-3. Given the existence of the "similar" text messages between Hall and New and Hall's unrefuted testimony that WhatsApp was never his preferred means of communicating about PPE sales, Promier could not show prejudice and the District Judge should not impose any curative measures under Rule 37(e)(1).

As for intent, Promier argues that "four facts demonstrate Orion intentionally deleted Mr. Hall's WhatsApp messages to prevent Promier from using them" in this litigation. [196] 6. First, Promier contends there is a conflict between Hall's testimony that he did not communicate with Carter New about the Duke sale via WhatsApp and New's declaration that he communicated with Hall over WhatsApp "in furtherance of PPE sales." [*Id.*] 7 (internal emphasis omitted). Second, Promier maintains that Hall "lied twice about when he deleted his WhatsApp messages and account." [*Id.*] (internal emphasis omitted). Third, Promier argues that Orion's disclosure, in February 2023, of the text message thread between Hall and New is "further evidence that Orion intentionally deleted" the WhatsApp messages "it knew [were] relevant." [*Id.*] 8. Finally, Promier points out that "Orion and its counsel have not made any effort to explain the spoliated WhatsApp messages" and "have instead hid the spoliation and minimized the importance of the spoliated evidence." [*Id.*]. Orion responds that there is no evidence that Hall deleted his WhatsApp account as a way of "destroying evidence" that would have been favorable to Promier. [190] 9. It also suggests that Promier's spoliation claim necessarily fails in light of Hall's testimony that he deleted WhatsApp because it was "annoying," not to hide evidence. [*Id.*].

For the following reasons, the undersigned recommends that the District Judge find that Promier has not proved, let alone proved by a preponderance of the evidence, that Hall deleted his WhatsApp messages in bad faith.

### i.   New's Declaration Does Not Meaningfully Contradict Hall's Testimony That He Did Not Use WhatsApp To Discuss The Duke Sale.

To begin with, the undersigned rejects Promier's claim that a material conflict exists between Hall's testimony and New's declaration. Hall testified that he did not think he had "any" WhatsApp communications with New "about an order from Duke University" for PPE. [190-1] 3, at 265:4-8. The New declaration, however, does not say that New communicated with Hall about the Duke sale. Rather, New states only that he "participated in sourcing and selling PPE in conjunction with Richard Hall . . . in 2020 and early 2021," and that he communicated with Hall on his "work-related email address," "by iMessage text messages," and "the WhatsApp text message platform . . . in furtherance of these PPE sales." [180-9] 2, at ¶¶ 5-6. Stated another way, New did not testify that he used each of these messaging platforms to discuss with Hall all the sales of PPE that the two conducted in 2020 and 2021. Indeed, nowhere in the declaration–which was drafted by Promier's counsel, *see* [162-1] 3, at ¶ 13–did New specifically say whether he used WhatsApp to discuss the Duke sale with Hall or the extent to which he and Hall communicated about that sale over WhatsApp. Despite this hole in the record, Promier contends that the New declaration yields "a fair inference" that the WhatsApp messages would have included the sale of masks to Promier's client, Duke University Health System." [196]

5. What Promier sees as a reasonable inference, however, is just speculation. Not even in the portions of the New declaration that Promier (impermissibly) sought to use as a substitute for deposition testimony did New address his use of WhatsApp to discuss the Duke sale with Hall. What's more, Hall not only twice denied using WhatsApp to have meaningful discussions about the Duke sale, *see* [190-1] 3, at 265:4-8; [190-5] 1-2, at ¶¶ 3-4, but also testified that his primary methods for discussing that or any other PPE sale would have been regular text messages or iMessages, phone calls, and email, *see id.* Whereas Promier's speculation about Hall's use of WhatsApp to discuss the Duke deal is uncorroborated, Orion's production of hundreds of text messages between Hall and New–messages that Promier describes as "incredibly salient," [196] 8, and probative of key elements of its claims, *see* [180] 12–tends to confirm Hall's version of events.

The absence of any meaningful conflict between Hall's testimony and New's declaration significantly undermines Promier's claim that Hall deleted the WhatsApp messages to hide them from Promier.

