UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Promier Products, Inc., *Plaintiff*, v. Orion Capital LLC, *Defendant*. | No. 21 CV 1094 Judge Lindsay C. Jenkins |

## ORDER

This case arises from Promier Products, Inc. ("Promier") and Orion Capital LLC's ("Orion") disagreement over the allocation of profits from the sale of personal protective equipment ("PPE") during the COVID–19 pandemic. Judge McShain has dutifully overseen fact discovery in this case since April 2022. The parties' inability to reach out–of–court resolutions on discovery issues, exacerbated by an apparent lack of transparency between themselves and with the Court, has led to several extensions of the fact discovery deadline, as well as motions to compel and motions for sanctions.[1] Compounding the discovery dysfunction, the loser of the motion will often file a motion for reconsideration or a motion objecting to the Magistrate's disposition.

Before the Court is the latest such objection to a ruling from Judge McShain, [Dkt. 205], which granted Orion's motion for sanctions, [Dkt. 181], and ordered certain Promier witnesses to sit for additional depositions at Promier's expense, among other relief. Having reviewed the briefing,[2] the Court denies Promier's objections in full. Discovery shall proceed in accordance with the Magistrate Judge's ruling at Promier's expense.

## I. Background

Orion's motion for sanctions is the culmination of a lengthy saga into the classification of payments that Promier made in 2020 and 2021 to companies controlled by two of its C–suite employees, Matt Pell (CEO) and Michael Wollack (COO). [Dkt. 205 at 1.][3] For over two years in this case, Promier has represented to

---

[1] Several recent docket entries indicate this conduct persists, unfortunately. [*See* Dkts. 246, 248.]
[2] Which, seemingly by rule in this case, contains briefs in excess of twenty pages, supplemental briefs, and hundreds of pages of exhibits.
[3] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Orion and the Court that these payments—totaling between $900k and $1.5 million[4]—were company expenses paid to the employees in exchange for services rendered to sell PPE. [*Id.* at 1–2.] The importance of classifying these payments as expenses (income for Pell/Wollack) is that the amounts could be subtracted against Promier's profits from selling PPE, a portion of which Orion contends it is owed under its agreement with Promier. [*Id.* at 2.]

Orion sought to verify Promier's accounting of its profits and expenses, including the payments to Pell and Wollack. [*Id.*] Promier failed to provide bank statements or tax forms that would substantiate these payments as expenses, however, and after motion practice, Judge McShain ordered Promier in February 2023 to "produce all documents responsive to Orion's request for tax documents relating to the $1.5 million in distributions to Wollack and Pell and to certify that it had produced all relevant and responsive documents in its possession, custody, or control." [*Id.* at 2–3.] Promier certified its compliance on April 7, 2023. [*Id.*]

During Wollack's deposition later that month, Orion inquired as to how the distributions he received from Promier were accounted for on his personal tax returns, as well as where the money was deposited. [*Id.* at 3.] Promier's counsel instructed Wollack not to answer the questions and later filed a motion for a protective order, arguing these questions were not relevant because Promier, the relevant entity in the litigation, "booked the payments to MWCC and Pell Group as expenses."[5] [Dkt. 150 at 5.] Orion's opposition to the motion focused on Promier's inability to produce W–2s or 1099s for the payments, and raised the possibility that the payments to the companies were actually loans used to artificially deflate profits. [Dkt. 154 at 2–3.] In support of this contention, Orion cited to an internal Promier document that noted Stephen Wilson, Promier's outside accountant, "knows not to file" anything based on the payments to Wollack and Pell. [*Id.* at 2.] In her ruling on the motion for a protective order on May 11, 2023, Judge McShain stated:

> The motion is denied to the extent that Orion is free to ask Wollack and Pell how each witness treated the payments he received from Promier on his personal income taxes. The motion is granted to the extent that Orion is not permitted to ask Wollack or Pell what bank those funds were deposited into and what depositary institution is shown on the back of the checks Wollack and Pell endorsed.

[Dkt. 166 at 1.]

During the subsequent depositions of Wollack and Pell on May 22, 2023, both witnesses testified that they treated the payments from Promier as loans, not income

---

[4] The exact amount of the payments is disputed, but not material for purposes of this opinion.

[5] MWCC and Pell Group are the businesses owned by Wollack and Pell, respectively.

