**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROMIER PRODUCTS, INC., | ) | |
| Plaintiff/counter-defendant, | ) | Case No. 1:21-cv-01094 |
| | ) | |
| *v.* | ) | Hon. Lindsay C. Jenkins, D.J. |
| | ) | |
| ORION CAPITAL LLC., | ) | Hon. Heather K. McShain, M.J. |
| Defendant/counter-plaintiff. | ) | |

**ORION CAPITAL'S MOTION FOR SANCTIONS
FOR FALSE DECLARATIONS AND A PATTERN OF DISCOVERY ABUSE**

Orion Capital LLC ("Orion") respectfully moves the Court for an order sanctioning Promier Products, Inc. ("Promier") and its counsel, pursuant to FRCP 37(b) and the Court's inherent authority.[1]  Promier's conduct in this case of falsely claiming at least $1.3 million in expenses in order to reduce amounts owed to Orion has been egregious. This conduct has culminated in Orion's recent discovery from a third party of a promissory note dated August 2020 between Promier and its CEO, Matt Pell, reflecting a loan of $750,000, despite months of discovery and representations from Promier that this payment was an expense (not a loan) and despite repeated declarations signed under oath claiming that no such document existed.  But this is just an example of a pattern of abuses committed by Promier during the course of discovery. The Court should sanction Promier and its counsel for these misrepresentations and pattern of discovery abuses.

---

[1]     Orion certifies that it met and conferred with Promier on this motion on January 29, 2024. The parties were unable to come to a resolution.

## **Factual and Procedural Background**

Premier initiated this lawsuit in February 2021, and Orion has counterclaimed. ECF 1, 44. At the heart of this case is a dispute over Orion's share of proceeds from sales made in conjunction with Premier of personal protective equipment ("PPE") in 2020. From the beginning of this case, Premier sought to reduce Orion's share of the proceeds by claiming millions of dollars of expenses, including taxes, warehouse fees, and $1.5 million in payments to MWCC Enterprises ($550,000) and the Pell Group ($950,000) in 2020 and 2021. *See, e.g.,* ECF 1, at ¶ 33. In response, Orion repeatedly sought discovery on these expenses. *See* ECF 205 at 1-2. Among its many representations regarding this issue, Premier and its principles repeatedly testified under oath at depositions that the $1.5 million in payments were expenses, and Premier's attorneys also classified these payments as commissions. *Id.*

Therefore, in January 2023 and February 2023, Orion filed motions compelling the disclosure of tax documents reflecting such payments. ECF 114, 119. On February 24, 2023, the Court granted that motion. ECF 125 at 5. In response to that order, Premier and its attorneys repeatedly represented to the Court and Orion that any documents regarding these payments had been produced during discovery. *E.g.,* ECF 131 at 8 (representing that Premier had "produced the non-privileged responsive documents in its control, including comprehensive tax returns for these years ordered by the Court. Therefore, nothing more exists to be compelled."). When the Court inquired directly at the March 31, 2023 hearing about this issue, Premier, through its attorneys, again represented that all relevant documents had been produced. *E.g.,* ECF 146, at 14:13-17.

Because Premier's evasiveness about this issue persisted, on April 3, 2023, the Court ordered Premier to certify that it had produced all MWCC Enterprise and Pell Group payment documents. ECF 145. In response, four days later, Premier produced a declaration from its COO,

in which he testified under oath that "Promier has produced all relevant documents in Promier's possession, custody and control pertaining to the payments made associated with PPE sales to the Pell Group and MWCC Enterprises." Wollack Decl., at ¶ 4, attached hereto as Exhibit 2.

On May 22, 2023, during the depositions of Promier's CEO Matt Pell and COO Michael Wollack, Promier for the first time took the position that most of the $1.5 million related-party payments were loans, not expenses. ECF 205 at 4-5. When Orion asked CEO Pell if there were "any documents reflecting this loan from Promier Products to the Pell Group," Promier's counsel directed Pell not to answer the question. ECF 223-12 at 7:16-9:9. When Orion asked COO Wollack if there were any loan documents, Promier's counsel directed Wollack not to answer the question—although Wollack had allegedly already testified to the Court (through Exh. 2 hereto) that no such documents existed. ECF 172, at 11:6-16.

Following these depositions, Promier's attorneys continued to represent to the Court that no documents existed regarding the $1.5 million payments. On September 13, 2023, Promier's lead counsel, Trace Schmeltz, submitted an affidavit to the Court stating—under oath—that Promier possessed no documents regarding any loans: "I, nor any member of Promier's counsel, knew the $981,223.79 was a loan, *and there were no documents indicating so*." Schmeltz Dec. at ¶ 5 (ECF 213-5) (emphasis added).

