UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Promier Products, Inc., *Plaintiff*, v. Orion Capital LLC, *Defendant*. | No. 21 CV 1094  Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Plaintiff Promier Products, Inc. ("Plaintiff") filed an amended complaint on April 26, 2023. On May 12, 2023, Defendant Orion Capital LLC ("Orion") answered the amended complaint, which included affirmative defenses and counterclaims. [Dkt. 167.] Before the Court is Promier's motion to dismiss portions of Orion's pleading pursuant to Rule 9(b) and 12(b)(6), and strike others under Rule 12(f). [Dkt. 173.] More specifically, Promier has asked the Court to dismiss Orion's Illinois Sales Representative Act (ISRA) and conversion claims, as well as Orion's request for punitive damages. Separately, Promier moved to strike Orion's accounting claim and certain allegations and affirmative defense. For the reasons stated herein, Promier's motion is granted in part and denied in part.

I. **Background**

This case arises from a failed business relationship regarding the sale of personal protective equipment ("PPE") during the COVID-19 pandemic. As relevant here, Orion alleges that the parties entered into an agreement on April 13, 2020, to "sell PPE, each to bear its own expenses, and split anticipated profits equally, in other

1

words, 50/50." [Dkt. 167 at 38-39.][1] Orion further alleges that both parties acted in furtherance of this agreement by contributing "substantial amounts of property, finances, effort, skill and knowledge to" the parties' mutual benefit. [*Id.*] Nevertheless, Promier repudiated the agreement in August 2020 after Orion attempted to collect its portion of the profits, approximately $8 million. [*Id.* at 39-40.] Based on these allegations, Orion has brought an amended counterclaim against Promier for a breach of an oral contract (Count I), the Illinois Sales Representative Act (Count II), accounting (Count III), quantum meruit (Count IV), a joint venture agreement (Count V), and conversion (Count VI). [Dkt. 167 at 41-49.] Promier has moved to dismiss two of these claims, strike another, and strike several allegations within the pleading. [Dkt. 173.]

## II. Analysis

### A. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the pleadings. "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). When ruling on a motion to dismiss, the Court takes well-pleaded factual allegations

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023).

### 1.     Illinois Sales Representative Act

Promier seeks to dismiss Orion's ISRA claim, which Orion pled in the alternative to its breach of contract claims. [Dkt. 167 at 45; *see also* Dkt. 192 at 3.] Orion alleges that in the event the parties did not have a valid agreement, Orion acted as Promier's sales representative in selling PPE. [Dkt. 167 at 45.] Promier provides two bases for dismissal. First, Orion cannot be a sales representative under ISRA because it purchased PPE for its own account for resale. Second, Orion failed to allege that its "contract" with Promier to act as a sales representative was terminated. [Dkt. 173 at 7-9.] The Court agrees with Promier's first argument, so it need not reach the second.

ISRA only applies to "sales representatives", which the statute defines as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act." 820 ILCS 120/1(4); *see also* 820 ILCS 120/2. The "purchases for his own account" exclusion extends to those who both "solicit[ ] orders for a principal for commission and also purchases for her own account for resale." *Darovec Mktg. Group, Inc. v. Bio-Genics, Inc.*, 42 F. Supp. 2d 810, 815 (N.D. Ill. 1999). Accordingly, even if an entity does commission-based work for another party (e.g., Orion solicited PPE orders for

Promier), it is not a sales representative for purposes of ISRA if it also sells on its own (e.g., Orion sells PPE directly to third parties).

Promier argues Orion has pled itself out of Court based on this definition. Promier points to portions of Orion's amended answer where Orion admits that it invested "hundreds of thousands of dollars into acquiring PPE" and "continued to sell PPE products, namely bouffant caps, gloves, and shoe covers, separate and apart from its relationship with Promier." [Dkt. 167 ¶¶ 2, 58.]

