# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PROMIER PRODUCTS, INC.,

        Plaintiff,

    v.

ORION CAPITAL LLC,

        Defendant.

No. 21 CV 1094

District Judge Jenkins

Magistrate Judge McShain

## ORDER AND
## REPORT AND RECOMMENDATION

Pending before the Court is defendant Orion Capital LLC's motion for sanctions for false declarations and a pattern of discovery abuse [268], plaintiff Promier Products, Incorporated's response [278], and Orion's reply [293, 294].[1] For the following reasons, and in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge deny Orion's motion to the extent it seeks dismissal of counts II and III of Promier's amended complaint.[2] The motion is granted to the extent that Orion seeks an award of attorney's fees and costs it incurred in bringing this motion.[3]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] Because the undersigned lacks authority to resolve a motion requesting the involuntary dismissal of an action in whole or in part, *see* 28 U.S.C. § 636(b)(1)(A), the undersigned issues this Report and Recommendation. In contrast, the Court's invocation of its inherent authority to sanction Promier for the discovery misconduct discussed in this order and requiring it to pay Orion's fees and costs incurred in bringing this motion is non-dispositive. *See* [250] 5 ("Orders pertaining to discovery that do not seek an adverse inference, dismissal, or other form of final relief are typically non–dispositive.").

[3] In the exercise of its discretion, the Court denies Promier's request for "an in-person hearing" on the motion. [278] 7. It is unclear whether Promier seeks an evidentiary hearing on the motion or simply an opportunity to argue the matter in court. On the former possibility, Promier has not identified any holes in the record or facts that need to be developed before the motion can be fairly resolved. The Court also finds that the parties' voluminous briefing and exhibits provide an adequate basis to decide the issues raised in the motion. To the extent that Promier requests an opportunity for in-person oral argument, the Court concludes that such arguments would not meaningfully assist the Court in resolving the motion.

## Background

The pending sanctions motion presents still another chapter in the parties' longstanding dispute over the proper classification of $1.3 million in related-party payments that Promier made to MWCC Enterprises and the Pell Group. The details are set forth at length in the undersigned's order of August 30, 2023 [205], which sanctioned Promier for its efforts to obstruct two depositions that addressed these payments, and the District Judge's order of December 22, 2023 [250], which affirmed the imposition of sanctions, and will not be repeated here. It suffices for present purposes to recall that Promier began this case in 2021 by claiming, and maintained well into 2023, that the payments constituted operating expenses that Promier could subtract from the net profits it generated selling personal protective equipment (PPE), a portion of which Orion contends it is owed under its agreement with Promier. Orion tried to take reasonable and appropriate discovery into whether the payments were actually expenses, but Promier fought Orion tooth-and-nail. It objected to Orion's motion to take additional discovery into this issue and lost. *See* [125]. It brought a baseless motion to reconsider the Court's ruling that this discovery was permissible and lost again. *See* [145]. It sought a protective order that would have barred Orion from asking Promier's COO Michael Wollack and Promier's CEO Matt Pell how they treated the payments on their personal tax returns and lost once more. *See* [166]. And when Wollack and Pell testified–contrary to every representation that Promier had made throughout the litigation–that the payments weren't expenses at all, but loans, Promier's attorneys ordered Wollack and Pell not to answer Orion's reasonable follow-up questions about the loans. The undersigned sanctioned Promier for this discovery misconduct, finding that Promier's lawyers' conduct at the depositions was "unreasonable" and "completely unjustified." [205] 7, 12.[4] Promier appealed to the District Judge and lost yet again, with the District Judge agreeing that sanctions were warranted for Promier's discovery misconduct. [250] 9.

The driver of Orion's current sanctions motion is its discovery, in November 2023, of a promissory note executed by Matt Pell relating to the $750,000 payment received by the Pell Group. *See* [268-4]. The note, which is dated August 8, 2020, documents a promise by Pell to pay Promier $750,000 and reflects other purported terms of the loan (its maturity date and applicable interest rates). At a February 2024 deposition, Pell testified that his personal accountant, Anna Richards, had suggested that he might need a promissory note memorializing the loan, especially if he were audited by the IRS. [278-2] 18, at 61:15-62:7. Accordingly, in the fall of 2022, Pell asked Richards to create the note. [*Id.*], at 61:8-14. Pell proposed some of the note's terms, while Richards determined which interest rates to use. [*Id.*] 19, at 67:2-20; [*id.*] 20, at 71:13-72:2. Although the note was dated August 8, 2020, Pell explained that he had signed the note in October 2022 and backdated it. Pell then kept the note for himself and never disclosed its existence to anyone other than Richards. [*Id.*] 20,