### ii. Promier Has Not Proved That Hall Lied About When He Deleted His WhatsApp Account.

Nor has Promier proved that Hall testified falsely about when he deleted his WhatsApp account. There is no dispute that Hall gave inconsistent testimony on this subject: he first testified that he deleted the account in late 2020, but then, after being shown a WhatsApp message he sent on January 27, 2021, testified that the account "could have been" deleted "early first quarter" of 2021. [190-2] 3, at 319:7-10; [*id.*] 5, at 321:6-25. While the undersigned accepts that Hall must have deleted his WhatsApp account after January 27, 2021, the record does not definitively establish when Hall deleted the account. Nor is it reasonable to infer from the mere fact that Hall contradicted himself on this topic that he was lying or trying to deceive Promier about when the account was deleted.

Promier attempts to bolster its claim that Hall testified falsely by arguing that, after Hall was shown "additional evidence that he accessed his WhatsApp account in May 2022," Hall "changed his story again and admits that he had access to his WhatsApp Account as late as February 2022." [196] 7. This appears to be a reference to Hall's testimony that he "downloaded the WhatsApp application and signed into that application again in February of 2022 following the death of [his] nephew resulting from a plane accident in Iceland." [190-5] 2, at ¶ 6. But the undersigned cannot see how the fact that Hall briefly used WhatsApp in early 2022 following a family tragedy has anything to do with Hall's state of mind in or around January 2021, when the WhatsApp account was likely deleted. Promier does not question, for example, that Hall's nephew was in fact killed in Iceland or that Hall found it convenient to use WhatsApp for the narrow purpose of communicating about the incident. Promier also emphasizes that a WhatsApp message thread indicates that

Hall left a WhatsApp group chat on May 17, 2022. [196] 8. Again, the significance of this evidence (if any) and its relationship to Hall's state of mind relating to his deletion of the WhatsApp account is unexplained. Premier has not introduced evidence from WhatsApp or another source that illuminates whether Hall's leaving a group chat in May 2022 was somehow inconsistent with his testimony that he had deleted his WhatsApp account in January 2021. In any event, the WhatsApp thread on which Premier relies shows that Hall had not exchanged a message with any of the chat's participants since July 2020.

Premier relies on *Pable v. Chicago Transit Authority* to support its contention that Hall's "evolving account" of "the circumstances surrounding Mr. Hall's deletion of his WhatsApp messages" demonstrates that he deleted them in bad faith. [196] 10. But there is simply no resemblance between Hall's deletion of his WhatsApp account and the bad-faith spoliation of ESI in *Pable*. In *Pable*, the CTA alleged that Pable deleted a thread of Signal messages that he exchanged with his supervisor about the events that led to Pable's forced resignation from the CTA. *See* 2023 WL 2333414, at *1. At his deposition, Pable explained in detail how, when his supervisor deleted their Signal message thread from the Signal app on the supervisor's own phone, these same Signal messages were automatically deleted from Pable's phone, too. *Id.*, at *6-7. The CTA then obtained an affidavit from Signal's Chief Operating Officer that "establishe[d] that Pable's testimony" about the disappearance of the Signal messages from his own phone "could not have been true." *Id.*, at *27. Pable responded with his own affidavit, which offered a new explanation for how the Signal messages were deleted from his phone that not only contradicted his deposition testimony, but also depended on information that he had never produced during discovery. *Id.*, at *27-28. These circumstances led the court to find that "both of Pable's accounts are false, and that the only reasonable explanation for the disappearance of the message thread from Pable's phone is that Pable himself intentionally deleted it." *Id.*, at *29. Unlike *Pable*, here there is no definitive evidence–from WhatsApp or elsewhere– compelling the conclusion that Hall purposefully lied about when his WhatsApp account was deleted. In *Pable*, moreover, Pable deleted a specific set of Signal messages with his supervisor, who was "a key witness to–and participant in–the events underlying Pable's suit against the CTA." *Id.*, at *1. Here, however, Hall deleted his entire WhatsApp account, and did not single-out specific WhatsApp chats or message threads that may have been probative of Premier's claims (such as those with Carter New, for example, or those with Fuentes and Ryan) for deletion. Finally, the deletion of the Signal messages in *Pable* "effectively kneecapped the CTA's ability to establish that . . . Pable was a bad actor who was forced to resign for violating CTA's policies and procedures[.]" *Id.*, at *1. In contrast, there is no indication that Hall's WhatsApp messages were similarly critical to Premier's ability to prove its claims against Orion. Indeed, Premier has not even argued that it was prejudiced within the meaning of Rule 37(e)(1) by Hall's spoliation of the WhatsApp messages, and the undersigned has already explained that Premier has a "similar" set of "incredibly salient" messages between Hall and New with which to prove its claims.