(which is material because a loan would not decrease Promier's profits).[6] [Dkt. 205 at 4–5.] Given this revelation, which was inconsistent with all prior representations from Promier (and Wollack and Pell), counsel for Orion asked additional questions about the loans, including the terms of the loans between Promier and their companies, whether the conditions of the loans were memorialized, and whether there was any repayment of the loan back to Promier. [*Id.*; *see also* Dkt. 181 at 4–7.] Counsel for Promier, relying on the section of the Court's May 11 order reproduced above that prohibited questions into "what bank those funds were deposited into and what depository institution is shown on the back of the checks Wollack and Pell endorsed", refused to allow Wollack and Pell to answer these follow–up questions. [*Id.* at 5.]

Orion, in turn, moved for sanctions on June 12, 2023, under Rule 30(d) based on Promier's counsel's refusal to allow the witnesses to answer the loan follow–up questions, and under Rule 37(b)(2)(A)(vii) for Promier's failure to comply with the Court's May 11 order. [Dkt. 181.] That same day, Promier offered to remove the payments from Promier's expenses when calculating its profits at trial. [Dkt. 181–1 at 14.] Orion's motion requested relief in the form of leave to reopen the depositions of Wollack, Pell, Cody Grandadam (Promier's President), and Tim Turczyn (Promier's CFO); leave to take additional third–party discovery from Amanda Anderson, a First Midwest Bank employee who oversaw Promier's credit line when the loan payments were made, and from Stephen Wilson, Promier's outside accountant; and attorney's fees and costs incurred in bringing the motion, as well as fees and costs for the future depositions. [Dkt. 181 at 15.]

Judge McShain granted Orion's requested relief almost entirely in an order dated August 30, 2023 ("Sanctions Order"). [Dkt. 205.] She agreed that Promier's counsel improperly objected during the deposition because the May 11 order only prohibited questions regarding "the banks into which those distributions had been deposited and what depository institution was shown on the back of the Promier–issued checks that Wollack and Pell had endorsed." [*Id.*] The May 11 order "simply did not address or place any limitations on Orion's ability to ask reasonable and appropriate follow–up questions when, in a surprising turn of events, Wollack and Pell testified that $1.3 million of the $1.5 million in distributions from Promier to MWCC and the Pell Group were loans." [*Id.* at 7.]

Based on the improper deposition objections and Promier's contradictory testimony on the characterization of the payments, Judge McShain granted Orion's request to depose or re–depose Wollack, Pell, Grandadam, Turczyn, Anderson, and Wilson with certain restrictions. [*Id.* at 10–11.] Central to Judge McShain's reasoning for why the depositions were necessary, despite Promier's representation that it

---

[6] Pell testified that a portion of the money he received was treated as income, and Orion has been granted leave to subpoena Pell for his 2021 personal and corporate tax returns to substantiate his treatment of the money. [Dkt. 205 at 5, 12.]

3

would not calculate the payments as expenses at trial, was the fact that the prior representations put Promier's witnesses' credibility at issue. [Dkt. 205 at 9.] The Sanctions Order further recognized that the potential mischaracterization of the payments could impact the merits of Promier's breach of fiduciary duty claim because it is evidence of Promier's conduct towards Orion. [*Id.*] The Court also granted Orion's request for all fees and costs associated with its sanctions motion and future fees and costs that would be incurred in connection with the Wollack, Pell, Grandadam, Turczyn, Wilson, and Anderson depositions. [*Id.* at 12–13.] All the above relief was ordered pursuant to Rule 30(d)(2).

Promier has objected to the August 30 Sanctions Order. [Dkt. 213.] First, it argues the Court should review the Sanctions Order *de novo* both because the Order was dispositive and because a Magistrate Judge only has the authority to propose (but not order) sanctions. On the merits, Promier argues that its counsel properly relied on the May 11 order when making objections, and that Orion was not prejudiced by the revelation that the payments were loans because (a) Orion already has the inconsistent testimony required to impeach Promier's witnesses and (b) Promier has represented it will not calculate the payments as expenses at trial. Promier acknowledges that "some additional discovery may be warranted" but urges that the scope of the discovery ordered is "too broad and Promier should not be required to pay for additional discovery." [Dkt. 213 at 5.]

## II. Analysis

### A. Standard of Review

Before reaching the merits of the Sanctions Order, the Court must first determine the appropriate standard of review. Under Federal Rule of Civil Procedure 72, a district court's review of a magistrate judge's order depends on whether the matter raised is "nondispositive" or "dispositive." A district judge reverses a non–dispositive matter only where the Magistrate's decision is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). Conversely, when a magistrate judge rules on a dispositive matter, a district court's review is *de novo*. FED. R. CIV. P. 72(b).