Orion soon uncovered that all of Promier's and its counsels' representations that no documents existed related to these loans were false. While trying to discover more information about Promier's "erroneous" and "unfiled" fiscal year 2020 tax returns, *see* App. A attached hereto as Exhibit 1, Orion learned that Promier had concealed from it and the Court its possession of a very material loan document. On October 25, 2023, Orion served Promier's current accountant, Anna Richards, with a subpoena *duces tecum*, stemming from Promier's post-close-of-discovery

3

revelation that it had never filed its fiscal year 2020 tax returns. ECF 226. Despite Promier's multiple attempts to prevent disclosure of documents from Richards, on November 21, 2023, Ms. Richards produced some documents responsive to the subpoena, including a spreadsheet that appears to calculate the accrued interest for these "loans". *See* Exh. 3 (RICHARDS0000304). The basis for the accrued interest calculation is a "Promissory Note" between Promier and its CEO Matt Pell for $750,000, dated and purportedly signed by Pell on August 8, 2020. A copy of this Promissory Note is attached hereto as Exhibit 4 and is herein called the "Promier Loan Document."[2] Orion later learned from Promier's counsel that Promier's CEO possessed the Promier Loan Document for over a year: "[I]t is my understanding that Mr. Pell received a paper copy of the loan agreement sometime late last year [i.e., 2022] and executed it." Exh. 5 at 5.[3] The Promier Loan Document is the exact type of document that Orion had been seeking and that the Court had required Promier to disclose.

Richards's document production also indicates that the documents she disclosed to Orion, including the Promier Loan Document, came from the possession of Promier and its counsel. Emails from Promier's counsel to Richards dated September 29, 2023 and October 5, 2023 reflect Promier's counsel providing Richards with the documents she was to use in her work: "Anna, Thank you for speaking with me this morning. As discussed, I am sending you via our firm's SFTP site the source documents for Promier's PPE transactions . . . You will need to download them." Exh. 6; *see also* Exh. 7.

---

[2]     On November 21, 2023, Richards also disclosed an unsigned version of the Promier Loan Document. *See* Exh. 9. A month later, on December 21, 2023, Richards disclosed an email from CEO Pell to Ms. Richards attaching a signed Promier Loan Document. Exh. 10.

[3]     Promier has since also disclosed a copy of the Promier Loan Document on December 27, 2023 after inquiry from Orion's counsel. However, Promier has disclosed no other related or connected documents, such as emails or cover letters transmitting, referencing, or discussing the Promier Loan Document.

4

## Legal Argument

### I. Promier and its counsel intentionally misrepresented a material discovery issue.

#### a. Promier possessed a responsive discovery document it failed to disclose.

The Promier Loan Document was responsive to Orion's discovery requests and to this Court's order to disclose such documents. In its January 31, 2023 motion for additional discovery (ECF 114) and its related amended motion on February 14, 2023 (ECF 119), Orion sought tax documents reflecting the payments to MWCC Enterprises and the Pell Group – back when Promier called such payments "commissions" and "expenses." Promier did not oppose the disclosure of such documents. *See* ECF 123. Agreeing with Orion that such documents were relevant to the issues in this case, the Court ordered their disclosure. ECF 125. When Promier sought to overturn this Order, it did not argue that such documents were irrelevant to the issues of the case, but rather that Orion had failed to fully meet and confer regarding the documents, an argument it later retracted as erroneous. ECF Nos. 131, 146 at 15:22-16:3. The best evidence that Promier and its counsel recognized that *any* documents referencing the $1.5 million in related-party payments were relevant and responsive discovery, is the April 7, 2023 Wollack Declaration in which Promier certified that *all* documents associated with payments to MWCC Enterprises and the Pell Group regarding PPE sales had been produced – a statement on which Orion has repeatedly relied. Exh. 2. Moreover, at no time did Promier argue that documents reflecting payments to the Pell Group and MWCC Enterprises were outside the scope of Rule 26 or nonresponsive to Orion's discovery requests. In fact, as recently as December 20, 2023, Promier continued to express its understanding that such discovery is relevant to the issues in this case: "Next, if we produce any further information, it will be because we are aware the loans are in question in this case…" Exh. 5 at 3.