Orion's response does not engage with the statutory definition of sales representative, the case law interpreting it, or the offending allegations. Instead, Orion argues that Promier improperly relied on its attorney's "self-serving" declaration to dispute the truthfulness of Orion's allegation that it is a sales representative. [Dkt. 192 at 2.] But that is incorrect. The portion of Promier's attorney's declaration that was cited on this point, [Dkt. 173-2 ¶ 5], merely quotes various portions of Orion's pleadings where Orion states that it purchases PPE for its own account for resale.[2] The plain language of the allegations Promier cites show that Orion admits it purchased PPE for its own account for resale, and what a party says in its pleadings "is a judicial admission that can be used against" it. *Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022).

---

[2] Notwithstanding this innocuous example, the Court does not condone what has become a routine tactic in this litigation where a party supplements its full-length brief with a lengthy attorney declaration replete with legal and factual argument. The parties are advised that attorney declarations may never be employed as an artifice designed to squeeze more words or arguments into a filing. In the future, the parties should expect the Court to strike any filing that attempts to do so.

Promier is not using the declaration to contest the veracity of Orion's allegations, but to show that Orion itself has alleged facts that preclude it from being a sales representative under ISRA. Orion's sole threadbare recital that "Orion acted as a 'sales representative' within the meaning of the ISRA, 820 ILCS 120/1(4)" [Dkt. 167 at 45], is insufficient to overcome this deficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Orion's ISRA claim is dismissed, and because Orion is incapable of pleading facts to overcome this deficiency, the dismissal is with prejudice.

### 2. Conversion

In September 2020, Promier wrote a check to Orion for just over $1.2 million for its work, accounted for the check as an operational expense, deposited the money in a brokerage account, but never paid Orion. [Dkt. 167 at 48.] Promier's failure to send Orion this amount—a subset of the "approximately $8 million" Orion alleges Promier owes Orion for its services—is the basis for Orion's conversion claim. [*Id.* at 41-42, 48.] Promier has moved to dismiss the claim, arguing that Orion improperly seeks money for an indeterminate sum. [Dkt. 173 at 9-11.] The Court agrees.

A conversion claim under Illinois law requires the plaintiff to plead the following: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *In re Karavidas*, 2013 IL 115767, at ¶ 61.] Conversion claims for money are rare because conversion requires "an identifiable object of property", *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985), so

"the money must be a determinate amount and identifiably distinct." *Doing Steel, Inc. v. Castle Const Corp.*, 2002 WL 31664476, at *3 (N.D. Ill. Nov. 21, 2002). "A claim of right to an indeterminate sum of money sounds in debt rather than in conversion." *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 940 (N.D. Ill. 2000).

The money also must have always belonged to plaintiff. *Doing Steel*, 2002 WL 31664476, at *3. This requirement is not satisfied where a party alleges it is owed money for services rendered. *Id.*; *see also Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). This is particularly true where the money allegedly owed comes from disparate sources. *3Com Corp.*, 104 F.Supp.2d 932 at 940 ("we can infer from the complaint that ERS received payment for scrap sales from a number of different third party customers over the course of at least two years. In these circumstances, a claim of conversion based on money cannot survive.") Ultimately, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *In re Thebus*, 483 N.E.2d at 1261.

The fact that Promier put the money into a specific, isolated account does not save Orion's claim for several reasons. First, Orion cannot show that it was always entitled to the money. Instead, like the unsuccessful plaintiff in *Doing Steel*, Orion "was entitled to the money only upon the successful performance of its duties", which here meant assisting Promier with its PPE business. *Doing Steel*, 2002 WL 31664476, at *4. These types of conversion claims are routinely rejected: "courts have been most reluctant to allow conversion claims to proceed where, as here, the defendant

6

essentially collected money on behalf of the plaintiff but later withheld it in violation of terms of the contract." *Id.* at \*4 n.7; *see also In re Thebus*, 483 N.E.2d at 1261.