---

[4] The sanctions included allowing Orion to take depositions of multiple witnesses and serve additional third-party discovery, all at Promier's expense. *See* [205] 10-12.

at 72:3-17. Richards, who provided accounting services to Promier during the latter stages of this litigation, testified that Pell told her sometime in 2022 that he "never got any documents from Promier that this is a loan" and asked her if he needed to document or memorialize the payment. [277-1] 40, at 153:8-12. Richards said that "that's something that you would have to, you know, do with Promier," but that she could help him memorialize the loan with a "promissory note that you are promising to pay." [*Id.*], at 153:13-18. Richards testified that she probably created the promissory note in October 2022, and the "metadata associated with the original Word document showed October 18, 2022 as the creation date." [*Id.*] 41, at 154:3-12. Orion first obtained the promissory note on November 21, 2023, when it received the note as part of Richards's response to Orion's subpoena for documents. *See* [268] 3-4.

Despite the obvious relevance of the promissory note to Orion's concerns over how the related-party payments were classified, Promier did not produce the promissory note to Orion until December 26, 2023. *See* [278-1] 27-28, ¶ 163. In a prior filing, Promier represented to the District Judge that its counsel "learned for the first time that the $981,223.79" in payments to MWCC and the Pell Group "had not been an expense" while "preparing for the depositions that gave rise to" the undersigned's August 30, 2023 sanctions order–that is, the depositions of Wollack and Pell that took place on May 22, 2023. [213] 7; *see also* [278] (similar representation in response to pending sanctions motion). Regarding the Pell promissory note, Promier has represented that it "first obtained the Pell Promissory Note in November 2023, when Anna Richards produced it pursuant to subpoena[.]" [278] 7.

The record is less clear as to when Promier's lawyers at Barnes & Thornburg first learned that the promissory note existed. According to Pell's testimony at a February 2024 deposition, Promier's counsel learned about the promissory note "sometime around" his May 2023 deposition:

> Q:      When did you inform Barnes & Thornburg that you had this personal promissory note?
>
> A:      It was likely sometime around the – the last deposition that I had, you know, and I said that it was a loan. And – and then at some point, I think after that deposition, legal counsel asked if I could share a copy of it, and I shared a copy of it.
>
> Q:      Okay. Did you inform Barnes & Thornburgh that that personal promissory note existed before your deposition in May of 2023.
>
> A:      Honestly, I can't recall whether I did or I didn't.

[278-2] 20-21, at 72:24-73:10.

Pell testified that he "believe[d]" that he "emailed" a copy of the note to counsel, but Promier's response brief–despite running to 20 pages and including more than 600 pages of exhibits–does not specifically address this testimony. Rather, Promier has offered a declaration from one of its attorneys, Vincent (Trace) Schmeltz III, which states that, "[o]n August 31, 2023, Barnes & Thornburg requested from Mr. Pell, on behalf of him as his personal counsel, and received the Pell Promissory Note from Mr. Pell while representing him personally[.]" [278-1] 24, at ¶ 142. Nevertheless, Promier's attorneys did not produce the promissory note to Orion until nearly four months later. Promier asserts that it could not have produced the note sooner because, on September 6, 2023, the undersigned stayed the Court's prior order authorizing Orion to take additional discovery on the related-party payments pending the resolution of Promier's appeal to the District Judge. *See* [278] 10, 12.

Orion filed the pending sanctions motion on February 5, 2024. It argues that Promier has engaged in a pattern of discovery abuse by "falsely claiming at least $1.3 million in expenses in order to reduce amounts owed to Orion" and obstructing Orion's efforts to undertake discovery into how Promier treated the payments. [268] 1. The sanctions motion depends heavily on Orion's claim that Promier and attorney Schmeltz submitted two under-oath declarations that falsely denied the existence of any documents relating to the loans. The first declaration at issue is Wollack's declaration, on April 7, 2023, that, to the best of his knowledge and belief, "Promier has produced all relevant documents in Promier's possession, custody and control pertaining to the payments made associated with PPE sales to the Pell Group and MWCC Enterprises." [268-2] 2, at ¶ 4. Orion contends that this declaration was false because the Pell promissory note existed when the declaration was made, but the note was not produced until December 2023. The second declaration is attorney Schmeltz's September 13, 2023 declaration, which states that "I, nor any member of Promier's counsel, knew the $981,223.79 was a loan, and there were no documents indicating so." [213-5] 2, at ¶ 5. Orion contends that this declaration was false for the same reason that Wollack's declaration was false because, by September 2023, Schmeltz and Promier's other attorneys knew not only that the payment to Pell was a loan, but also that the promissory note existed. Citing these alleged false representations and Promier's efforts to obstruct Orion's discovery into how Promier characterized the related-party payments, Orion argues that the Court should sanction Promier by dismissing its claims for breach of fiduciary duty and tortious interference, barring Promier from adding new counts to its amended complaint, awarding Orion its attorney's fees and costs for its "efforts in pursuing discovery related to the $1.5 million related party payments," and awarding Orion its fees and costs incurred in bringing this motion. [268] 20.