Finally, Promier contends that the fact that New and Zach Fuentes deleted their WhatsApp messages "suggest[s] a coordinated effort" between them and Hall to destroy relevant evidence. [180] 2; *see also* [*id.*] 6 (arguing that Hall's deletion of WhatsApp messages "left Promier to fill that gap by chasing third parties (who, likely in collaboration with Mr. Hall) also deleted their WhatsApp communications"). The undersigned observes that there is no evidence in the record whatsoever to support this claim. For one thing, Promier has not substantiated its claim that Fuentes deleted his WhatsApp account at all. Nor has it cited any evidence about the relationship between Hall and Fuentes, such that the undersigned had some non-speculative basis on which to weigh this contention. For another, Promier ignores New's testimony that, to preserve storage capacity, his "WhatsApp text messages are . . . deleted after one year" and that, in any event, he "deleted all of [his] conversations related to PPE sales when [he] transitioned out of PPE sales and back to [his] regular business." [180-9] 2, at ¶¶ 9-10.

For these reasons, the District Judge should consider Promier's failure to prove that Hall lied about when he deleted his WhatsApp account as further grounds for denying the motion.[16]

### iii. Orion's Belated Production Of The Hall-New Text Messages Is Not Evidence Of Intent To Deprive.

Promier also emphasizes that "Orion delayed the production of text messages between Mr. Hall and Mr. New until after Mr. Hall had been deposed[.]" [196] 8. In Promier's view, "the late production and the unsubstantiated excuse for it are further evidence that Orion intentionally deleted a category of ESI it knew was relevant." [*Id.*]. Multiple problems with this argument prevent the undersigned from drawing an inference that the belated production is in any way indicative of an intent to deprive.

First, it is not clear how Orion's production, in February 2023, of the Hall-New text messages sheds any light on Hall's state of mind or intentions in or around January 2021, when he likely deleted his WhatsApp account. *See Feit Elec. Co., Inc. v. CFL Techs. LLC*, No. 13 CV 9339, 2023 WL 3436346, at * (N.D. Ill. May 12, 2023) (rejecting argument that plaintiff's refusal during meet-and-confer negotiations in 2022 to "discuss ways . . . to avoid prejudice to [defendant] as a result of [plaintiff's]

---

[16] In its reply brief, Promier argues for the first time that Hall's stated reason for deleting his WhatsApp account–that he found it to be annoying and "too much noise"–is not truthful. *See* [196] 10. Because this argument could have been–and should have been–raised in the Rule 37(e) motion, it is forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). Forfeiture aside, Promier does not point the Court to any evidence that would support its claim that Hall's stated reason for deleting WhatsApp is an "incredible explanation for the spoliation." [196] 10.

alleged" spoliation of evidence "constituted evidence of its bad faith in 2018" when evidence was destroyed). To the contrary, Orion's voluntary production of the Hall-New text messages is hard to reconcile with Promier's claim that Hall destroyed his WhatsApp account–including messages he exchanged with New–to hide the messages from Promier. Promier describes the Hall-New text messages as "incredibly salient" evidence [196] 8, that proves that "Orion either did not have an agreement with Promier or that it was violating its fiduciary duties to Promier under such an agreement. In the alternative, they show that Orion was tortiously interfering with Promier's business," [180] 12. If that is the case, and if Hall really had destroyed his WhatsApp messages with New to keep them out of Promier's hands, it is difficult to fathom why Orion would have produced these text messages that reveal such allegedly damning information about Hall and New's sale of PPE to Duke.