Whether a matter is dispositive or non–dispositive is determined by reference to 28 U.S.C. § 636(b)(1)(A), which gives magistrate judges the power "to hear and determine any pretrial matter" with certain exceptions. *See Adkins v. Mid–Am. Growers, Inc.*, 143 F.R.D. 171, 176 (N.D. Ill. 1992). Dispositive orders are those that resolve a claim or issue in a case, such as "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). This list is not exhaustive, but the key question is whether the

resolution of the motion will have the "practical effect" of one of the above motions. *Belcastro v. United Airlines, Inc.*, 2020 WL 1248343, at *2 (N.D. Ill. Mar. 15, 2020).

Orders pertaining to discovery that do not seek an adverse inference, dismissal, or other form of final relief are typically non–dispositive. *See e.g., Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308 at *10–11 (N.D. Ill. Mar. 20, 2001) (magistrate judge sanctioning party under Rule 30(d)(2) "has no dispositive effect on the case, and therefore, does not require *de novo* review"); Signal *Fin. Holdings LLC v. Looking Glass Fin. LLC*, 2021 WL 4935163 (N.D. Ill. July 30, 2021); *Gay v. City of Rockford*, 2021 WL 5865716, at *2 n.1 (N.D. Ill. Dec. 10, 2021); *Breuder v. Bd. Of Trs. Of Cmty. Coll. Dist.*, 2022 WL 279277 (N.D. Ill. Jan. 31, 2022); *Walrus Brands, LLC v. Peaches Uniforms, Inc.*, 2015 WL 13943496, at *1 (N.D. Ill. Apr. 16, 2015) ("[r]eview of non–dispositive rulings by a magistrate judge, including discovery orders, is governed by Rule 72(a).")

Promier argues that the Sanctions Order is dispositive within the meaning of Rule 72, in part because it "limited Promier's ability to raise arguments in support of claims and defenses at trial," and it suggested "how the Court ought to rule on motions in limine." [Dkt. 233 at 10; Dkt. 213 at 20.] In its reply brief, Promier explains that the Sanctions Order effectively requires Promier "to litigate a claim it seeks to drop", referring to Promier's efforts to withdraw its characterization of the payments as expenses. [Dkt. 233 at 9–10.] Put differently, Promier argues that the Sanctions Order keeps the payment characterization issue in dispute by permitting additional discovery when Promier has abandoned the payments as expenses, and it is therefore dispositive. The Court disagrees.

Simply put, this argument focuses too narrowly on portions of the Order that addressed future hypothetical uses of the discovery Orion sought. In its briefing on the sanctions motion, Promier maintained that additional depositions and discovery into how the payments were characterized was unnecessary because it "ventures into impeachment by extrinsic evidence, which is not admissible at trial." [Dkt. 191 at 6.] The Sanctions Order addressed why this argument was erroneous, explaining how the information could potentially be used for proper impeachment purposes. But this discussion in no way impacts the dispositive nature of the Sanctions Order. Ultimately, the Order concluded that, "[a]t the discovery stage, 'relevant' evidence under Rule 26(b)(1) is broader than it would be at trial; evidence does not need to be admissible to be discoverable." [Dkt. 205 at 9 (citing *In re Turkey Antitrust Litig.*, 2021 WL 6428398, at *2 (N.D. Ill. Dec. 16, 2021)).] Thus, the Order allowed Orion to pursue the discovery even if the information it gathers is not ultimately admissible at trial. [*Id.*]

Nor is the Court persuaded by Promier's argument that the Sanctions Order "locks" it into claims or testimony at trial. The Order simply concludes that Orion is entitled to *discovery* about why answers changed because that information is, at minimum, "highly probative of … Promier's principals' character for truthfulness."

5

[*Id.* at 10.] Nothing in the Order precludes Promier from removing the payments as expenses from its case moving forward. Nothing in the Order precludes Promier from arguing that the payments were proper loans. And nothing in the Order binds this Court on evidentiary determinations at trial. But Promier cannot simply sweep the two years of inconsistent statements regarding payment characterization under the rug to avoid discovery.

The Sanctions Order permits Orion to take additional discovery at Promier's expense, nothing more. For these reasons, the Court is not persuaded that the Sanctions Order is dispositive.

### B. Magistrate Judge's Authority to Issue Sanctions

Promier also argues that the Sanctions Order requires *de novo* review because it awarded sanctions, as opposed to merely recommending them, which Promier contends is beyond the power of the Magistrate Judge.