Nor can Promier wash its hands of the non-disclosure of the Promier Loan Document by placing it in the custody of its CEO. *See* ECF 213-5 and Exh. 6 ("Mr. Pell received…"). Because a CEO's (or other corporate agent's) knowledge is imputed on the company, CEO Matt Pell's knowledge of the Promier Loan Document is imputed to Promier. *See United States v. One Parcel of Land Located at 7326 Highway 45 North*, 965 F.2d 311, 316 (7th Cir. 1992) ("Where a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation."). Moreover, it is "well settled that a party need not have actual possession of documents to be deemed in control of them." *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977) (holding that plaintiffs could compel defendants to produce documents in the possession of current and past employees as to whom the defendants exercised some degree of control); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *8 (N.D. Ill. June 26, 2023) (Harjani, M.J.) (finding that plaintiff was "expected to produce responsive third-party documents over which it has legal control"). A party has "control" of materials if it has the "legal right" to obtain them, even if in the hands of a third party. *Lloyd v. Whirlpool Corp.*, No. 19 C 6225, 2020 WL 8115869, at *3 (N.D. Ill. Oct. 27, 2020) (Finnegan, M.J.) (citation omitted). This definition of control applies to both persons and to corporations. *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (Schenkier, M.J.).

Therefore, Promier cannot validly assert that somehow it did not possess or control the Promier Loan Document, because it cannot claim it lacked control over its own CEO. Such an argument would mean that every entity involved in a lawsuit would simply hand off problematic documents to its officers or employees in order to shield those documents from disclosure in litigation. Certainly, Promier had a legal right and control over a promissory note to which it is a

party, even if its CEO kept that document in a different location. Promier possessed a document responsive to discovery and should have investigated its existence and subsequently disclosed that document many months ago.

### b. Promier and its counsel made material misrepresentations to the Court and Orion about the Promier Loan Document.

Promier more than inadvertently omitted or intentionally failed to disclose a material, responsive document—it actively sought to deceive the Court and Orion about the document's existence through repeated misrepresentations and should be sanctioned for that misconduct. Federal Rule of Civil Procedure 37 allows a party to move for sanctions when a party *or a party's officer, director, or managing agent* fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). Such sanctions are appropriate under Rule 37(b)(2) "when a district court finds that a party failed to comply with a discovery order because of willfulness, bad faith, or fault." *Willis v. Northern Illinois Gas Co.*, Case No. 17-cv-8657, 2020 WL 7626734, at *4 (N.D. Ill. Dec. 22. 2020) (Kness, D.J.). The facts underlying such sanctions need only be proven by a preponderance of the evidence. *Ramirez v. T&H Lemont*, Inc., 845 F.3d 772, 776 (7th Cir. 2016); *Newson v. Oakton Community College*, No. 19-cv-2462, 2022 WL 2355886, at *3-4 (N.D. Ill. Mar. 9, 2022) (McShain, M.J.). Rule 37(b)(2) also permits sanctions against attorneys for failure to comply with a court order. Fed. R. Civ. P. 37(b)(2)(c); *Bovinett v. HomeAdvisor, Inc.*, No. 20-3221, 2022 WL 1056086, at *4 (7th Cir. Apr. 8, 2022).

Similarly, the Court also has an inherent authority to issue sanctions when a party's conduct falls outside the purview of Rule 37. *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 914 (N.D. Ill. 2017) (Feinerman, D.J.). Accordingly, district courts may "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). "Sanctions imposed pursuant to the district

court's inherent power are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012). "[C]ertain types of reckless conduct can suffice" as bad faith. *Cavelle v. Chicago Transit Auth.*, No. 17-CV-5409, 2020 WL 133277, at *4 (N.D. Ill. Jan. 13, 2020) (Dow, D.J.). Moreover, a court's use of its inherent authority to sanction misconduct is appropriate "to punish misconduct (1) occurring in the litigation itself, not in the events giving rise to the litigation . . . and (2) not adequately dealt with by other rules." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 391 (7th Cir. 2002). The facts underlying sanctions under the court's inherent authority need only be proven by a preponderance of the evidence. *Ramirez*, 845 F.3d at 781.