While this reason alone is sufficient to dismiss the claim, the Court also notes that Orion's counterclaim makes clear that the $1.2 million it seeks is only a portion of the *indeterminate* sum it alleges Promier must pay. [Dkt. 167 at 41 (Promier owes "Orion *approximately* $8 million for Orion's 50% share of the parties' profits") (emphasis added).] The admitted fact that the amount in the bank account is but a portion of the 50% of Promier's profits—a figure that Orion does not know with specificity—irrevocably demonstrates that Orion's complaint fails to plead a conversion claim.[3] This dismissal is with prejudice.

### 3. Punitive Damages

Orion seeks punitive damages in connection with its breach of contract claims, which is permitted under Illinois law "where the defendant is also found to have committed an independent tort, separate from the breach of contract." *3Com Corp.*, 104 F. Supp. 2d at 942. To be recoverable under this theory, "the conduct causing the breach"—the breach itself—must also constitute a tort for which punitive damages are recoverable. *Morrow v. L.A. Goldschmidt Associates, Inc.*, 492 N.E. 2d 181, 184 (Ill. 1986). Here, the alleged breach is Promier's failure to pay Orion, and Orion contends there are two torts in connection with this breach where punitive damages are recoverable; the conversion of the $1.2 million discussed above, and fraud. [Dkt.

---

[3] Beyond serving as a hook for punitive damages (see below), the Court does not see how the conversion claim could possibly benefit Orion. Orion could only recover the funds if it establishes that it is entitled to the money through its contract or quantum meruit claims. Orion has no right to the money in the account absent a finding of liability.

7

167 at 41-44.] Because the Court has already dismissed the conversion claim, it only analyzes Orion's fraud claim.

Orion alleges that Promier engaged in fraudulent conduct in two ways. First, Promier fraudulently reduced its profits by intentionally and inappropriately inflating its expenses through payments or loans to Promier executives in August 2020.[4] [Dkt. 167 at 42.] Second, Orion claims that Promier fraudulently switched labels on some of its PPE sold to Asheville Botanicals to make it appear as though the equipment came from an FDA-approved source. [*Id.* at 43.] Promier seeks to dismiss both bases for punitive damages.

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860, 863 (N.D. Ill. 2010) (quoting *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir.2010)). Moreover, a claim for fraud must be pled according to the particularity standards of Rule 9(b). *Id.* Orion has met this burden regarding the payments/loans to executives, but not with respect to Asheville Botanicals.

---

[4] These payments have been the subject of substantial litigation between the parties since Orion filed its counterclaim and has already resulted in discovery sanctions against Promier. [*See* Dkts. 205, 250.] Another request for sanctions on this issue is currently being briefed. [Dkts. 268, 278.] Relevant here, Promier admits the payments to its executives were loans, even though they were initially classified as expenses (thereby reducing Promier's profits).

Promier's conduct towards Asheville Botanicals did not injure Orion, and therefore cannot serve as the basis of Orion's fraud claim. As Promier notes in its briefing, if any party was injured by Promier's actions, it was Asheville Botanicals. [Dkt. 173 at 12-13.] This is true generally, but especially so here where the fraud must be tied to Promier's breach of contract—that is, its failure to pay. *Morrow*, 492 N.E. 2d 181, at 184. Orion does not meaningfully respond to this argument (nor can it), so its claim for punitive damages based on this theory is dismissed with prejudice.

Conversely, Orion has pled fraud with particularity regarding Promier's executive loan payments. Orion has alleged Promier made a false statement of material fact (the payments were valid expenses which reduce profits); which Promier knew to be false (Promier consciously paid its executives so it would pay Orion less money); Promier intended for Orion to rely on the expenses (Orion would accept Promier's characterization); and that Orion suffered an injury as a result (Orion would receive less money). [Dkt. 167 at 42-43.] This is all that is required at the pleading stage. Moreover, the conduct is directly tied to Promier's alleged breach of the parties' contract—by artificially inflating expenses, Promier breached the contract by not paying Orion 50% of its actual profits.