Promier responds that sanctions are not warranted for three main reasons. First, Promier contends that "[t]he failure to disclose these payments as loans has already been litigated and sanctioned," and that any further "sanctions on sanctions would be disproportional." [278] 19. Second, Promier denies that the Wollack and

Schmeltz declarations were false. Although Promier does not dispute that the Pell promissory note existed as of October 2022, it contends that the note was Pell's personal document that Promier had no duty to produce because the note was not in its possession, custody, or control. [*Id.*] 14-17. Third, Promier contends that, "[a]t every turn, Promier and its counsel have been forthright and timely in their disclosures to opposing counsel and the Court," and that its discovery conduct on these issues has been about opposing Orion's efforts to undertake "protracted discovery" into supposed "sideshow issues." [*Id.*] 3, 11.

### Legal Standard

Rule 37(b)(2)(A) "grants the district courts the power to impose appropriate sanctions for violations of discovery orders." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). The Rule provides that "[i]f a party . . . fails to obey an order to provide or permit discovery," the Court "may issue further just orders," including an order "dismissing the action or proceeding in whole or in part," Fed. R. Civ. P. 37(b)(2)(A)(v), and an order requiring the disobedient party to pay its opponent's attorney's fees and costs, Fed. R. Civ. P. 37(b)(2)(C). The Court also has "inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit[.]" *S.E.C. v. First Choice Mgmt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012). This power "must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), and "the district court's use of its inherent power must be grounded in factual findings supported by the record." *Evans v. Griffin*, 932 F.3d 1043, 1047 (7th Cir. 2019).

Sanctions, whether imposed under Rule 37 or the Court's inherent authority, must be reasonable and proportionate to the offense. *Clinical Wound Sols., LLC v. Northwood, Inc.*, No. 18-cv-7916, 2023 WL 3568624, at *10 (N.D. Ill. May 19, 2023).

### Discussion

### A.    Wollack and Schmeltz Declarations

The Court first finds that neither the Wollack declaration nor the Schmeltz declaration includes a false statement regarding the existence or non-existence of documents related to Promier's loans to Pell and Wollack.

The crux of Orion's claim to the contrary is that Promier had the Pell promissory note in its possession, custody, or control from the moment it was created because Pell was its CEO and the note memorialized a transaction to which Promier was a party. *See, e.g.*, *Castro v. DeVry Univ., Inc.* 786 F.3d 559, 578 (7th Cir. 2015) ("A party's duty to produce documents under [Rule] 34(a) applies to responsive documents in its possession, custody, or control.") (internal quotation marks omitted). But the most probative evidence on this issue–Pell's February 2024 deposition

testimony, which, importantly, is corroborated by Anna Richards's own testimony–refutes that claim. Both Pell and Richards testified that Pell created the document for his personal purposes, most importantly to memorialize the loan in the event of an IRS audit of his personal tax returns. Pell testified that he never told anyone at Promier about the promissory note and that he and Promier had never agreed to any of the specific terms reflected on the note. *See* [278-2] 70, at 35:20-37:6. Additional evidence in the record corroborates Pell's testimony. Promier's owner and president, Cody Grandadam, testified that he alone among Promier's principals had decision-making power over matters of compensation and loans, and that the promissory note did not memorialize any loan terms to which Promier and Pell had agreed. *See* [*id.*] 36, at 11:19-12:1; [*id.*] 40, at 27:22-28:8; [*id.*] 46, at 49:1-12. Indeed, Grandadam testified that they had not seen or known about the note until shortly before his February 2024 depositions. [278-2] 45, at 47:7-48:6. There is, in short, no evidence that Pell created the note in his capacity as Promier's CEO or while acting in the scope of his role as Promier's CEO.