Second, and contrary to Promier's argument, Orion's "excuse" for the belated production is not "unsubstantiated." According to a February 1, 2023 email from Orion's e-discovery vendor, the Hall-New text messages should have been part of a document production generated in July 2022 but, for unknown reasons, were not included in that production. [122-4] 1. While this explanation may not be completely satisfactory, it is hardly "unsubstantiated." And the "innuendo in [Promier's] brief" that the explanation is not true "cannot substitute for evidence" needed to prove the WhatsApp account was deleted in bad faith. *Teamsters Local Union No. 727*, 2020 WL 13618112, at *1 (internal quotation marks omitted).

### iv. Orion's Failure To Disclose The Spoliation Is Disappointing But Not Indicative Of Bad Faith.

Finally, Promier faults Orion and its counsel for failing to disclose Hall's deletion of his WhatsApp account and not working with Promier to "replace the spoliated evidence or palliate the spoliation[.]"[17] [180] 6. Promier emphasizes the concession by Orion's counsel that they did not know Hall had deleted his WhatsApp account until Hall so testified at his September 2022 deposition. [*Id.*] 7

The Court agrees with Promier that Orion's counsel's handling of the WhatsApp issue leaves much to be desired. "Counsel must be competent in their knowledge and ability to identify, preserve, collect, review, and produce ESI. Competence pervades every aspect of the ESI discovery process." *DR Distribs.*, 513 F. Supp. 3d at 942. Counsel must also "monitor and supervise or participate in a

---

[17] In support of its obstruction argument, Promier contends that Orion has also "avoided disclosing the parties to which or with which Orion marketed PPE in transactions that did not involve Promier." [196]. That claim was the subject of a previous motion to compel filed by Promier, which the undersigned denied for multiple reasons, including her finding that Orion adequately disclosed this information in compliance with Fed. R. Civ. P. 33(d). *See* [199] 6-7. It therefore provides no basis for finding that Hall deleted his WhatsApp account in bad faith.

party's efforts to comply with the duty to preserve." *Id.* at 933 (internal citation omitted). That Orion's counsel did not know, until Hall's deposition in September 2022 that Hall had deleted his WhatsApp account is, frankly, shocking. Nevertheless, it is unclear whether Orion's attorneys were ever in a position to meaningfully remediate Hall's spoliation of the WhatsApp account. Hall likely deleted the account in or around late January 2021, one month before Promier filed suit and ten months before most of Orion's current counsel filed their appearances. *See* [36-41]. Promier has not introduced any evidence from WhatsApp or elsewhere that would suggest that Orion's lawyers could have accessed or restored any of Hall's WhatsApp messages after he deleted his account. Nor does it appear that Promier met and conferred with Orion about serving third-party discovery on WhatsApp (which could have led to the discovery of basic account information that, in turn, may have refuted or corroborated Hall's testimony about when he deleted and reactivated his account) or obtaining a forensic image of Hall's phone, both of which may have gone some way toward rebuilding the record of Hall's usage and deletion of WhatsApp.

In the end, however, whether sanctions are warranted under Rule 37(e)(2) turns on whether Hall deleted the WhatsApp account in bad faith, not on whether Orion's counsel crossed their I's and dotted their T's on the ESI front. As with the other "facts" that Promier offers to support its spoliation claim, any mishandling of the WhatsApp account by Orion's counsel simply sheds no light on Hall's state of mind when the WhatsApp account was deleted in or around January 2021.

\*   \*   \*

That Hall's WhatsApp messages "were destroyed intentionally no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) (internal emphasis omitted). Promier, however, has introduced no evidence that Hall deleted his WhatsApp account to hide messages that would have helped its case or harmed Orion's. Accordingly, the District Judge should deny its Rule 37(e) motion for sanctions. Because Promier has not prevailed on its Rule 37(e) motion, the District Judge should also deny its request for attorney's fees and costs incurred in bringing the motion and in undertaking third-party discovery relating to Hall's deletion of his WhatsApp account. *Compare Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405, at \*16 (N.D. Ill. Jan. 20, 2021) (recommending that prevailing party be awarded fees and costs incurred in bringing successful Rule 37(e) motion), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021); *see also Pable*, 2023 WL 2333414, at \*36 (recognizing that party that prevails on Rule 37(e) motion may recover attorney's fees and costs incurred while "litigat[ing] e-discovery issues when ESI is spoliated"). Finally, the District Judge should deny Orion's request for attorney's fees and costs incurred in responding to Promier's sanctions motion because Rule 37(e) does not contain a fee-shifting provision like that found in Rule 37(a)(5).