According to Promier, the Seventh Circuit is "categorical" that "Magistrate Judges do not have authority to issue any sanctions." [Dkt. 213 at 15; *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996). This is incorrect. Some courts in this district have reached that conclusion, many others have permitted a Magistrate Judge to order sanctions so long as they are non–dispositive. *See e.g., Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (holding "magistrate judge … did not abuse discretion by refusing to strike the relevant testimony or to *apply other sanctions*") (emphasis added); *Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014) (applying clear error standard to magistrate judge's discovery sanctions order); *Royal Maccabees Life Ins. Co.*, 2001 WL 290308 at *11 ("[t]he Court concludes that the Magistrate Judge had the authority to issue a sanction for dilatory and obstructive tactics during the defendant's deposition" under Rule 30(d)(2)); *Cage v. Harper*, 2020 WL 1248685, at *1 (N.D. Ill. Mar. 16, 2020) (providing fulsome analysis of Seventh Circuit case law and concluding "that 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure empower a magistrate judge to order Rule 37 attorney's fees and costs"); *id.* at *20 ("a Rule 37 award is within a magistrate judge's power to issue as orders because it is a pretrial nondispositive matter"); *Belcastro*, 2020 WL 1248343 at *3–4 (a magistrate judge's decision to award attorney's fees and costs as a sanction under Rule 37 is non–dispositive); *Baldwin v. Depuy Orthopaedics Inc.*, 2023 WL 6936660, at *1 (N.D. Ill. Aug. 1, 2023) ("only dispositive sanctions orders [issued by magistrate judges] are reviewed *de novo*; nondispositive discovery sanctions … are still subject to clear error review."). This Court agrees that neither Seventh Circuit case law nor the relevant statute precludes a Magistrate Judge from ordering (not just recommending) sanctions on non–dispositive discovery issues under Rule 30 or Rule 37.

Here, the Sanctions Order permits Orion to reopen the depositions of four Promier witnesses and two third–party witnesses; subpoena a personal tax return

6

and requires Promier to pay for the reasonable costs and fees associated with these efforts, including for bringing this motion. [Dkt. 205 at 10–12.] For the reasons explained above, this is non–dispositive relief. The Magistrate Judge ordered these sanctions pursuant to Rule 30(d)(2),[7] which the Court concludes she had the authority to do. But given the law's relative uncertainty in this area, and because the Court concludes its disposition would not change upon *de novo* review, the Court will analyze the Sanctions Order under the *de novo* standard of Rule 72(b).

C.  **Merits**

Promier's primary argument is that Promier's counsel justifiably relied on the May 11 order in refusing to allow its witnesses to answer certain follow–up questions as allowed under Rule 30(c)(2). [Dkt. 213 at 20–24.] According to Promier, its reasonable and good faith belief that the May 11 order did not permit questions on the terms of the loan precludes a finding of sanctions, even if its interpretation was ultimately incorrect. Relying on *Ollison v. Wexford Health Sources*, 337 F.R.D. 165 (C.D. Ill. 2020), and *Oseman–Dean v. Illinois State Police*, 2012 WL 243217 (N.D. Ill. Jan. 25, 2012), Promier contends that there must be an absence of good faith "or some other, illegitimate reason" to sanction a party that invokes a court order to limit a deposition. [Dkt. 213 at 22–23.] And because the May 11 order prohibited inquiry into Wollack and Pell's personal financial information, "Promier's counsel also believed it to be reasonable to instruct the witnesses not to talk about loan terms or the existence of loan documents." [Dkt. 213 at 24.] Promier also cites to the parties' oral argument that led to the May 11 order as evidence that Judge McShain contemplated limiting follow–up testimony if the payments turned out to be loans. [Dkt. 213 at 14–15.]

Promier's interpretation of the May 11 order is not reasonable. The Order precluded Orion from asking "Wollack or Pell what bank those funds were deposited into and what depositary institution is shown on the back of the checks Wollack and Pell endorsed." [Dkt. 166.] It permitted questions regarding "how each witness treated the payments he received from Promier on his personal income taxes." [*Id.*] That is all. In interpreting its own order, Judge McShain found the May 11 order "did not hold or even suggest that Orion could not ask natural follow–up questions in response to Wollack and Pell's testimony that the distributions were loans." [Dkt. 205 at 6–7.] The Court agrees. Nothing, including the snippets of oral argument cited by Promier, suggests that the May 11 order forbid anything other than inquiries into Wollack and Pell's purely personal financial information.[8]

Promier's reading of the May 11 order is made even more unreasonable by the broader context leading to the deposition. The entire purpose of this discovery was to

---

[7]  Except for Promier's obligation to pay the costs and fees associated with the underlying motion, [Dkt. 181], which is a sanction derived from Rule 37(A)(5).