Here, knowing that documents reflecting the $1.5 million payments were responsive and highly relevant to the issues in contention in this case, and because the issue of expenses had been dealt with exhaustively by the parties and the Court, Promier and its counsel repeatedly misrepresented to the Court and Orion the existence of at least one material document, the Promier Loan Document. When a party or one of its agents makes material misrepresentations during the discovery process, and thus acts in bad faith, the Court must order sanctions. In *Flextronics*, plaintiff Flextronics International brought a motion for sanctions under Rule 37 and the court's inherent power. *Flextronics*, 230 F. Supp. 3d at 909. The court found that defendant SDS's CEO, Schwab, had fabricated an email and then proceeded to submit a false declaration and deposition testimony in reliance on the fabricated email, which the court held "amounts to perjury." *Id.* (*citing Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008). The court also quickly rejected SDS's argument that it should not be held responsible for Schwab's perjury, holding that Schwab, as CEO, spoke for the company: "But Schwab, as SDS's CEO, was SDS for all relevant purposes." *Id.* (*citing Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 667 (7th Cir. 2013) ("A corporation

. . . can act only through its officers and directors….") (internal quotation marks omitted)). The court further held that SDS's other officers' knowledge of whether the email was fabricated "is irrelevant, because SDS itself knew through its CEO." *Id*. The court concluded that sanctions against SDS were more than appropriate, stating, "[w]hen a corporate party's upper management engages in sanctionable conduct in litigation, the corporation itself must bear the consequences." *Id*. at 912.

Just like the defendant and its CEO in *Flextronics*, Promier has repeatedly demonstrated that it intentionally acted in bad faith, not just negligently or inadvertently. First, Promier concealed the true nature of the $1.5 million by repeatedly calling the payments to MWCC Enterprises and the Pell Group "commissions" or "expenses" or "payments" in its Complaint, the more recently filed Amended Complaint, and throughout discovery. *See* ECF 205. At four different depositions from October 2022 to January 2023, four separate witnesses for Promier, including its Rule 30(b)(6) witness, its president, and the two corporate officers who were parties to the loans with Promier, testified falsely under oath that the payments were expenses. Exh. 1 at 8-10. Back when Promier called the $1.5 million in payments expenses, Promier repeatedly misrepresented to the Court that it had produced all documents reflecting the $1.5 million in payments, including in a court-ordered declaration under oath. *See* Exh. 2 ("Promier has produced *all relevant documents* in Promier's possession, custody and control *pertaining to the payments* made associated with PPE sales to the Pell Group and MWCC Enterprises.") (emphasis added); *see also* ECF 131 at 8; ECF 146 at 13:2-14:17. Then, after Promier could not produce evidence that the $1.5 million in related-party payments were expenses and did an about-face to testify that such payments were loans, Promier and its counsel attempted to conceal the Promier Loan Document from the Court and Orion, first by refusing to answer the question of whether a loan

document existed (ECF 223-11 at 11:6-16 (Wollack), 223-12 at 7:16-9:9 (Pell)), and then later through an affirmative false statement by its counsel that documents supporting those loans did not exist. *E.g.,* ECF 213-5, ¶ 5 ("I, nor any member of Promier's counsel, knew the $981,223.79 was a loan, and *there were no documents indicating so*.").[4] As Promier's counsel has now acknowledged, at all times while Promier and its counsel made these misrepresentations, sometimes under oath, Promier possessed a document contradicting these court filings and sworn testimony. *See* Exh. 5 at 5 ("Mr. Pell received a paper copy of the loan agreement sometime late last year [*i.e.,* 2022] and executed it.").

The actions of Promier's CEO of concealing evidence of a loan are especially egregious. Pell has lied repeatedly under oath regarding the loan. When this case was pending in the Western District of Virginia, Pell submitted a false declaration to the Court, stating that the $1.5 million in payments were expenses, even though he had allegedly entered in a loan agreement with Promier several months before, in August 2020. ECF 114-4 at ¶ 14. In this case, Pell continued to falsely claim the payments to his Pell Group was a commission in his deposition. ECF 223-4 at 151:9—17; 155:3—6. Much later, after dogged and costly pursuit by Orion, Pell testified that most of his "commission" was a loan from Promier. ECF 223-12 at 6:23—7:11. During the entire time leading up to this deposition, Pell possessed the Promier Loan Document and not only remained silent, but affirmatively testified falsely under oath that the underlying payment was a commission. In fact, it appears Pell possessed the Promier Loan Document no later than late 2022, but signed it

---

[4] This declaration from Promier's counsel was filed before District Court Judge Jenkins on September 13, 2023. On November 21, 2023, a third party disclosed the Promier Loan Document to Orion, with copies to Promier. Although Orion believes counsel possessed the document around the time it made this misrepresentation to Judge Jenkins, no later than November 21, 2023, Promier's counsel knew that a loan document existed and that this representation to the Court was false; however, counsel did not correct its prior misrepresentation to the Court but rather continued to allow Judge Jenkins to rely on this affidavit, without correction, during the pendency of Promier's appeal.

as if he had received it in August 2020, attempting to conceal the accuracy (or falsity) of the document. *See* Exh. 4 at 2 (noting signature is dated August 21, 2020); Exh. 5 at 5 (stating that Pell executed the document in late 2022). The Seventh Circuit holds parties to account for the misconduct of their executives like Pell. *See, e.g., Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Amers. LLC*, 516 F.3d 623, 627 (7th Cir. 2008) (affirming dismissal of a company's claims as a sanction for the CEO's misconduct in litigation).