Promier argues that Orion's claim "seek[s] recovery based on Promier's conduct during discovery in this lawsuit", [Dkt. 173 at 12], but that is incorrect. Promier made the allegedly fraudulent loan payments in August 2020, as the parties' relationship was deteriorating and before Promier filed this lawsuit in February 2021. While it is true that Orion *learned* of the allegedly fraudulent nature of the payments during

9

discovery, there is nothing improper given the leave to amend. Nor is Promier's argument that the payments are "not fraudulent", [Dkt. 201 at 10], persuasive given that the Court must take all allegations as true at the pleading stage, and the ongoing issues surrounding the payments. Promier's motion is therefore denied.

### B. Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are generally disfavored and "often squander judicial resources" but can be proper where they expedite the litigation. *Pavlik v. FDIC*, 2010 WL 3937621, at *1 (N.D. Ill. Oct. 5, 2010) (citing *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 728 (7th Cir.2006)).

#### 1. Accounting

Judge Kendall granted Promier's motion to dismiss Orion's accounting claim because the "claim is fairly encompassed in the breach of contract claim, damages will be ascertained through that claim, and the requested information should be acquired through discovery associated with that claim." [Dkt. 86 at 9.] Notwithstanding the dismissal, Orion re-pled the accounting claim in its amended counterclaim "for purposes of preserving the issue for appeal." [Dkt. 192 at 10.] As Promier notes in its motion, however, a party does not need to re-plead a dismissed cause of action to preserve the issue on appeal. [Dkt. 173 at 9-10]; *see also Lindstrom v. TD Ameritrade, Inc.*, 2022 WL 2463680, at *3 (N.D. Ill. July 6, 2022) ("It is not necessary or appropriate to replead rejected claims for purposes of appeal and the Court will not spend any further time on these claims.") Orion points to no other

10

reason, beyond the lack of prejudice to Promier, for why the claim should not be stricken. Promier's motion to strike the accounting claim is granted.

### 2. Affirmative Defenses

Orion raises five affirmative defenses in its answer to Promier's amended complaint. Promier seeks to strike all of them. Affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings", *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), which occurs when it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g., Mittelstaedt v. Gamla-Cedron Orleans LLC*, 2012 WL 6188548, at *2 (N.D. Ill. Dec. 12, 2012). "Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed." *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006).

Orion's first two affirmative defenses are related to the already rejected argument that the Court does not have subject-matter jurisdiction over Promier's declaratory judgment action. [Dkt. 167 at 33-34; *see also* Dkt. 86 at 11.] Orion argues that circumstances have changed because Promier has added claims for breach of fiduciary duty and tortious interference with prospective economic advantage, [Dkt. 192 at 12], but does not explain how these changes would defeat subject-matter jurisdiction. Orion's briefing suggests it is now arguing that Promier's declaratory judgment action is mooted by the presence of the new claims, but that is not what the

affirmative defenses state. [*Compare* Dkt. 167 at 33-34, *with* Dkt. 192 at 12.] Promier's motion to strike Orion's first two affirmative defenses is granted.

Orion's third and fourth affirmative defenses are both founded in the argument that Promier "unilaterally repudiated the parties' Agreement" in August 2020. [Dkt. 167 at 35, 37.] Promier argues these defenses "lack sufficient detail to be sufficiently pleaded", and that the basis for Orion's argument—an email sent by Promier's counsel—demonstrates they fail as a matter of law. [Dkt. 173 at 11.] Orion contends in response that "an affirmative defense of anticipatory repudiation is a question of fact" under Illinois law and that a reasonable juror could find that the email constitutes repudiation. [Dkt. 192 at 13.] Based on these arguments, the Court is not "convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed", *Reis Robotics USA, Inc.*, 462 F. Supp. 2d 897 at 905, and therefore denies the motion.