Given the Court's finding that the Pell note was not a Promier corporate record, the Court cannot find that Wollack's April 2023 declaration was false or misleading. In other words, even though the Pell note existed when Wollack executed that declaration, Promier did not possess that document, have it in its custody, or control it. Thus, Wollack's representation that Promier had produced all responsive documents relating to the payments to MWCC and the Pell Group was not false even though Promier's production did not include the promissory note.

The Court reaches the same conclusion regarding the Schmeltz declaration, though the question is closer. According to Schmeltz:

2.      As counsel of record for Promier, I have been involved in all aspects of the litigation in this matter since my filing my appearance [*sic*] on February 24, 2021. [Dkt. No. 4.] I make this declaration on personal knowledge.

3.      As part of discovery, Promier produced two documents, PROM000096 and PROM41922, that show all revenue and expenses related to the relevant sales[.] Both documents were prepared using information from Promier's database and summarize the PPE's total revenue and direct expenses.

4.      PROM041922 includes a line for "additional expenses" not directly related to PPE sales in the amount of $981,223.79. These expenses was [*sic*] not deducted from PPE sales, they were simply aggregated in the document.

5.      I, nor any member of Promier's counsel, knew the $981,223.79 was a loan, and there were no documents indicating so. Therefore, since there was no indication of a loan in Promier's documents or discussions, counsel never thought to inquire about a potential loan. Promier does not have any tax documents associated with the loan payments. Therefore, Promier provided copies of the checks written to Messrs. Wollack and Pell to Orion. A copy of this correspondence with Orion is attached as Exhibit E to this Declaration. Therefore, Promier provided copies of the checks written to Messrs. Wollack and Pell to Orion.

[213-5] 1-2, at ¶¶ 2-5.

Orion contends that the Schmeltz declaration is false because paragraph 5 constitutes a categorical denial that Schmeltz knew whether the payments were loans or whether there was any "indication" that a loan document existed. So read, the declaration would clearly be false and misleading. As noted above, Promier's attorneys have conceded that they learned that the payments were loans sometime around May 2023 while preparing for Wollack's and Pell's depositions that month. *See* [213] 7. Furthermore, those same attorneys have acknowledged receiving a copy of the promissory note from Pell no later than August 31, 2023. Thus, a categorical denial by Schmeltz in September 2023 that he and Promier's counsel did not know about the loans or the existence of loan documents would support an award of sanctions. But the Court does not believe that it is reasonable to read paragraph 5 as such a categorical statement. Instead, Schmeltz's awkwardly phrased representation about what he and other Promier attorneys didn't know is linked to the existence of the Promier exhibit PROM041922, which was created during the discovery process to document all revenue and expenses related to the parties' sales of PPE. The exhibit contains an entry for "additional expenses" that were not directly related to PPE sales in the amount of $981,223.79, and it was to that sun that Schmeltz expressly referred in paragraph 5. The Court therefore concludes that the best reading of paragraph 5 is that it represents Schmeltz's position that, when PROM041922 was created and until prepping for the May 2023 depositions, neither he nor other members of Promier's legal team knew that the $981,223.79 included the loans to MWCC and the Pell Group. Because the statement was not clearly a categorical denial, the Court finds that paragraph 5 of the Schmeltz declaration does not contain a false representation.

For these reasons, the Court rejects Orion's claim that sanctions are warranted based on Promier's false representations.

## B.     Promier's Discovery Misconduct

Orion also argues that Promier should be sanctioned for its pattern of discovery abuses, culminating in the allegedly false declarations executed by Wollack and

Schmeltz and its withholding of the Pell note. This request necessarily fails to the extent that it depends on the declarations, which the Court has found do not contain any false representations. But the Court agrees with Orion that sanctions are warranted for the following instances of discovery misconduct respecting the Pell promissory note.

The Court finds that Pell knowingly gave highly misleading testimony at his November 30, 2022 deposition regarding the proper classification of the $750,000 distribution. On that topic, Pell testified as follows:

> Q:  You see that this spreadsheet indicates that 750,000-dollar commission was paid to Pell Group, LLC?
>
> A:  Okay.
>
> Q:  Do you see that?
>
> A:  I see that's what the sheet says.
>
> Q:  Is that true?
>
> A:  Whether you want to classify it as a commission or not, Pell Group did receive those monies in direct correlation with my efforts in PPE.

[223-4] 40, at 151:9-17.