## II.    Promier's Request For Attorney's Fees And Costs Under Rule 37(a)(5)(A)

As discussed above, Promier filed on January 31, 2023 a motion to extend the discovery cutoff for the purpose of deposing New and obtaining his communications with Hall and/or Orion. *See* [115]. In that motion, Promier did not request an award of attorney's fees from Orion. [*Id.*] 5-6. Now, however, Promier contends that it is entitled to the fees and costs it incurred in bringing that motion. [180] 2, 12-13. This is so, Promier maintains, because Orion produced the text-message thread between New and Hall only after Promier had filed its motion. [*Id.*] 12-13. Promier relies on Rule 37(a)(5)(A), which provides that a court must award the party that files a discovery motion the reasonable expenses it incurred in making the motion if the requested discovery is provided after the motion is filed. Notably, Orion's opposition brief does not address this request at all. *See* [190] 1-15.

Rule 37(a)(5)(A) provides that, if a discovery motion "is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, a court cannot award fees and costs if the movant did not attempt in good faith to obtain the discovery without judicial intervention, if the non-movant's opposition to the motion was substantially justified, or if awarding fees would otherwise be unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

The undersigned concludes that Promier is entitled to an award of fees and costs under Rule 37(a)(5)(A) because–and only because–Orion has forfeited any objection it might have had to such an award. Orion has not meaningfully developed *any* position in opposition to Promier's request, notwithstanding that several plausible objections could have been raised.[18] Orion has thus forfeited its opposition to Promier's request. *See John K. MacIver Inst.*, 994 F.3d at 614. Accordingly, the undersigned grants Promier leave to file a petition for the reasonable attorney's fees and costs it incurred in bringing the motion to subpoena Carter New for documents and deposition testimony. Promier must reduce by one-half the amount of fees and costs it incurred in bringing this motion because the undersigned granted the motion only in part. The parties must attempt to resolve this issue without the need for further judicial intervention and, if a dispute arises over the amount of fees

---

[18] The only arguably responsive point made in Orion's opposition brief is that it did not produce the Hall-New text messages earlier because Promier was allegedly dilatory in alerting Promier that the text messages were missing. *See* [190] 4. Regardless of whether that claim is accurate, it remains the case that Orion's production did not occur until February 8, 2023–eight days after Promier filed its motion for leave to subpoena New. Rule 37(a)(5)(A) expressly provides for an award of fees and costs in such circumstances.

requested, the parties must comply with the meet-and-confer requirements imposed in the undersigned's minute entry of August 3, 2023. *See* [203].

Finally, Premier's requests made in the context of its Rule 37(a)(5)(A) argument, *see* [180] 13, to reopen Hall's deposition so that he can be questioned about his text messages with New and to depose New are denied. The former request is denied as untimely, given that Premier obtained the Hall-New text messages on February 8, 2023 but waited more than four months–and (again) until what was then the final day of fact discovery–to make the request. *Accord Alight Solutions v. Thomson*, No. 20 C 3043, 2021 WL 5119111, at *3 (N.D. Ill. Nov. 3, 2021) ("Last minute motions to compel are rarely proper and are rarely well-received."). The latter request is denied in light of the undersigned's earlier ruling that Premier failed to pursue New's deposition in a timely manner and the absence of any explanation by Premier why this ruling should be reconsidered now.

## Conclusion

For the reasons stated above, and in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge deny Premier's motion for sanctions under Federal Rule of Civil Procedure 37(e)(1). The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

Premier's request for an award of attorney's fees and costs under Federal Rule of Civil Procedure 37(a)(5)(A) is granted for the reasons stated above. The parties must attempt to resolve this issue without the need for further judicial intervention and, if a dispute arises over the amount of fees requested, the parties must comply with the meet-and-confer requirements imposed in the undersigned's minute entry of August 3, 2023. *See* [203].

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 22, 2023**