[8]  Judge McShain was not aware that any "loans" existed on May 11 because Promier had steadfastly characterized the payments as expenses, so she had no reason to consider the scope of questioning if Promier's representations proved inaccurate.

7

corroborate the true nature of the payments and understand how Promier made its calculations and accounting decisions. This issue was the subject of months of motion practice, which Promier persistently resisted. While Promier fought the discovery on the grounds that it violated the personal privacy of its witnesses, [Dkt. 213 at 12], at no point during this briefing or during oral argument (which occurred roughly two weeks before the loan admission) did Promier disclose the true nature of the payments to Orion or to the Court. This came to light only after the Court ruled, and only by way of a "tortured reading" of the May 11 order, which by no means prohibited any follow–up questioning on the issue of payments. The Court concludes Promier invoked the May 11 order for some illegitimate purpose, such as delay, and therefore Rule 30(c)(2) does not save Promier from sanctions.

Beyond the propriety of the deposition objections, Promier seeks to downplay the import of these revelations, suggesting that the admissions themselves are sufficient for Orion because it now knows the truth and Promier is not relying on the payments as expenses at trial. Consequently, Promier asks the Court to conclude that additional discovery into the loans is unnecessary such that the Court should reject the request for additional discovery. Not so.

While Orion may know that the payments are loans, it knows nothing about the circumstances of the loans, and why Promier represented that they were expenses. Were the loan terms documented? Negotiated at arm's length? Why was its outside accountant instructed "not to file"? When and why were these decisions made? These questions and others like them do more than test the truthfulness of Promier's witnesses. Substantive claims in this case, such as Promier's fiduciary duty claim, may be impacted by the answers Promier provides. For these reasons too, Promier's representation that it will omit the payments from expenses at trial is immaterial for purposes of determining whether additional discovery is necessary. The Court concludes the parameters for this discovery, as laid out in the Sanctions Order, are both appropriate and reasonable.[9]

Promier's final argument is that the Sanctions Order improperly awarded sanctions as a matter of law pursuant to Rule 30(d)(2) for conduct beyond the offending depositions themselves. Promier argues that sanctions under Rule 30(d)(2) should be concomitant with the deposition misconduct, here the refusal to allow Wollack and Pell to answer the follow–up questions. Because the Sanctions Order permits Orion to depose additional witnesses (including third–party witnesses) and recoup costs for that discovery, the decision was improper. [*See* Dkt. 233 at 2–3, 8 (discussing how Promier's research "did not reveal a single case within the Seventh

---

[9] The Report stated "the additional discovery authorized by this Order is relevant and appropriate even apart from Promier's Rule 30(d)(2) violation." [Dkt. 205 at 8 n.9.] Because Courts "enjoys extremely broad discretion in controlling discovery", *Jones*, 737 F.3d 1107 at 1115, it could allow Orion to take these depositions outside the sanction framework. The only real question, then, is whether Promier should pay for the additional discovery.

Circuit or the Northern District of Illinois in which a court imposed sanctions under Rule 30(d)(2) beyond the costs of reopening the obstructed deposition.")]

The Court need not reach the issue of whether Rule 30(d)(2) sanctions can extend beyond the scope of the improper deposition conduct because the sanctions are appropriate under the Court's inherent authority to sanction discovery misconduct, which comfortably applies to the facts of this case. *Clinical Wound Sols., LLC v. Northwood, Inc.*, 2023 WL 3568624, at *9 n.4 (N.D. Ill. May 19, 2023) ("the court also has the inherent authority to sanction a party for discovery abuses"); *In re Old Banc One S'holders Secs. Litig.*, 2005 WL 3372783, at *2 (N.D. Ill. Dec. 8, 2005) ("[a] Court's inherent authority [to sanction a party], however, is based on the Court's power to manage and ensure the expeditious resolution of cases on its docket"); *cf Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 931 (7th Cir.) (reviewing court "may affirm on any ground supported by the record.")

For more than two years, Promier represented that the payments were expenses, and then, without explanation or warning, gave entirely contradictory testimony. Worse still, the admission occurred only after Promier engaged in extensive motion practice to avoid this disclosure, resulting in a significant waste of Court time and resources. Simply put, Promier is "solely responsible" for the situation in which it now finds itself. [Dkt. 205 at 10 n. 11.] The Court concludes that the appropriate remedy is to allow Orion to conduct additional discovery at Promier's expense.

## VII. Conclusion

Based on its *de novo* review, the Court adopts the Sanctions Order in full. Promier's objections are overruled.

Enter: 21–cv–1094
Date:  December 22, 2023

_____
Lindsay C. Jenkins
United States District Judge