Not only was Promier shielding the Promier Loan Document from Orion, but Promier now appears to be using that very same document to increase the expenses it claims should be deducted from profits owed to Orion. Additional documents contained in Ms. Richards' production are new versions of PROM041922 and PROM000096, documents created by Promier to calculate the profits it believed are owed to Orion. The new versions of PROM41922/96 (RICHARDS0000299 and RICHARDS0000302) incorporate interest on the loans to MWCC Enterprises and the Pell Group that did not appear anywhere in the litigation prior to Ms. Richards' production of the Promier Loan Document, and increases the expenses Promier claims reduce Orion's profit share. *See* Group Exh. 8.[5] Therefore, not only did Promier attempt to conceal the Promier Loan Document from Orion and lie about its existence, but now that it has been discovered, is attempting to benefit from its existence.

Sanctions are appropriate here where there have been multiple misrepresentations to the Court, because the Court must do more than "remedy prejudice to a party," it must also "reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron*

---

[5]      Because RICHARDS0000299 and RICHARDS0000302 are multi-tab excel spreadsheets, converting those spreadsheets into PDFs each result in 50-60 page documents. To be efficient and concise, Orion has only attached the "SUMMARY" tab of each spreadsheet, which reflects Ms. Richards' added interest calculations. If requested, Orion will submit the full spreadsheets to the Court in their native excel format.

*v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009). The Promier Loan Document–and any related materials–should have been produced by Promier during the course of discovery. Because it was not produced and because its existence was contradicted by the Wollack Declaration and explicitly denied by Promier's counsel under oath in September 2023, Promier's representations to the Court are false. Promier's discovery violation and related perjury should be sanctioned.

## II. Promier and its counsel have engaged in a pattern of bad faith discovery meriting sanctions.

Promier's actions in repeatedly submitting knowingly false testimony to the Court exemplifies the pattern of discovery abuse in which Promier has engaged generally throughout this case. Sanctions are also appropriate where a party has engaged in a pattern of bad faith discovery. *See e.g., GlobalTap, LLC v. Petersen Mfg. Co.*, No. 1:18-CV-05383, 2021 WL 3292261, at *7 (N.D. Ill. July 29, 2021) (Norgle, S.J.) (sanctioning plaintiff and dismissing complaint after finding that the plaintiff "and its counsel have conducted discovery from the outset of this case in a manner exhibiting extraordinarily poor judgment, gross negligence, and willful bad faith conduct").

Promier has already twice been sanctioned by the Court for discovery violations. The Court first sanctioned Promier on May 17, 2023, when it found that Promier had improperly obtained a declaration from a witness in an attempt to make an "end-run around the order barring Promier from taking New's deposition—and a transparent one at that." ECF 171 at 4. Less than a week later, Promier was sanctioned again after two of Promier's executives disclosed for the first time that the $1.5 million payments that had previously been treated as commissions and expenses were mostly loans, and their counsel improperly instructed them to not answer follow-up questions about those loans, *including questions about the existence of loan documents. See* ECF 205.

However, this Court's multiple sanctions of Promier have still not deterred its intentional discovery misconduct.  As discussed above, Promier possessed the Promier Loan Document since at least late 2022, concealing from the Court and Orion that a highly probative, responsive document regarding the $1.5 million payments was in the possession of its CEO–even while Promier continued to claim that those same payments were expenses, not loans.  The concealment of the Promier Loan Document in the fall of 2022 radically affected the course of discovery, causing the Court and Orion to expend significant, unnecessary resources.  In fact, even after the Court sanctioned Promier for a second time on August 30, 2023, Promier continued to conceal the Promier Loan Document and then, three weeks later, in an affidavit from its counsel to the Court, misrepresented that no such document existed, although counsel had a Rule 11(b) obligation to investigate this issue before making such an inaccurate representation.  ECF 213-5, ¶ 5.  More incredibly, it was not even Promier who eventually disclosed the Promier Loan Document, but a third-party witness responding to a subpoena from Orion.