In response to Promier's tortious interference claim, Orion's fifth affirmative defense provides three separate reasons why Duke Health stopped doing business with Promier that are unrelated to Orion's conduct. [Dkt. 167 at 37-38.] Promier argues that this does not amount to an affirmative defense because it would not defeat Promier's claim even if true. [Dkt. 173 at 15-16.] But Promier has failed to make more than a conclusory argument for why that is the case. It appears to the Court that even if Orion took all the actions alleged in the amended complaint, the causation and damages elements of Promier's claims could be defeated by these separate reasons for why Promier and Duke stopped doing business. *Holbrook Mfg.*

12

*LLC v. Rhyno Mfg.*, 497 F. Supp. 3d 319, 337 (N.D. Ill. 2020) (a tortious interference with prospective economic advantage claim requires "an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and … damages to the plaintiff resulting from the defendant's interference.")

Promier also asks the Court to strike Orion's assertion Promier was "price gouging" Duke because it suggests Promier committed a crime. [Dkt. 173 at 15-16.] Promier's point is well taken, and Orion is admonished to avoid using that term moving forward. The Court declines to strike the allegation, however, because it interprets Orion's use of the term to mean that Duke stopped doing business with Promier because of the high prices Promier charged. Moreover, striking the allegation will do nothing to expedite the litigation. *Pavlik*, 2010 WL 3937621, at *1.

### 3. New Allegations

Promier's final request is for the Court to strike portions of Orion's answer to Paragraph 2 of the amended complaint. [Dkt. 173 at 16-17.] The request is denied. "A motion to strike an answer will be denied if no prejudice can result from the challenged allegations." *Blackwell v. Am. Airlines, Inc.*, 2003 WL 732574, at *3 (N.D. Ill. Mar. 3, 2003). "District courts have considerable discretion to strike allegations under Rule 12(f)." *Pavlik*, 2010 WL 3937621, at *1.

According to Promier, Orion has added three new allegations regarding the April 13, 2020, meeting (where Orion claims the parties entered into an agreement) that contradict Orion's prior positions, thereby prejudicing Promier. The first is that Orion now alleges that its pre-agreement gratis sales lead generation for Promier is

13

part of the agreement, whereas previously Orion alleged the sales assistance was pre-agreement only. [Dkt. 173 at 16-17.] In response, Orion argues that it has always alleged that its pre-agreement sales assistance is relevant to the creation of the agreement and Orion's responsibilities therein. [Dkt. 192 at 14.] Reviewing Orion's initial answer compared to its amended answer, the Court cannot conclude that Orion's statements are contradictory, and therefore declines to strike the allegation:

| *Compare* Dkt. 167 ¶ 2 | *With* Dkt. 44 ¶ 20 |
|---|---|
| Orion's responsibilities under the agreement include: "advising Promier on best practices for managing its inventory and credit to grow its PPE business in the anticipation of sharing profits 50/50 with Promier (which included substantially assisting Promier with pre-Agreement business so Promier could turn around its cash flow in order to have more resources to devote to the parties' Agreement, initially tendering PPE sales leads gratis prior to entering into the Agreement, and rendering advice pertaining to marginally useful PPE inventory Promier had acquired or was acquiring)." | Denying allegation that the parties "reached no immediate agreement as to the capacity in which Hall or Orion Capital would act for or with Promier" because "the parties had reached their 50/50 joint venture on April 13, 2020, and affirmatively states that prior to the parties' 50/50 joint venture, Orion Capital sent Promier certain PPE sales leads gratis so Promier would not go out of business during the Covid-19 pandemic, in order for Promier to become a viable joint venture partner with Orion Capital's substantial assistance and expertise." |

The second purportedly new component of the parties' agreement is that Orion would advise Promier on managing "marginally useful PPE inventory" it acquired. [Dkt. 173 at 16.] Orion's response is that it alleged in its initial answer that one of its responsibilities under the agreement was advising Promier on handling inventory. [Dkt. 192 at 15; *see also* Dkt. 44 ¶ 2 (the parties agreed during the April 13, 2020, call that Orion was responsible for "advising Promier on best practices for managing its

14

inventory and credit to grow its PPE business in the anticipation of sharing profits 50/50 with Promier.").] The Court does not see how the addition of the words "marginally useful" contradicts the broader initial allegation, and declines to strike it on that basis.