The record is crystal clear not only that the $750,000 was a loan rather than a commission, but also that Pell had long known that to be the case. Pell admitted during his most recent deposition (on February 5, 2024) that he "knew it to be a loan" as of September 1, 2020, around when the distribution was made. *See* [278-2] 9, at 28:12-14. More striking, the record is also crystal clear that Pell had discussed with his accountant the fact that the distribution was a loan–and had even asked the accountant to memorialize his promise to repay Promier–in October 2022, only a month before the November 2022 deposition. Contrary to Promier's argument, "[t]he revelation of the Pell Promissory Note in Fall 2023" absolutely "make[s] the earlier statements" that the distribution were not loans "especially egregious." [278] 13. Given how close on the heels Pell's November 2022 deposition was to Pell's decision to instruct his accountant to create the promissory note memorializing the loan, it is simply impossible to read Pell's testimony as anything other than a purposeful evasion of Orion's question that embodies a decision not to honestly disclose that the Pell Group had received a loan, not a commission. The Court's conclusion on this point is supported by other parts of Pell's testimony in November 2022, where he accepted Orion's characterization of the distribution as a "commission" without disclosing the

critical fact that the distribution was a loan. *See* [223-4] 40, at 152:19-22 (Pell testifying about his purported non-involvement in Promier's "decision about MWCC Enterprises receiving a commission in 2020"); [*id.*] 41, at 155:3-6 (testifying that $750,000 was "paid to Pell Group" for "my efforts in direct correlation with PPE sales). The Court also finds that Pell's evasions and misleading testimony effectively blocked Orion from discovering, then and there, that the distribution was not a commission–and thus could not be deducted from Promier's net profits.

The Court also finds that Promier's counsel failed to promptly disclose to Orion the fact that the distributions to Wollack and Pell were loans. Promier's lawyers have acknowledged discovering that the related-party payments were not expenses while "preparing for the depositions that gave rise to" the undersigned's August 30, 2023 sanctions order–that is, the depositions of Wollack and Pell that took place on May 22, 2023. *See* [213] 7. Nevertheless, Promier has not cited to any evidence in the record showing that it or its attorneys disclosed this critical fact to Orion before the May 2023 deposition–notwithstanding that the proper classification of the distributions was a major focus of Orion's discovery requests[5] and that Promier and its principals had repeatedly represented that the distributions were commissions or expenses. Instead, Orion discovered this fact while questioning Wollack and Pell during their May 22 depositions. While the Court acknowledges that the delay between Promier's counsel's discovery of the true nature of the payments and Orion's discovery was likely minimal (although the Court cannot be certain, as an exact date of counsel's discovery of this fact is not given), the failure to promptly alert Orion to this "surprising turn of events" [205] 7, is some evidence of Promier's continued obstruction and discovery misconduct.

Given the Court's prior rulings, given Wollack's and Pell's testimony at the May 2023 depositions, and given Orion's demonstrated interest in uncovering loan documents, it was imperative that Promier and its counsel inquire of the Promier principals whether any such documents existed. To begin, this Court ruled on February 24, 2023 that "the payments to Wollack, Pell, and the entities they controlled" were "relevant to the calculation of Promier's damages and Orion's efforts to respond to the claim for damages." [125] 5. The Court therefore allowed Orion to take discovery into the related documents that Orion contended were likely to exist, such as "bank statements showing the amounts paid, the W2 or 1099 forms issued by Promier, and the accompanying schedules that show whether Promier took the payments as operating expense deductions." [*Id.*]. The Court subsequently ruled, on May 11, 2023, that Orion would be allowed to question Wollack and Pell "how each witness treated the payments he received from Promier on his personal income taxes." [166] 1. Then, once Wollack and Pell gave their surprising testimony, Orion sought to ask follow-up questions about the existence of any loan-related documents–

---

[5] Indeed, Orion's opposition to Promier's motion for a protective order presciently suggested that "[t]he $1.5 million at issue could be a loan" and argued that Orion was entitled to discovery to close out the issue. [154] 2.