On September 8, 2023, nine days after its second sanction (ECF 205) and three days after petitioning the Court to stay discovery (ECF 209), Promier revealed another discovery surprise, disclosing that it had not filed its FY2020 tax returns[6] (despite prior representations to the Court and Orion to the contrary). Orion also learned that Promier knew this information since May 2023 when it was notified of an IRS audit, that it had filed the missing returns in July 2023, and that the returns produced in discovery were erroneous.  Exh. 1 at 27, 31, 33, 35.

Promier then flaunted and abused the Court's discovery order (ECF 203) in an attempt to block discovery from Richards, who ultimately produced the Promier Loan Document.  First,

---

[6]     Promier's fiscal year 2020 runs from October 1, 2019 to September 30, 2020 and thus covers a time period critical to the claims in this case.

Promier repeatedly failed to comply with the Court's discovery order (ECF 203). Although Promier initially agreed to limited discovery of Richards (ECF 226), it then served two Rule 37.2 letters, each raising new reasons why Richards should not produce documents. Exh. 1 at 38, 44. After finally engaging in a meet-and-confer with Orion on December 8, 2023, Promier then filed a motion to quash, raising new arguments for blocking disclosure of the Richards documents, in violation of the Court's discovery order. ECF 247. When the Court rejected this non-compliant motion, instead of filing the appropriate motion as directed by the Court, Promier instead served a *third* Rule 37.2 letter, raising yet another set of new arguments for blocking disclosure of Richards documents. Exh. 1 at 52. Promier's actions show its disregard of the discovery process and this Court's discovery order, as, to date, it has not actually followed the discovery order, although Orion has done so. The Seventh Circuit permits stiff sanctions, up to dismissal, where parties refuse to comply with discovery orders. *E.g., Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir.1992) (upholding dismissal without prior sanction where "pattern of noncompliance with the court's discovery orders [had] emerge[d]"); *Domanus v. Lewicki*, 288 F.R.D. 416, 419 (N.D. Ill. 2013), *aff'd*, 742 F.3d 290 (7th Cir. 2014) ("Litigants who abuse the judicial process, for example by flouting court orders and ignoring lesser sanctions, should not be surprised to find themselves facing a default judgment").

These acts by Promier's counsel were not attempts at good faith discovery negotiations, but were intentionally designed to delay and obstruct discovery, cause Orion to incur significant costs, and block disclosure of the Promier Loan Document. First, Promier served multiple Rule 37.2 letters on Orion, seeking to block disclosure of Richards documents, although it told the Court on November 3, 2023 that it knew what documents Richards possessed, knew what documents Richards was disclosing, and *was not objecting to her document production*. Exh. 1 at 39, 47; ECF

14

236 at 2, 6 (representing that "Ms. Richards will actually produce responsive documents," that she was doing so "with *no objection* from Promier," and that Ms. Richards's "production will be enough" to comply with the subpoena) (emphasis in original). Despite its representations to the Court, outside of court Promier actively blocked discovery to Orion, demonstrating that it was using discovery as some form of gamesmanship. Moreover, Promier's counsel objected to the production of documents from Richards although it was the entity supplying documents to Richards for use in her review. *E.g.*, Exh. 6 at 2 ("As discussed, I am sending you via our firm's SFTP site the source documents . . ."); *see also* ECF 236 (indicating that it knew what documents Richards possessed and was disclosing). Promier's counsel also objected to subpoena requests even when there were no documents responsive to the requests. For example, from October 19, 2023 to January 22, 2024, Promier vigorously objected to subpoena request no. 2, which sought copies of engagement letters; however, on December 18, 2023, Promier admitted that no such letters actually existed. *E.g.,* ECF 251 at Exh. H ("there are no engagement letters").

However, Promier's bad faith is best demonstrated by its playing fast and loose with its representations to the Court about the Richards documents during this time. In the November 3, 2023 Joint Status Report, *for the first time*, Promier sought to limit the Richards document production to "revenue and expense documents relating to Promier's PPE transactions in conjunction with Orion on which Ms. Richards relies to determine whether they were properly booked as revenue or expenses for Promier's federal tax returns for Fiscal Year 2020." ECF 236 at 3 (filed at 11:21 p.m.). Promier did so even though it knew Richards's work for Promier extended beyond a mere review of PPE "revenue and expenses," as it claimed to the Court, to also include a review of loans (i.e., assets) and accrued loan interest. *See supra*; Exhs. 2, 8 (calculating accrued loan interest; metadata shows edits to the document on November 3, 2023 before filing of

Joint Status Report). Just like Promier sought to block discovery of loan information in the Pell and Wollack depositions on May 22, 2023 by "mis-parsing" the language of the Court's order, in the Joint Status Report, Promier tried again to misuse language to avoid disclosing damaging information and materials, i.e., the Promier Loan Document. In other words, by falsely stating that Richards was only working on "revenue and expenses" and thus that "revenue and expense" documents were the only items that should be disclosed by Richards, Promier was trying to conceal the disclosure of a document discussing an asset – the Promier Loan Document. More surprisingly, in the Joint Status Report, Promier sought to limit the Richards document production to non-loan documents even though earlier that *very same day* Promier's CEO forwarded a signed version of the Promier Loan Document to Richards.[7] Exh. 1 at 40-41.