The final purportedly new allegation is that during the April 13 phone call, the parties agreed Orion would devote two months towards "managing litigation issues pertaining to Infocus' claims against Promier for misrepresentations" which was requested by Promier's president. [Dkt. 173 at 16-17.] Promier argues that it was impossible for the parties to agree on the call that Orion would assist with the Infocus litigation because that did not start until May 2020. [*Id.*] Orion again responds by pointing to its initial answer, [Dkt. 192 at 15], but this time it is not clear how the citation supports the conclusion that Orion and Promier agreed in April 2020 that Orion would help with the litigation. The citation instead responds to an allegation regarding a May 2020 email, and simply says that Orion believes it helped Promier resolve the litigation favorably. [Dkt. 44 ¶ 30.] No other portion of Orion's initial or amended answer sheds light on this issue.

Accordingly, Orion's allegation that the parties agreed in April 2020 Orion would devote two months to managing litigation related to Infocus appears to be new. But the question is whether it is prejudicial. The Court concludes it is not for several reasons. First, Promier was on notice from Orion's initial answer that it alleged that Orion's efforts helped resolve litigation involving Promier favorably and that this was

15

relevant to the parties' relationship.[5] [Dkt. 44 ¶ 30.] Promier could have taken discovery on the issue, which would have provided additional information on the basis for Orion's allegation. Second, the Court cannot conclude on the record before it that Orion including this allegation in its amended answer "contradicts" anything it said before. Promier argues that Orion's CEO Richard Hall never mentioned the litigation management during his deposition as being part of the April agreement, but the snippets Promier points to show only that Hall did not affirmatively raise it when responding to Promier's counsel's questions. [Dkt. 173-2 ¶ 3.] And Promier does not point the Court to any portion of the transcript where Hall testified he had listed all elements of the agreement. It does not appear Hall was asked about this topic.

In so concluding, the Court recognizes that it is not operating on a full record. If the dispute between Promier and Infocus truly did not arise until May 2020, then the parties obviously could not have discussed it in April 2020.[6] Parties can also anticipate litigation before it "commences", [Dkt. 173 at 17], though, so the issue may have been discussed during the April call. The parties, and particularly Orion, know the context better than the Court. Consequently, while the Court will not strike Orion's allegation, it asks Orion to confirm (with Promier, not the Court) that it is alleging that assistance with the Infocus litigation was discussed on April 13, and not added to the agreement later. If Orion determines it needs to provide more clarity on

---

[5] The Court presumes, based on Orion's citation in its brief, that the "TDEM" litigation is the same as the "Infocus" litigation. [Dkt. 192 at 15.]
[6] If this is true, then Orion will not be able to succeed on this theory regardless of whether the Court strikes the allegation.

16

what it is alleging on this isolated point, it may file an amended answer within 21 days of this Order.

### III. Conclusion

For the reasons stated herein, Counts II (ISRA) and VI (Conversion) in Orion's counterclaim are dismissed with prejudice, and Count III (Accounting) is stricken. Orion may proceed with its claim for punitive damages under the loan/payment theory, but not for Promier's conduct towards Asheville Botanicals. Finally, Orion's first two affirmative defenses are stricken, but Promier's motion to strike is otherwise denied.

Enter: 21-CV-1094
Date: March 18, 2024

_____
Lindsay C. Jenkins
United States District Judge