documents that were obviously germane and relevant given the Court's prior rulings and the broader context in which this issue arose. *See* [205] 7; [250] 7. Even Pell–whom Promier described as simply one of the "folks who have no prior business experience" running its business, [278] 5, and who testified that whether Promier's attorneys had ever represented him in his individual capacity was "above [his] head," [278-8] 1, at ¶ 5–was attuned to the possibility that Orion, having found out that the distribution were loans, would ask about related documents. Instead of answering Orion's questions about loan terms and documents, however, Pell objected–even before his counsel could lodge an objection on his behalf–that such questions were beyond the scope of the deposition. *See* [223-12] 4, at 7:16-18 ("I believe that's outside of the scope – the scope."). Despite all this, Promier's voluminous response brief, which is supported by, *inter alia*, multiple declarations from its lawyers, says nothing about whether it or its counsel asked Pell and Wollack shortly after the May 2023 depositions whether any loan-related documents existed. The submission instead reflects that Promier and counsel did not ask Pell about loan-related documents until more than three months later, when counsel obtained the note while representing Pell in his individual capacity. *See* [278] 10, 16 & n.7; [278-1] 24, at ¶ 142.[6] In these circumstances, a reasonable attorney representing Promier should have inquired of Pell and Wollack immediately after the May 2023 depositions whether any loan-related documents existed. That Promier and its counsel apparently did not do so, instead letting the issue linger until late August 2023, is considerable evidence of foot-dragging that obstructed discovery and delayed the long-overdue resolution of this issue.

The Court finds that Promier's counsel unreasonably and without justification delayed in producing the Pell promissory note to Orion after it was obtained from Pell. Promier did not produce the note to Orion until December 26, 2023, nearly four months after Pell provided to his attorneys (who were the same attorneys representing Promier). Promier argues that it could not have produced the note any earlier because the Court had issued a "stay on discovery into these loans," and that "Promier produced it on December 26, 2023, as soon as the stay on discovery was lifted." [278] 10; *see also* [*id.*] 12 ("Orion overlooks the fact that there was a stay on loan-related discovery from September 6, 2023 through December 22, 2023"). But this argument just doesn't hold water. To begin with, after the Court issued the sanctions order, Promier moved for "a stay of execution of all discovery and investigation *ordered in ECF No. 205* [*i.e.*, the August 30 sanctions order] pending Promier's appeal to the District Court." [209] 2 (emphasis added). Promier added that the stay "will not prejudice or disadvantage Orion" because all other "fact discovery in this case has

---

[6] While Promier notes that the same attorney or attorneys who represented it also represented Pell in his individual capacity in connection with a subpoena for documents that had been served on Pell, its response brief does not argue that this dual or joint representation explains or justifies the delay in not producing the note before December 26, 2023.

been completed" and the additional discovery authorized by the sanctions order was "the only remaining discovery, aside from expert discovery." [*Id.*]. The Court granted the motion and ordered that the August 30 order "imposing sanctions and *authorizing additional discovery* is hereby stayed pending resolution of plaintiff's appeal of that order to the District Judge." [210] (emphasis added). Thus, both Promier's motion and the Court's order granting the motion stayed only the specific items of additional discovery authorized by the sanction order, which included depositions of several witnesses and third-party documents. Simply put, nothing in the Court's order authorized, and Promier's motion did not request, a stay of all conceivable "loan-related discovery." [278] 12.[7] Moreover, even if Promier's argument had some basis in the stay order–and it does not–Promier's counsel have no explanation for why they did not produce the promissory note sometime between August 31 (when it was obtained from Pell) and either September 5 (when Promier moved for the stay) or September 6 (when the undersigned granted the motion). That Promier would again[8] rely on such an implausible reading of the Court's stay order–an order the Court entered in response to Promier's request to stay only the additional discovery authorized by the Court's sanctions order–is significant evidence of Promier's discovery misconduct.

Promier offers several reasons why its conduct is not sanctionable, but none has merit.

It first contends that "[t]he failure to disclose these payments as loans has already been litigated and sanctioned." [278] 19. The Court agrees that, unfortunately, this issue has been litigated ad nauseam, but Promier has not been sanctioned for the discovery misconduct that leads the Court to impose sanctions in this order. The Court's August 30 sanctions order imposed sanctions for Promier's efforts to obstruct Wollack's and Pell's May 2023 depositions. *See* [205] 8 ("the Court holds that Promier's instruction to Wollack and Pell not to answer reasonable and appropriate follow-up questions about the loans from Promier was improper under Rule 30(c)(2) and impeded and frustrated their depositions in violation of Rule 30(d)(2)"). To be sure, the broader context in which Promier's discovery violation occurred informed the Court's decision and the extent of the sanctions that were warranted. *See* [*id.*] ("sanctions are warranted to cure the prejudice caused by" Promier's obstruction of depositions and Promier's "corresponding failure to disclose that the distributions to Wollack and Pell were loans"). But the Court did not impose any of those sanctions based on Promier's and its counsel's mishandling of the Pell

---

[7] The Court also observes that the undersigned's stay was still in effect on December 26, 2023, when Promier produced the note to Orion. The stay was not lifted until the next day. *See* [252].