But this behavior by Promier regarding the Richards documents is just part of a pattern of bad faith misrepresentations about discovery. For example, in December 2022, Orion served Promier's former tax preparer, Steven Wilson, for a subpoena *duces tecum* through his then counsel, Barnes & Thornburg LLP.[8] *See* ECF 114 at 10. In January 2023, Wilson produced only seven pages of documents in response. *See* ECF 114 at 11. After Wilson's deposition in June

---

[7] According to Promier's counsel, Richards completed her review in October 2023. Promier's counsel provided her with at least some of the documents used in her review. *E.g.,* Exhs. 6, 7. Based on the documents from Richards, it appears she edited Promier's damages spreadsheets (PROM96/PROM41922) to include accrued interest from the loans to Pell and Wollack at that time, meaning she had to have possessed some version of the Promier Loan Document as it contained the terms of the loan used in the accrued interest calculations (i.e., October 2023). *See supra*; Exh. 4. Because Richards possessed and disclosed both signed and unsigned versions of the Promier Loan Document, Orion speculates (and will confirm when it deposes Richards) that Richards initially possessed the unsigned version of the Promier Loan Document in October 2023 that she obtained from Promier's counsel, and then obtained a signed version of the Document directly from CEO Pell when he forwarded it to her by email on November 3, 2023. *See* Exh. 6.

[8] At the time Barnes & Thornburg represented Wilson, he was a witness with evidence that contradicted that of Promier and its executives, as he apparently knew the $1.5 million payments were loans, not expenses, having been told so by Promier's CFO (Tim Turczyn) in the fall of 2021. Exh. 11 at 73:7—77:3, 129:20—130:12.

2023, Wilson (through new counsel) produced an additional 635+ pages of documents dated prior to Orion's subpoena. ECF 236 at 13. As another example, in its Complaint, Promier alleged that expenses consisting of payments to employees reduced any damages owed to Orion. ECF 1, at ¶ 33. When Orion sought discovery of these expenses, which it understood to have been paid by Promier co-employers Elco and/or Elco Pro, Promier's counsel sought to block discovery of this issue by incorrectly claiming Wilson owned those entities. Exh. 12 at 1 ("You also have suggested you are entitled to that discovery to impeach Promier for being a bad actor. Elco and Elco Pro are separate companies, owned by Steve Wilson."). In contrast, Wilson testified that he does not own Elco (which is corroborated by various publicly available documents), a fact Barnes & Thornburg could have confirmed by checking with Wilson, who was, at the time, its client. *See, e.g.,* Exh. 11 at 152:22—153:3. Such actions harmed Orion, which relied on these false and inaccurate representations or had to expend substantial expenses in trying to compel accurate discovery responses. Promier and its counsel have engaged in a pattern of discovery abuse causing unnecessary delay and expenses in its quest to make discovery a game. "Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994).

## III. Orion's requested relief

Failing to disclose highly relevant discovery, asserting sworn misrepresentations, and ignoring this Court's orders in order to obstruct discovery constitutes bad faith abuse of discovery. Federal Rule of Civil Procedure 37 enumerates the relief a movant may seek, including but not limited to "prohibiting the disobedient party from supporting or opposing designated claims or defenses," "dismissing the action," and finding the disobeying party in contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i—vii). Additionally, "[i]nstead of or in addition to the orders above, the court

17

*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Under its inherent authority, a court may "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45. Those sanctions can include up to the ultimate sanction, dismissal, where a party has committed perjury or sought to willfully deceive the court. *E.g., Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008) *CDL 1000, Inc. v. Robertson*, No. 22 C 415, 2023 WL 4931300, at *6 (N.D. Ill. May 8, 2023) (Fuentes, M.J.)