[8] Promier's reliance on a "tortured reading of the Court's May 11 order to shut down Orion's questions" at the May 2023 depositions of Wollack and Pell "into what were clearly discoverable areas surrounding the loans" was a significant part of the Court's decision to impose sanctions. *See* [205] 7-8.

promissory note–which the Court did not know existed in May 2023–nor were those sanctions based on Pell's November 2022 deposition testimony, the egregiously misleading nature of which became apparent to the Court only in reviewing Orion's pending sanctions motion.

Promier next claims that, after it emerged in May 2023 that the distributions to Wollack and Pell were loans, it would have been "irrational" for Promier to "withhold a document about the loan" and that it had "no incentive" to do so. [278] 12. But the Court cannot resolve the issues before it by asking whether Promier had an incentive to continue to obstruct discovery into how the related-party payments were classified or whether Promier's discovery tactics make any sense. More than two years of litigation have demonstrated that, time and again, Promier has taken and steadfastly maintained unreasonably obstructive positions vis-à-vis the classification of the related-party payments. As the District Judge has aptly phrased it:

> For more than two years, Promier represented that the payments were expenses, and then, without explanation or warning, gave entirely contradictory testimony. Worse still, the admission occurred only after Promier engaged in extensive motion practice to avoid this disclosure, resulting in a significant waste of Court time and resources. Simply put, Promier is "solely responsible" for the situation in which it now finds itself.

[250] 9.

Promier's briefing on the sanctions position provides still more support for that characterization. Notwithstanding the issuance of multiple court orders finding that discovery into the related-party payments was relevant, Promier continues to dismiss Orion's discovery efforts as "protracted discovery into sideshow issues." [278] 11. Setting aside Promier's completely inaccurate characterization of discovery into the related-party payments as a "sideshow" issue, the undersigned observes that "[t[he court has vast discretion to resolve" parties' discovery disputes," *Garrard v. Rust-Oleum Corp.*, No. 20 C 612, 2023 WL 1475164, at *2 (N.D. Ill. Feb., 2, 2023), that this discretion can sometimes "mean[ ] there is no 'right' or 'wrong' answer" to a discovery dispute, *id.*, and that "[a] party who steadfastly maintains his position without budging could be 'right,' but find itself on the losing side when the matter is left to the court[.]" *Stagger v. Experian Info. Sols.*, 2021 WL 5299791, at *2 (N.D. Ill. Nov. 15, 2021). At all times, then, Promier had the option to make a cost-benefit analysis of Orion's discovery requests and simply allowed what it claims to be trivial and "sideshow" discovery to proceed. And if Promier's "incentives" were the driving force behind its discovery strategy, then Promier certainly should have agreed to this discovery–all of which the Court, in repeated exercises of its discretion, found to be warranted. Promier instead chose to ceaselessly oppose these requests, only to find

itself staring down the barrel of a fee petition seeking more than $224,000.00 in fees and costs, *see* [285], and awaiting a further petition as a result of this order.

Promier also contends that Orion was not prejudiced by any "effort to 'hide' the Pell Promissory Note" because Orion knew, based on the May 2023 depositions, that the distributions were loans, and Orion was subsequently able to question Pell and Wollack about the loans during their February 2024 depositions. [278] 13-14. Promier further emphasizes that the "the Pell Promissory Note added no new information." [*Id.*] 19. The Court agrees with Promier in the very narrow sense that the promissory note does not provide any game-changing information, but the Court emphasizes that this was simply a fortuitous outcome for Promier and its attorneys, and it cannot excuse the failure to produce the note sooner. While Orion knew from Pell's and Wollack's testimony that the distributions were loans, Orion knew "nothing about the circumstances of the loans," "why Promier represented that they were expenses," whether "the loan terms [were] documents," whether the terms were "negotiated at arm's length," and "when and why" certain decisions about the loans' existence were made. [250] 8. As the Court explained, Orion was entitled to know whether any loan documents existed. *See* [205] 6-7. Indeed, in discovery, parties "need not rely on the word" of their opponents; instead they are "entitled to test [their] assertion[s] through discovery." *Cage v. Harper*, No. 17-cv-7621, 2019 WL 11704171, at *3 (N.D. Ill. Jan. 16, 2019); *see also H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, 2020 WL 3578026, at *2 (N.D. Ill. July 1, 2020) ("The presence of the oath, as long and bitter experience teaches, does not ensure that mistake or perjury has or will not occur."). Accordingly, the Court rejects Promier's argument that sanctions should be denied based on a lack of prejudice to Orion.