Orion has relied to its detriment on Promier and its attorneys' misrepresentations. If Promier and its counsel had filed an accurate complaint three years ago—one that did not claim false expenses—then discovery in this case would have been significantly different—and likely concluded many months ago. If Promier had accurately represented the existence of the Promier Loan Document and disclosed it no later than late 2022 when Promier's CEO apparently received and executed it (although it is dated August 8, 2020), *see* Exh. 4, Orion would have sought different discovery, asked different deposition questions, and potentially sought the deposition of other witnesses (e.g., the drafter of the Promier Loan Document) while it had an opportunity to do so. Orion would not have had to file motions to compel such documents, *see, e.g.,* ECF Nos. 114, 119, nor responded to baseless motions from Promier opposing disclosure of such documents, *see, e.g.,* ECF Nos. 131, 132, nor prepared for and attended hearings on these issues—nor would the Court have wasted significant resources in resolving these issues. *See, e.g.,* ECF No. 146. Now fact discovery has closed, except for a limited set of depositions. If Promier had been honest about its tax returns instead of falsely claiming for months that they were filed, and then seeking to block discovery related to that issue, Orion would have also engaged in different discovery when it was

able to do so. Standard remedies for discovery violations cannot ameliorate the prejudice to Orion. Promier's and its attorneys' actions are in bad faith, and thus merit a significant sanction.

Dismissal of Promier's Count II (breach of fiduciary duty) and Count III (tortious interference) and a restriction against adding any counts in the future is warranted in light of Promier and its counsel's pattern of misconduct and misrepresentations in the form of a false Complaint, false Amended Complaint, false deposition testimony, false emails from counsel, and false sworn declarations filed before this Court and before the Western District of Virginia. In fact, both judges in this case have noted how Promier's constant misrepresentations could impact their credibility at trial, which is directly related to Promier's ability to prove its breach of fiduciary duty claim. *See* ECF 205 (Promier's misrepresentations have "put Promier's credibility, the credibility of its principals, and the credibility of its damages claim squarely at issue. This is even more true now that Promier has amended its complaint to bring a claim against Orion for breach of fiduciary duty–and thus made the parties' treatment of each other while selling PPE even more relevant"); ECF 250 ("[T]he potential mischaracterization of the payments could impact the merits of Promier's breach of fiduciary duty claim because it is evidence of Promier's conduct towards Orion"). Promier's continued misrepresentations should preclude any success on Counts II and III, as Promier cannot be permitted to benefit from its perjury and misconduct, and accordingly, these claims should be dismissed.

Orion also seeks appropriate attorneys' fees and costs related to the unnecessary discovery of false claims by Promier. Orion has expended significant resources in tracking down what turned out to be fraudulent claims by Promier (claims that its counsel had a Rule 11 obligation to investigate thoroughly) related to the $1.5 million in expenses and in responding to numerous attempts by Promier to block discovery from Anna Richards, who ultimately disclosed the Promier

Loan Document once represented by her own counsel. Orion should not pay for Promier's actions in repeatedly asserting deliberate misrepresentations and then trying to conceal its misconduct.

As permitted by Rule 37 and this Court's inherent authority, Orion seeks: (1) dismissal of Count II (breach of fiduciary duties) and Count III (tortious interference) of Promier's Amended Complaint (ECF 159) and a restriction against adding any counts in the future; (2) attorneys' fees and costs from Promier and Barnes & Thornburg for Orion's efforts in pursuing discovery related to the $1.5 million related party payments; (3) attorneys' fees and costs from Promier and Barnes & Thornburg for Orion's expenses in responding to numerous, ultimately irrelevant Rule 37.2 letters related to the Anna Richards subpoena *duces tecum*; and (3) attorneys' fees and costs from Promier and Barnes & Thornburg for preparing, replying to, and presumably orally arguing this motion.

WHEREFORE, Orion Capital LLC respectfully requests that this Court enter an order granting Orion's third motion for sanctions and for any additional relief that this Court deems just and appropriate.

<div style="margin-left: 40%;">

Respectfully submitted,

ORION CAPITAL LLC

</div>

By:   <u>/s/  Jerome R. Weitzel</u>

<div style="margin-left: 40%;">

Jerome R. Weitzel (jweitzel@kwmlawyers.com)
Caitlin J. Brown (cbrown@kwmlawyers.com)
KOZACKY WEITZEL MCGRATH, P.C.
77 W Wacker Drive, Suite 4500
Chicago, IL 60601
Tel: 312-696-0900

</div>

Heather L. Carlton *(pro hac vice)* (heather@carltonlawplc.com)
Carlton Law PLC
108 Fifth St SE, Ste. 305
Charlottesville, VA 22902

Tel: 434-260-1573

William M. Stanley, Jr. (*pro hac vice*) (bstanley@vastanleylawgroup.com)
Stanley Law Group
13508 Booker T. Washington Highway
Moneta, VA 24121
Tel: 540-721-6028