## C.    Appropriate Sanctions

The undersigned respectfully recommends that the District Judge deny Orion's request to dismiss counts II and III of Promier's amended complaint as a sanction for its discovery misconduct. Most importantly, the undersigned has found that the most serious discovery abuses alleged by Orion–the knowing submission of false declarations by Wollack and Schmeltz–did not occur. Furthermore, Orion has undertaken extensive discovery into the classification of the related-party payments, and it now has everything it needs to demonstrate that these payments were not expenses. This, then, is not a case where a party's discovery abuses have completely prevented an opponent from developing evidence on a key issue at the heart of the case. *Cf. Pable v. Chicago Transit Auth*, Case No. 19 CV 7868, 2023 WL 2333414, at *2 (N.D. Ill. Mar. 2, 2023) (recommending dismissal of complaint where plaintiff destroyed ESI that was critical to defendant's case and that could not be replicated by other means). What's more, as both the undersigned and the District Judge have determined, the inaccurate representations that Promier and its principals made to Orion during this litigation can impeach Promier's and its principals' claims about these payments and impact Promier's claim for breach of fiduciary duty against

Orion. *See* [205] 9-10; [250] 8. In these circumstances, the extremely harsh sanctions of dismissal of some of Promier's claims (and a restriction against adding further claims) is not warranted.

That said, the Court will invoke its inherent authority to sanction Promier for its continued discovery misconduct surrounding the belated production of the Pell promissory note. *See Clinical Wound Sols.*, 2023 WL 3568624, at *9 n.4. As discussed above, Promier's attorneys obtained a document on August 31, 2023 that they must have known was highly relevant to the issues in this case–and that they certainly knew that Orion wanted. But neither they nor Promier disclosed the note until nearly four months later, on December 26, 2023. Promier and counsel then sought to justify their withholding of the note based on the Court's stay order, but that order did not address the promissory note (which the Court did not know existed when it entered the stay). In any event Promier could have disclosed the note any time between August 31 and September 6, when the stay was entered. The record also strongly suggests that Promier's counsel very likely knew, and certainly should have known, in May 2023 that a loan document existed, yet there is no indication in the record that Promier's counsel investigated this issue until August 31, 2023, when counsel asked Pell for a copy of the note. The Pell promissory note and Pell's February 2024 testimony about creation of the note establish that Pell gave highly misleading testimony at his November 30, 2022 deposition. Despite Pell having asked his accountant to create the promissory note only a month before the deposition, Pell evaded Orion's question whether the Pell Group had received a "commission" from Promier in 2020, accepted Orion's characterization of the distribution as a "commission" in answering other questions, and failed to mention that the distribution was a loan. All of the foregoing constitutes an abuse of the discovery process, which presumes that attorneys and counsel will forthrightly disclose relevant information and not force their opponents to jump through an endless series of hoops to uncover information that is clearly relevant and discoverable. Accordingly, as a sanction for this discovery misconduct, the Court awards Orion its reasonable attorney's fees and costs incurred in preparing this sanctions motion and the reply brief. Orion's request for an award of all attorney's fees and costs it incurred in undertaking all related-party payment discovery is denied, particularly because Orion could have sought to recover its attorney's fees and costs for the various discovery disputes that arose in connection with this issue earlier in the case but it did not do so.

## Conclusion

For the foregoing reasons, and in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), the undersigned respectfully recommends that the District Judge deny Orion's motion [268] to the extent it seeks dismissal of counts II and III of Promier's amended complaint and a ruling that Promier is barred from adding any new counts to the complaint. The parties are advised that any objection to this Report

and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. *See Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

Orion's motion is granted to the extent that it seeks recover of the attorney's fees and costs it incurred in bringing this sanctions motion. In all other respects, the motion is denied. Orion's fee petition is due on September 2, 2024, Promier's response is due on September 16, 2024, and Orion's reply, if any, is due on September 23, 2024.

Finally, Promier's response to Orion's original fee petition [285] is due on September 2, 2024, and Orion's reply, if any, is due on September 9, 2024.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 1, 2024**

15